AO88 (Rev. 1/94) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF WEST VIRGINIA

Scott Hutchison Enterprises, Inc., et al.

V.

Rhodes, Inc., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 01-CV-776 (S.D. Ohio)

TO: Mitchell L. Klein
Klein & Hall Attorneys, L.C.
3568 Teays Valley Road
Hurricane, WV 25526

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Huddleston, Bolen, Beatty, Porter & Copen, LLP, 611 Third Avenue, Huntington, WV 25722 | Monday, October 6, 2003 at 10 AM |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

All documents identified in the attached schedule

| PLACE | DATE AND TIME |
|---|---|
| Huddleston, Bolen, Beatty, Porter & Copen, LLP, 611 Third Avenue, Huntington, WV 25722 | Monday, October 6, 2003 at 10AM |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| | September 8, 2003 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Thomas R. Schuck, ATTORNEY FOR DEFENDANT H.T. BOGGS
Taft, Stettinius & Hollister, LLP, 425 Walnut Street, Suite 1800, Cincinnati, OH 45202

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 9/11/03 | Klein & Hall Law Offices, Hurricane WV |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Mitchell L. Klein | Hand Delivered |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Brian Eerenberg | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 9/11/03
DATE

Brian Eerenberg
SIGNATURE OF SERVER

611 3RD Ave
ADDRESS OF SERVER
Huntington, WV 25701

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

1. All notes, memoranda, correspondence, maps, drawings, reports, and other documents (including draft documents) pertaining to the purchase of the real estate which is the subject of the Real Estate Sales Agreement attached hereto, and the bank financing obtained in connection with that transaction.

2. All notes, memoranda, correspondence, maps, drawings, reports, and other documents (including draft documents) pertaining to any other real estate transaction involving Scott Hutchison or any entity with which he is or was associated which involved the possibility or presence of hydric soils, and any bank financing sought or obtained in connection with any such transaction.

EXHIBIT A

# REAL ESTATE SALES AGREEMENT

THIS AGREEMENT is made and entered into as of the 20th day of October, 1999, by and between Scott Hutchison Enterprises , Inc., a West Virginia Corporation, here-in-after refereed to as PURCHASER and H.T. Boggs, as here-in-after referred to. as SELLER.

## RECITALS

Whereas, the SELLER is the owner of land situate in Lawrence County, Ohio and fully described in Exhibit A to this Contract and certain improvements upon said land operated as a trailer park and certain improvements and equipment associated with the operation thereof, all of which is described in Exhibit B, all situate on or near Old U.S. Highway 52.

Whereas, The PURCHASER desires to purchase all of said real and personal property.

In consideration of the mutual promises hereinafter set forth, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. "Purchase Price" shall mean ONE MILLION, ONE HUNDRED THOUSAND DOLLARS ($1,100,000.00) for the purchase of the real property and equipment used and associated with the operation and maintenance of the mobile home park, as set forth in Exhibit A and Exhibit B.

2. Purchase and Sale of Property. On the closing date, and subject to the terms and conditions of this Agreement, Seller agrees to sell and convey, or cause to be conveyed, and Purchaser agrees to purchase, the Property. The Property shall be sold and conveyed to Purchaser free and clear of liens, encumbrances, easements, covenants, conditions, leases or other matters affecting title, except for those of record. The property is sold subject to leases with tenants of the mobile home park and other tenants rights. Seller makes no warrant or representations as to the terms or amounts of those leases.

3. Terms of Payment.

(a) Earnest money deposit made upon the signing of this contract; in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) in the form of a cashiers check. Said earnest money shall be paid directly to H. T. Boggs and shall be forfeited upon default by the Purchaser.

(b) The balance to be paid in cash upon the delivery of deed.

4. Additional Undertakings of Seller.

(a) On the Closing Date, Seller agrees to execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, to Purchaser a general warranty deed, in proper form for recording, conveying the Property to Purchaser, free and clear of all liens, leases, encumbrances, covenants, conditions and other matters affecting title, except for matters of record. The property is sold subject to leases with tenants of the mobile home park and other tenants rights. Sellar makes no warrant or representations as to the terms or amounts of those leases.

(b) If Seller is unable to deliver free and clear marketable title to the Purchaser on the day set for closing the earnest money shall be refunded to the Purchaser, the contract shall be void, and Purchaser shall have no claims or causes of action against Seller as a result of the Seller's inability to deliver free and clear marketable title, other than for the refund of the earnest money.

5. Conditions Precedent to the Obligations of Purchaser.

The obligation of Purchaser to purchase the Property shall be subject to the following conditions (all or any of which may be waived, in whole or in part, by Purchaser):

(1) Seller will execute an affidavit stating that: To the best of the Seller's knowledge during Seller's ownership of the property, no asbestos, underground storage facilities, hazardous materials, toxic chemicals or similar substances, as defined in 42 U. S. C. Section 9601 (14) or 33 U. S. C. Section 1317 (1) OR 15 U. S. C. Section 2606 (F), or any similar provision of applicable state or federal law, or otherwise, were used in, stored on or under or otherwise were in existence on or under the property. To the best of Seller's knowledge, none of the foregoing occurred with respect to the property and there is no known evidence of "hydric soils" on the property except in areas which may be environmentally sensitive. "Hydric soils" shall mean any soil category upon which building would be prohibited or restrictive under applicable governmental requirements, including those imposed by the United States Army Corps of Engineers.

