## EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVSION

| | | |
|---|---|---|
| Scott Hutchison Enterprises, Inc.<br>302 12th Avenue<br>Huntington, West Virginia 25701 | : <br> : <br> : <br> : | CASE NO: C-1-01-776<br>Judge Weber |
| and | : <br> : | |
| W.N. & Scott Hutchison Partnership<br>An Ohio Partnership<br>905 Bonnie Boulevard<br>Huntington, West Virginia | : <br> : <br> : <br> : | SECOND AMENDED COMPLAINT<br>With Interrogatories Annexed<br>(Jury Trial Requested) |
| Plaintiffs | : | |
| vs. | : <br> : | |
| Larry Rhodes, Inc.<br>Larry Rhodes, Inc. dba Rhodes, Inc.<br>Rhodes, Inc.<br>Rhodes, Incorporated, and<br>Rhodes and Associates, Inc.<br>115 Eisenhower Court<br>Nicholasville, Kentucky 40356-9166 | : <br> : <br> : <br> : <br> : <br> : <br> : | |
| and | : | |
| James M. Zimmer<br>3164 Roxbury Drive<br>Lexington, Kentucky 40503 | : <br> : <br> : | |
| and | : | |
| H. Jack Geisler<br>33868 Moundview Court<br>Lexington, Kentucky 40502 | : <br> : <br> : | |
| and | : | |

1

| | |
|---|---|
| H.T. Boggs<br>P.O. Box 1511<br>Bartow, Florida 33831<br><br>Defendants | :<br>:<br>:<br>:<br>:<br>: |

## PREMLIMINARY AND JURISDICAL ALLEGATIONS

1. Scott Hutchison Enterprises, Inc., (hereinafter sometimes referred to as "Hutchison Enterprises") is a West Virginia corporation which is in the business of developing and owning real estate and other businesses.

2. W.N. & Scott Hutchison Partnership (hereinafter sometimes referred to as "Hutchison Partners") is an Ohio general partnership organized and existing under the laws of Ohio.

3. Larry Rhodes, Inc., Rhodes Incorporated, Rhodes, Inc. and Rhodes and Associates, Inc. (hereinafter sometimes referred to as "Rhodes") are corporations, organized and existing under the laws of the Commonwealth of Kentucky, in the business of professional engineering, geology, and drilling services, environmental assessments, and advice and counsel concerning the purchase and development of real estate. None of the Rhodes Defendants has an office or place of business in Ohio or West Virginia.

4. H.T. Boggs, (hereinafter sometimes referred to as "Boggs") is an individual who resides in Bartow, Florida and who has no principal office, domicile, or business presence in the State of Ohio or West Virginia.

5. James M. Zimmer (hereinafter sometimes referred to as "Zimmer") is an individual

2

who resides in the Commonwealth of Kentucky and has no principal office, domicile or business presence in the State of Ohio or West Virginia.

6. H. Jack Geisler (hereinafter sometimes referred to as "Geisler") is an individual who resides in the Commonwealth of Kentucky and has no principal office, domicile or business presence in the State of Ohio or West Virginia.

7. There exists complete diversity between and among the Plaintiffs and the Defendants and federal jurisdiction under 28 U.S.C. §1332 inasmuch as neither Rhodes, Boggs, Zimmer nor Geisler is domiciled nor has a principal office or place of business in either West Virginia or Ohio, and neither Hutchison Incorporated, nor Hutchison Partners are domiciled nor have a principal office or business in Florida, where Boggs is domiciled, nor Kentucky, where Rhodes, Zimmer and Geisler are domiciled.

8. The real estate which is the subject of this action is located in Lawrence County, Ohio, within the Southern District of Ohio, Western Division.

9. The amount in controversy exceeds $75,000 plus interest and costs.

10. This Court has personal jurisdiction over the Defendants pursuant to Ohio Revised Code 2307.38.2 inasmuch as:

a) Rhodes, Zimmer, Geisler and Boggs transacted business in Ohio directly related to the transactions, acts and omissions which are the subject of Plaintiffs' claims against them;

b) Rhodes, Zimmer and Geisler contracted to and did supply services to Plaintiffs in Ohio directly related to the Plaintiffs' claims against them;

3

c) Rhodes, Zimmer, Geisler and Boggs each caused injury and damages to the Plaintiffs in Ohio from their breaches of warranties, acts and omissions;

d) Plaintiff's claims against Boggs arise in part from ownership and possession of real estate located in Ohio.

