UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SCOTT HUTCHISON ENTERPRISES, et al. | : | Case No. 1:01-cv-00776 |
| | : | |
| | : | Judge Weber |
| Plaintiffs | : | |
| | : | **PLAINTIFFS' MEMORANDUM IN** |
| vs. | : | **OPPOSITION TO MOTION FOR** |
| | : | **SUMMARY JUDGMENT OF** |
| RHODES, INC., et al. | : | **DEFENDANT, BOGGS** |
| | : | |
| Defendants | : | |

## STATEMENT OF THE CASE

This action arises out a transaction involving the purchase of real estate by the Plaintiffs from the Defendant, Boggs, conveyed by deed at a closing December 6, 1999, and recorded December 9, 1999. Despite the fact that a pre-closing environmental assessment done by defendant Rhodes reported that there were no wetlands or other environmental issues, a jurisdictional wetland condition (hydric soils and plants) has prevented the development of the real estate due to federal and state wetlands regulations.

Plaintiffs' Complaint was initially filed November 8, 2001, against the seller, Defendant, H.T. Boggs, and Defendant, Rhodes, Inc. which did the environmental assessment. The First Amended Complaint was filed April 23, 2002, principally in response to a Motion by Defendant Boggs for a more definite statement of the allegations in the original Complaint. The Second Amended Complaint was filed November 25, 2003 following discovery which revealed the involvement of the individual Defendants, James M. Zimmer and H. Jack Geisler, employees of the Defendant, Rhodes, Inc., who performed the environmental assessment and certified the conclusions.

The Defendants, Boggs and the individual Defendants, Zimmer and Geisler, have separately filed Motions for Summary Judgment contending they are entitled to judgment as a matter of law. Boggs' Motion asserts that the Plaintiffs' claims against him are barred by the doctrine of Caveat Emptor; that the Plaintiffs knew or should have known of the environmental conditions (wetlands) that have impeded the development of the land; that there is no evidence to support Plaintiffs' contention that Boggs represented the land would be ideal for the development of a mobile home park in order to fraudulently induce the Plaintiffs to purchase the land; that in purchasing the land, the Plaintiffs relied solely on a flawed environmental assessment by Rhodes and the individual Defendants, Zimmer and Geisler, not the representations of the seller, Boggs. In opposition to the Motion of Boggs, it is Plaintiffs' position that genuine issues as to material facts exist to support Plaintiffs' contention that the representations and statements by Boggs and documents Boggs gave to Plaintiffs' during the negotiations preceding the December 6, 1999 closing are sufficient to support Plaintiffs' claim of fraudulent inducement; that they were statements and information upon which the Plaintiff relied in purchasing the property; that the doctrine of Caveat Emptor does not preclude Plaintiffs' recovery in this case; and that the Defendant, Boggs is not entitled to summary judgment on Plaintiffs' claims.

The Motion for Summary Judgment filed jointly on behalf of the individual Defendants, Zimmer and Geisler, is the subject of a separate Memorandum in Opposition. It is based on their contention that the claims against those individual Defendants should be dismissed because they do not comply with the requirements of Ohio Revised Code §2305.09(d) which they contend

requires the actions against these individual Defendants to be filed within four (4) years from November 8, 1999, the date on which they signed and allegedly *"issued"* a report and letter to Plaintiffs. Plaintiffs oppose the Zimmer Motion on the basis that R.C. §2305.90(d) does not bar the claims asserted; there are genuine issues as to material facts which support a conclusion that the cause of action against Zimmer and Geisler did not arise when they "issued" (signed) the report; that the cause of action did arise within the four years preceding the filing of the Second Amended Complaint; that the requirements of Ohio Revised Code §2305.09(d) were met; and also that the claims of the Plaintiffs against the individual Defendants arose out of contract and/or quasi contract, and should not be barred by that Statute in any event.