(2) Satisfactory Level One EPA Study, to be preformed before December 1st, 1999. If the Study reveals unsafe levels of the contamination, as defined by current Federal Statutes and regulations, the Purchasers shall be entitled to a refund of the earnest money, and the contract shall be void, and Purchaser shall have no claim or cause of action against the seller, if the study reveals unsafe levels of contamination, other than for return of the

earnest money.

6. CLOSING:

(A) The closing of the purchase and sale of the property shall take place on 15th of December 1999. However, the Purchaser may elect to close at any time after acceptance. Purchaser shall give the Seller 72 hours notice of the time and place of closing.

(B) Real estate taxes and similar expenses shall be prorated, on a calendar year basis, as of the Closing Date and shall be assumed thereafter by Purchaser. Rentals shall likewise be prorated between the parties. Rents for the calendar month of closing shall be prorated as of the day of closing. In order to facilitate this proration, the Seller will provide a list of current tenants, the monthly rental due from each tenant, the day of the month said rental is due, and the last date and amount paid. Seller makes no representation or warranty as to the collectability of rents and the payment status of any tenants. *Seller makes no representation that the information provided is correct. However, Seller will use his best efforts to provide any information available to him or his employees regarding rentals and leases.*

(D) Purchaser shall pay for all recording costs, title examination, and all other fees and costs required by the Purchaser's lender, if any. The seller shall pay for any fees customarily paid for the transfer of real estate, including transfer fees and preparation of a deed.

(E) Seller agrees to give an owner's affidavit at settlement in customary form, as required to evidence the absence of claims which would give rise to mechanics liens. The Seller agrees to give a certificate at settlement as to the Seller's tax status in compliance with the provisions of Section 1445 of the Internal Revenue Code of 1954.

7. TIME IS OF THE ESSENCE:

Time is of the essence in the performance of all obligations of Purchaser and Seller hereunder. Closing shall occur on or before the 15th day of December, 1999.

8. PURCHASE OF ASSETS and NOT ON GOING BUSINESS. It is the intent of the Purchaser to purchase only the assets of the business now being operated on the premises. The Purchaser is not buying the on going business or any good will of the business.

9. ADDITIONAL PROVISION: Liability Insurance. The Purchaser shall name H.T. Boggs as an additional insured on his general liability insurance policy covering his activities on the subject property. This provision shall remain enforce for 36 months after the date of closing.

IN WITNESS WHEREOF, Seller and Purchaser have signed this Agreement as of the dates specified next to their respective signature.

SELLER:

H D Boggs Date 10-20-99

PURCHASER:

Scott Hutchison Enterprises, Inc.
a West Virginia Corporation

By: Winford Scott Hutchison
Winford Scott Hutchison
Its President.

This Document Prepared By
Mitchell Lee Klein
Counsel for Scott Hutchison Enterprises, Inc.
Huntington, West Virginia

EXHIBIT "A"

Terms of Requested Credit

| | |
|---|---|
| **Borrower:** | Scott Hutchison Enterprises, Inc. |
| **Guarantor:** | W. Scott Hutchison and Laya Rose Hutchison |
| **Purpose:** | Request "A" - To acquire an existing 61 pad mobile home park and an additional 9 acres of undeveloped land and to provide funds to develop the 9 acres with 61 additional mobile home pads.<br>Request "B": To purchase the business assets and inventory of "Boggs' Landing" mobile home sales which consists primarily of 7 new and 2 used mobile homes. |
| **Loan Amount:** | Request "A" - $ 1,650,000<br>Request "B" - $ 250,000 |
| **Interest Rate:** | Request "A" - HNB Prime. When the property reaches stabilization, defined as a minimum 85% occupancy and a debt coverage ratio of 1.25x based on the full funding amount, then the interest rate will decrease to HNB Prime minus 1/4 of 1%. Additionally, after stabilization, the borrower will have the one time option to convert to a fixed rate with the rate determined by adding 300 basis points to the U.S. Treasury Bond with a maturity which most closely matches the maturity of the loan.<br><br>Request "B" - HNB Prime plus 1/2 of 1%. |
| **Fees:** | Document preparation fee of $150 per loan. |
| **Maturity:** | Request "A" - 10 years from the date of closing.<br>Request "B" - 1 year from the date of closing. |
| **Amortization:** | Request "A" - Monthly payments of interest only for the first 12 loan months. Thereafter, monthly payments of principal and interest based on a 20 year amortization schedule.<br>Request "B" - Monthly payments of interest only plus a release fee equal to 120% of the cost basis in each mobile home upon sale. |
| **Collateral:** | Request "A" - First Deed of Trust on the acquired property plus a First Deed of Trust on borrower's mini storage facility located in Proctorville, OH. Additionally, |

EXHIBIT "A"

the loans will be cross collateralized and cross defaulted with borrower's existing credit facilities with HNB.

Request "B" - Titles on the mobile home inventory. Additionally, the loans will be cross collateralized and cross defaulted with borrower's existing credit facilities with HNB.

**Special Considerations:**

Request "A" - If borrower sells the mini storage facility being taken as additional collateral Lender will reduce the loan amount on Request "A" to $1,300,000, or 70% of appraisal, whichever is less. The difference between the cost of the project ($1,650,000) and the new loan amount will be funded by the borrower into an escrow account held by HNB immediately upon completion of any such sale.

**Financial Covenants:**

Borrower to provide annual operating statement and rent roll for the property, annual financial statement, and annual tax return. Additionally a financial statement and tax return will be provided annually by the guarantors.


AVENUE
Yellow Freight
06-135-0100
06-134-0400
06-134-0500
06-134-1200
06-197-1200
06-197-1500
06-197-1400
06-198-0100
06-198-0200
Glenn Adkins
Church
2.55