11. This Court has jurisdiction over the parties and the subject matter of this action to grant the relief sought.

## OPERATIVE FACTUAL ALLEGATIONS

12. In October of 1999, Plaintiffs and the Defendant Boggs entered into negotiations, and ultimately executed an agreement for the sale to Plaintiffs of real estate owned by Boggs. A copy of said Real Estate Sales Agreement is attached to the Complaint as Exhibit A.

13. In connection with said Agreement, Boggs represented to the Plaintiffs that the property contained no wetlands, nor other environmentally sensitive conditions or characteristics.

14. Plaintiffs relied upon said representations from Boggs in purchasing the property for development.

15. Boggs knew or should have known that the property contained wetlands, environmentally sensitive soils, and other characteristics which would prohibit development.

16. At times pertinent to this action, specifically prior to the closing of the sale of the subject real estate and during the years 1995 through November of 1999, Defendant Boggs owned and operated a mobile home park and sales business on the subject

4

property which he called "Boggs Landing."

17. The mobile home park was on a portion of the subject property developed for that purpose, situated on the southern portion of the property between Old US 52 and the Ohio River.

18. The portion of the property located north of Old US 52 between Old US 52 and the present (new) US 52 was undeveloped at that time.

19. Sometime during the time period 1997 through 1998, defendant Boggs decided to expand Boggs Landing Mobile Home Park, by developing Boggs Landing Addition, a new mobile home park development containing approximately sixty additional mobile home sites.

20. In connection with this, defendant Boggs procured a professional design and layout of the proposed expansion, which showed it to be situated on the undeveloped portion of the subject real estate laid out on the entire parcel between Old US 52 and new US 52.

21. Sometime during the year 1998, defendant Boggs, operating as Boggs Landing, began clearing trees, excavating materials, digging and filling on areas of the subject property which are now alleged to be "disturbed wetlands."

22. Upon information and belief, Plaintiffs allege that after defendant Boggs, operating as Boggs Landing, had done substantial clearing, and brought in and dumpted numerous truckloads of fill on the subject property, they were informed by the adjoining property owner that the area of the subject property they were clearing and filling was alleged to be a wetland area which could not be legally cleared or filled without compliance with state and/or federal regulations pertaining to such areas.

23. Upon information and belief, the clearing, excavation and filling on the undeveloped portion of the subject property done by or on behalf of the defendant Boggs in 1997 and/or 1998 substantially disturbed, damaged and disrupted portions of the subject property alleged to be wetlands.

24. After receiving said information, defendant Boggs stopped clearing and filling said area, withdrew all construction equipment from the site, and abandoned plans to construct Boggs Landing Addition on the subject property.

25. Thereafter, and prior to the December 6, 1999 closing on the sale of the property, defendant Boggs made verbal representations to Plaintiffs that the undeveloped portion of the subject property was "ideal" for development of a mobile home park.

26. During the same time, defendant Boggs deliberately withheld from Plaintiffs information that he had abandoned his own plan for development of a (Boggs Landing Addition) mobile home park after learning the location was alleged to be a wetland, and that he had partially cleared, filled and otherwise disturbed the surface of said property in the area which he had been informed was alleged to be a wetland where clearing and excavating could not likely be done except in compliance with state and federal regulations pertaining to wetland areas.

27. Since purchasing said property, Plaintiffs have been informed and believe that they are obligated to comply with regulations requiring mitigation and remediation of the disturbed wetland on the subject property, requiring Plaintiffs to acquire additional property and restore or create replacement wetland property in a quantity not less than three-to-one (three acres restored for each acre disturbed).

28. The costs and expenses of said remediation and restoration cannot be specifically determined at the present time, but are believed to be in excess of $75,000.

29. In reliance upon the representations of Boggs, and also in reliance upon the professional environmental and engineering information, consultation, advice and warranties provided by defendants Rhodes, Zimmer and Geisler as more fully hereinafter described, Plaintiffs purchased the subject real estate and undertook preliminary work to develop it which included the clearing of trees from the site.