## STATEMENT OF FACTS

In the Summer and early Fall of 1999, Plaintiff became interested in purchasing a trailer park and adjacent vacant land in Burlington, Ohio, owned by the Defendant Boggs. The property lies near the southern most point of the State of Ohio, across the river from Huntington, West Virginia. It is comprised of two distinct parcels separated by a public road known as Old U.S. 52, (also called County Road 1). The parcel on the south side of Old U.S. 52 was already developed as a mobile home park known as Boggs Landing. The parcel on the north side of Old U.S. 52 was vacant. Plaintiffs wanted to buy the mobile home park and also wanted the undeveloped parcel to develop another mobile home park approximately equal in size to Boggs Landing. During early discussions, Defendant, Boggs told the Plaintiff that the vacant land on the north side would be ideal for the development of an additional mobile home park. He told Plaintiffs he had looked into that, had plans and estimates, and had actually started clearing the

land, but that his interest had wained due to his age and the fact that he had moved away from the area and taken up residence in Florida. (Scott Hutchison Dep. Pp. 38-47). Boggs gave the Plaintiff a copy of plans and drawings for the development of the new mobile home park to be known as "Boggs Landing Addition," and some other information, and told Plaintiffs that he had bids and proposals for excavation and development work.

  Plaintiff testified on deposition that Boggs led him to believe he could put in a mobile home park addition to Boggs Landing with no problems whatsoever; that Boggs showed him and gave him the plans for it, and gave him an estimate Boggs had received from an excavation company; that Boggs told Hutchison that he could start on the project immediately and go forward with it, and that the only reason he "Boggs" had had not developed it was that he relocated to Florida and was too old to have an interest in completing the project. (Scott Hutchison Dep. Pp. 38-40; see also Dep. Ex. 90 a layout of the "Boggs Landing Addition" which was discussed and given to the Plaintiff).

  In his deposition, the Defendant Boggs denied that he ever intended to build a "Boggs Landing Addition." He denied that he had even seen the documents, which were produced from his own records and included correspondence and proposals addressed to him for work to be performed on the Boggs Landing Addition. He testified he had no idea how the documents came into his possession. (Boggs [Day One] Dep. p. 47).[a] However, Boggs admitted he had a plan drawn for a "Boggs Landing Addition" done by a Marvin Grey, in Florida. (Boggs [Day One] Dep. Pp 42-45). He also admitted that Deposition Exhibit No. 189 bears a fax number of a

Florida company called Metal-Mart, a company that Boggs still owns with a fax location where he regularly received faxes from Ohio. (Boggs [Day One] Dep. p. 79). Although Mr. Boggs denied any knowledge of the documents, Exhibit No. 181 is obviously a plan and drawing of the Boggs Landing Addition; Exhibit No. 182 is a proposal for work to be performed in connection with the Boggs landing Addition; Exhibit No. 183 is a letter of transmittal from H.T. Boggs transmitting the proposal for work to be performed on the addition; Exhibit Nos. 184 and 185 are additional proposals for work to be performed on the Boggs Landing Addition; Exhibit No. 186 is a drawing with notes for the development of Boggs Landing Addition; Exhibit No. 188 is another proposal for work and Exhibit No. 189 is a fax transmittal to Mr. Boggs. (Boggs [Day One] Dep. Pp 57-80).

Exhibit No. 183, is a letter dated July 8, 1999, from Southern Excavating Inc. to H.T. Boggs which was produced from Mr. Boggs' records at his home in Florida. The letter to him is obviously a transmittal of a proposal for development work for Boggs Landing Addition, dated less than four months prior to the October 20, 1999 date of the written contract for sale of the property to Plaintiff. Exhibit 183 and other documents were the subject of testimony by Russell Blankenship, the author of the letter and owner of Southern Excavating Inc., and Red Dawson, both of whom testified that they had spoken with Mr. Boggs and made proposals to him for work on development of the additional mobile home park described as "Boggs Landing Addition." The Depositions of Blankenship and Dawson were taken April 6, 2003 and have not yet been

---

[a]    Note: Two depositions of H.T. Boggs were taken on successive days, December 8 and 9, 2003. References in this Memorandum are to the December 8, 2003 [Day One] deposition of H.T. Boggs.

transcribed. They are presently being transcribed and will be filed, together with a brief supplemental memorandum describing its importance to the issues raised on summary judgment.