30. Plaintiffs took title to the subject real estate at the closing December 6, 1999.

31. Unbeknownst to the Plaintiffs, the subject real estate contained wetlands and environmentally sensitive soils protected by state and federal law.

32. Being unaware of the environmental sensitivity and protected nature of this property, Plaintiffs began clearing existing trees and brush from the property after the closing in December of 1999. However, the United States Army Corp of Engineers notified Plaintiffs to cease and desist all further activities, and issued a formal Cease & Desist Order on May 10, 2000.

33. Plaintiffs allege they are unable to develop the subject real estate; and that they are or may be obligated by law to perform remedial work on the aforesaid property and/or restore or replace environmentally sensitive aspects of said property at great expense, the extent and nature of which are not presently known or determinable.

34. As a result, the Plaintiffs have been damaged and will be further damaged in the future in an amount not presently ascertainable, but in excess of $75,000.

### FIRST CLAIM - - AGAINST BOGGS

35. Plaintiffs incorporate by reference each and every allegation and averment hereinabove set forth and further state that as a result of the acts, omissions, breaches of warranty and misrepresentations of Boggs, Plaintiffs have been damaged and are entitled to a judgment against Boggs in an amount presently unknown and not determinable, but in excess of $75,000.

### SECOND CLAIM - - AGAINST BOGGS

36. Plaintiffs incorporate by reference each and every allegation and averment hereinabove set forth and further state that Boggs breached his contract and agreement with the Plaintiffs, as a result of which the Plaintiffs have been damaged in an amount presently unknown and not presently ascertainable, but in excess of $75,000.

### THIRD CLAIM - - AGAINST RHODES

37. Plaintiffs incorporate by reference each and every allegation and averment hereinabove set forth and further state that in October of 1999, Rhodes made a proposal to Plaintiffs to perform technical investigation, consultation, and engineering services, in connection with Plaintiffs' investigation and contemplated purchase of the property from Boggs.

38. Plaintiffs and Defendants, Rhodes entered in to an agreement by virtue of which Rhodes agreed to make a professional technical investigation of the subject property to inform and advise Plaintiffs prior to the purchase of said property, including specific information referable the environmental aspects, geographic area, and the geologic and

8

hydrologic conditions present on said property.

39. Defendants Rhodes, Zimmer and Geisler performed said services negligently, and provided inadequate, incomplete and misleading information to the Plaintiffs that did not reveal or disclose the existence of protected wetlands and environmentally sensitive soils or other conditions on said property, which they knew or in the exercise or reasonable care should have known existed, and were obligated to discover and describe to the Plaintiffs.

40. In reliance upon the work, advice and information provided by Rhodes, Zimmer and Geisler, which was negligently performed and inadequately prepared, Plaintiffs purchased the real estate and took title to it on December 6, 1999, and shortly thereafter began to clear said land in preparation for development work which had been contemplated as a part of the decision to purchase.

41. Shortly thereafter, Plaintiffs' development work was stopped by the United States Army Corp of Engineers and a "Cease and Desist Order" was issued preventing Plaintiffs from doing further work on the subject property.

42. As a result of the negligent and inadequate work performed and Plaintiffs' reliance on the inadequate and incomplete information provided by Rhodes, Zimmer and Geisler to the Plaintiffs, Plaintiffs have been damaged, and will be further damaged in the future in an amount not presently known, and not presently ascertainable, but in excess of $75,000.

## FOURTH CLAIM – AGAINST RHODES

43. For their Fourth and additional claim against the defendant Rhodes, Plaintiffs

9

incorporate by reference each and every allegation and averment hereinabove set forth and further state that the report and recommendations of Rhodes included a specific written warranty made by Rhodes, Zimmer and Geisler, to wit:

> "In performing our professional services, we have used that degree of care and skill ordinarily exercised under similar circumstances by members of the profession. This warranty is in lieu of all other warranties, expressed or implied."

44. Defendant Rhodes breached its express warranty to the Plaintiffs.

45. Plaintiffs are entitled to judgment against Rhodes in an amount not presently known or ascertainable, but in excess of $75,000, plus their attorney's fees, costs, interest and expenses.