Relying on the representations of Boggs that the vacant land would be ideal for development of an additional mobile home park, Plaintiffs entered into a written purchase agreement with Boggs (Dep. Exhibit No. 195), dated October 20, 1999 which called for a closing on or before December 15, 1999. The closing documents were actually dated December 6, 1999, and the deed transferring the property was recorded December 9, 1999.

In preparation for the closing, the Plaintiff contacted a bank to arrange financing and retained a real estate attorney for the title examination, preparation of the deed and other matters needed at the closing. The bank required an appraisal and environmental assessment, as a result of which they engaged the Defendant Rhodes on October 20, 1999 to perform an environmental study. (Scott Hutchison Dep. Pp 61-62, 76, 80 and Dep. Exhibit No. 92). Plaintiff specifically requested Rhodes to ascertain if there were wetlands on the property. Rhodes issued a preliminary report on October 28, 1999 and a final report on November 8, 1999 bearing the signatures and certification of the individual Defendants, Geisler and Zimmer. The report indicated the absence of wetlands or hydric soil conditions.

About four months after the closing, sometime in April of 2000, Plaintiffs began clearing the property in preparation for developing a mobile home park on the vacant land. However, the U.S. Army Corps of Engineers stopped the work, and issued a letter to Mr. Hutchison dated May 3, 2000 ordering him to "cease further filling activities at the site." (Exhibit No. 164). According to Exhibit No. 166, Andy Lockwood, of Thomas & Company, an engineering firm

working for Plaintiffs, contacted the Army Corps of Engineers on April 19, 2000 to inquire about the possibility of wetlands at the site. As nearly as possible, that date represents the first time there was any suspicion by Plaintiffs of an environmental problem (wetland) on the property.

      The property immediately to the west of Boggs' vacant land where the wetland exists is owned by Navy Trucking Company. Its president, Thaddeus Blatt, was deposed October 28, 2003 in Huntington, Mr. Blatt testified concerning the wetland issues as regards his property and the adjoining vacant land of Boggs. Mr. Blatt testified that he had acquired the adjoining property and conducted some excavation work in 1996, when he discovered there were wetland issues on the Navy Trucking land. Mr. Blatt testified that before he had purchased the land next to Boggs, he had an environmental inspection and a wetlands examination (Blatt Dep. p. 23). Mr. Blatt identified a copy of a wetlands investigation which was performed on his behalf (Blatt Dep. Ex. No. 159) which shows the existence of areas of wetland on his land. Sometime after that, (and prior to 1999 when the Plaintiff purchased the property), Mr. Blatt observed activity on the Boggs vacant land, which included filling, bringing in truckloads of dirt, and use of a bulldozer, knocking down trees and general land clearing. (Blatt Dep. Pp. 40-43). While this was going on, Mr. Blatt talked with a man on the Boggs property who introduced himself as Boggs' foreman. The man gave him a business card (Dep. Ex. No. 160) that says "Boggs Landing Mobile Homes," and bears the name Dewey Jalanovich, Sales Manager. Mr. Blatt testified he asked the man who gave him the business card if the property owner had had a wetland survey and he said no. Mr. Blatt suggested to the man that he should have a wetland

survey and told him that he had to do that because of the condition of the land. (Blatt Dep. pp. 43-44). Shortly after that, the work clearing the vacant Boggs' land stopped and did not resume.