### FIFTH CLAIM – AGAINST JAMES M. ZIMMER

46. Plaintiffs incorporate by reference each and every allegation and averment hereinabove set forth and further state that at times pertinent to this action, the Defendant James M. Zimmer, P.G. was the project geologist for the defendant Rhodes.

47. Defendant Zimmer outlined and represented the work which would be done and made promises and commitments to the Plaintiffs regarding the scope and quality of it.

48. Defendant Zimmer represented to the Plaintiffs that, on the basis of his work, except for the dumping of some common trash, there were no environmental conditions revealed in respect of the undeveloped tract, which was ultimately determined to be a wetland.

49. Defendant Zimmer further warranted in writing to the Plaintiffs that his professional services, and those of the defendant Rhodes, used that degree of care and skill ordinarily exercised under similar circumstances by members of the profession.

10

50. Defendant Zimmer further warranted to Plaintiffs that there were no marsh lands or other signs of wetlands in the vicinity of the land, which was ultimately determined to be a wetland.

51. Defendant Zimmer breached his express warranty and failed to exercise reasonable and ordinary care and otherwise comply with the standards of care and skill ordinarily exercised under similar circumstances by members of his profession.

52. Plaintiffs have been damaged and will be further damaged by the breaches of warranty and negligence of the Defendant Zimmer, and are entitled to judgment against the Defendant Zimmer in an amount not presently known or ascertainable, but in excess of $75,000, plus their costs, interests, expenses and attorney's fees.

### SIXTH CLAIM – AGAINST JACK L. GEISLER

53. Plaintiffs incorporate by reference each and every allegation and averment hereinabove set forth and further state that at times pertinent to this action, the Defendant Geisler was a professional engineer and Vice President of Engineering Services, and was an officer of the Defendant Rhodes.

54. Defendant Geisler represented to the Plaintiffs that, on the basis of his work, except for the dumping of some common trash, there were no environmental conditions revealed in respect of the undeveloped tract which was ultimately determined to be a wetland.

55. Defendant Geisler further warranted in writing to the Plaintiffs that his professional services, and those of the defendant Rhodes, used that degree of care and skill ordinarily exercised under similar circumstances by members of the profession.

56. Defendant Geisler further warranted to Plaintiffs that there were no marsh lands or

11

other signs of wetlands in the vicinity of the land, which was ultimately determined to be a wetland.

57. Defendant Geisler breached his express warranty and further failed to exercise reasonable and ordinary care and otherwise comply with the standards of care and skill ordinarily exercised under similar circumstances by members of his profession.

58. Plaintiffs have been damaged and will be further damaged by the breaches of warranties and negligence of the Defendant Geisler, and are entitled to judgment against the Defendant Geisler in an amount not presently known or ascertainable, but in excess of $75,000, plus their costs, interests, expenses and attorney's fees.

WHEREFORE, Plaintiffs pray for judgment against each and all of the Defendants, jointly, and severely, in an amount not presently ascertainable, but in excess of $75,000, plus their costs, prejudgment interest, expenses, and attorneys fees, and pray for trial by jury of the within claims.

Respectfully submitted,

William P. Schroeder (0027123)
Attorney for Plaintiffs
Schroeder, Maundrell, Barbiere, & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249
(513)-583-4211
(513)-583-4203

## CERTIFICATE OF SERVICE

I hereby certify that on **November 6, 2003,** I electronically filed the foregoing as Exhibit A to a Motion for Leave to Amend with the Clerk of the Court using the CM/ECFF system and I hereby certify that I have mailed by United States Postal Service the document to the following:

Thomas R. Schuck, Esq.
Taft, Stettinius & Hollister
425 Walnut Street, Suite 1800
Cincinnati, OH 45202

Sam Casolari, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
120 E. Mill Street, Suite 240
Akron, OH 44308

E. David Marshall, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
271 W. Short Street
Lexington, Kentucky 40507

Kevin J. Waldo, Esq.
413 Center Street
Ironton, OH 45638-1505

Craig R. Paulus, Esq.
Taft, Stettinius & Hollister
425 Walnut Street, Suite 1800
Cincinnati, OH 45202

Robert J. D'Anniballe, Jr., Esq
Amy Pigg Shafer, Esq.
100 North 4th Street, 10th Floor
Steubenville, Ohio 43952

S/William P. Schroeder