# **ARGUMENT**

A.   SUMMARY JUDGEMENT STANDARD

It is clear that the test for Summary Judgment is not met in this case. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which they believe demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25, 106 S.Ct. 2548. Once the movant meets this burden, the opposing party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom "in a light most favorable to the nonmoving party."*Williams v. Belknap*, 154 F.Supp.2d 1069, 1071 (E.D.Mich.2001) (citing 60 *Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987)). However, at the summary judgment stage the judge's

function is not himself to weigh the evidence and determine the truth of the matter, *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir.1994) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). Therefore, the Court is not required or permitted ... to judge the evidence or make findings of fact. *Williams*, 154 F.Supp.2d at 1071.

The purpose of summary judgment is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 130 F.Supp.2d 928, 930 (S.D.Ohio 1999). Ultimately, the Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52, 106 S.Ct. 2505.

### B. THE MOTION OF BOGGS SHOULD BE OVERRULED

The evidence adduced in discovery supports the conclusion that the Defendant Boggs investigated, studied and designed "Boggs Landing Addition" as an additional mobile home park to be constructed on the vacant land. The exhibits adduced at his deposition (Exhibits 90, 183 through 188), and the testimony of Russell Blankenship, Thaddeus Blatt and Red Dawson all show how far Boggs went, even commencing clearing and excavation work on the project before abruptly stopping and selling the vacant land to Plaintiffs. Exhibit 183 is a letter dated July 8, 1999 to Boggs transmitting proposals less than four (4) months prior to October 20, 1999, the date on which Boggs agreed in writing to sell the land to Plaintiffs. The timing of these documents leads directly to the conclusion that Boggs learned of the wetland issues when Mr. Blatt, the adjourning property owner, warned the Boggs Landing manager, Dewey Jalanovich,

who was clearing the land.  Boggs then abandoned the project and sold the land to Plaintiffs, telling Mr. Hutchison it would be ideal for development as a mobile home park.  The fact that Boggs denied having received or seen any of the project proposal documents, taken from his own file in Florida, including the dated July 8, 1999, addressed to him and transmitting an excavation and site preparation proposal, shows his testimony to be incredible.  (Exhibit Nos. 181 - 189). Exhibit 183 shows that Boggs had received written proposals for work on the Boggs Landing Addition only three months before signing the purchase agreement with the Plaintiffs.  When confronted with these documents on deposition, his only response was that he had "no idea" how the documents got into his possession.  (Boggs [Day One] Dep. p. 76).  These documents prove that contrary to his sworn testimony, Mr. Boggs had done significant work on the development of a mobile home park addition on the vacant land that he sold to Plaintiffs.  The testimony of Thaddeus Blatt shows that excavating and filling was conducted under the supervision of someone who represented himself as a manager of Boggs Landing, and gave a business card to Mr. Blatt which confirmed that.  This, together with the testimony of Mr. Blatt that he discussed the need for a wetlands investigation with Mr. Boggs' manager, after which the clearing activity on the land ceased, supports and corroborates Plaintiffs' testimony that the Boggs induced him to purchase the property by representations that it would be ideal for the development of an additional mobile home park, while withholding information that there were wetland issues on the land.  Even without the corroborating testimony of Blankenship, Dawson, and Blatt, material issues of fact exists based upon the testimony of Mr. Hutchison.  The testimony of Mr. Blatt, Dawson and Blankenship, together with Mr. Bogg's denial that he had or knew of any

information about the proposed development, proposals, or plans, demonstrates that Mr. Boggs testimony is not reliable and a jury issue exists on the Plaintiffs' claims against him.

All of the necessary elements to support the claims of the Second Amended Complaint against Boggs as set forth in *Russ v. TRW, Inc.*, 59 Oh. St.3d 42, 49 570 N.E.2d 1076 (1991), are met, including the following:

- a) Boggs had a duty to disclose what he knew about the wetland condition from the investigation he had performed, and the information received from Mr. Blatt;

- b) The information withheld was material to the transaction, because Plaintiffs would never have purchased the property had he know there was a wetland;

- c) The representations Boggs made to the Plaintiffs that the property would be ideal for the development of a mobile home park were known by Boggs to be false and/or were made with utter disregard of information he knew concerning the problems of the development related to the wetlands;

- d) These representations and the documents given by Boggs to Plaintiffs were obviously made with the intent that Plaintiffs would rely on the representations and documents, and purchase the land from Boggs;

- e) Plaintiffs justifiably relied on this information, coupled with the concealment that there was a problem of wetlands; and

- f) The Plaintiffs were obviously damaged by the inability to develop the land from that time until the present.

The doctrine of Caveat Emptor may provide a basis for argument, to a jury, but does not

provide a basis for summary judgment for Boggs in this case. It cannot be said that Plaintiffs could and should reasonably have discovered for himself the conditions of hydric soils and plant species present on the land which caused the Army Corps. of Engineers to stop work in May of 2000. At most, how discoverable these conditions were and the sufficiency of his own inquiry and efforts may become an issue for the jury. The cases cited do not support the conclusion suggested by Boggs that Caveat Emptor bars Plaintiffs from recovery as a matter of law. Whether these conditions were "open to observation," "discoverable," "observable" are all questions of fact. The same is true of Boggs' failure to disclose material facts, and whether his non-disclosures and misrepresentations were "readily observable or discoverable." <u>Layman v. Binns</u>, 35 Ohio St.3d 176, 519 N.E.2d 642.

The doctrine of Caveat Emptor precludes recovery only where (1) a defect is discoverable upon reasonable inspection; (2) the purchaser had an impeded opportunity to inspect the premises; and (3) the vendor did not commit fraud. <u>Padgett v. Sanders</u>, 130 O.App.3d 117, 719 N.E.2d 636 (1998). In this case, a jury issue is raised on at least the first and third of these elements.

In his Motion for Summary Judgment, Boggs argues that there was no reliance upon representations made by Boggs, based on the fact that Plaintiffs also retained the Rhodes firm to conduct an environmental survey. The environmental survey was completed at the suggestion of the Plaintiffs' bank which required that a Phase I Environmental Survey be performed because of the proximity of the Ohio River flood plain (Hutchison Dep. Pp. 72-73). The fact that the study was conducted and reported no wetlands does not preclude or nullify Plaintiffs' reliance upon the

representations of Boggs. There is nothing in logic or law to preclude reliance on two separate sources of information. It would be illogical to argue that if both sources of information were flawed, the Plaintiffs could not recover against either because of presumed reliance on the other.

## CONCLUSION

The Motion for Summary Judgment of Boggs should be overruled because genuine issues of material fact exist and Boggs is not entitled to judgment as a matter of law.

Respectfully submitted,

S/William P. Schroeder
William P. Schroeder (0027123)
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249
(513) 583-4212 (telephone)
(513) 583-4203 (facsimile)
**Attorney for Plaintiffs**

**CERTIFICATE OF SERVICE**

  I hereby certify that a true and accurate copy of the foregoing was served upon the following this 28th day of April, 2004:

Thomas R. Schuck, Esq.
1800 Firstar Tower
425 Walnut Street
Cincinnati, OH 45202-3957
*Attorney for Defendnt, H.T. Boggs*

W. Craig Robertson, III, Esq.
Wyatt, Tarrant & Combs LLP
250 West Main Street, Suite 1600
Lexington, Kentucky 40507
*Attorney for Defendants, Zimmer & Geisler*

E. David Marshall, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
271 W. Short Street
Lexington, Kentucky 40507

Kevin J. Waldo, Esq.
413 Center Street
Ironton, OH 45638-1505
*Attorney for Defendant, H.T. Boggs*

Craig R. Paulus, Esq.
Taft, Stettinius & Hollister
1800 First Tower
425 Walnut Street
Cincinnati, OH 45202-3957
*Attorney for Defendant, H.T. Boggs*

          S/ William P. Schroeder
          William P. Schroeder