UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SCOTT HUTCHISON ENTERPRISES, et al. | : : | Case No. 1:01-cv-00776 |
| | : | Judge Weber |
| Plaintiffs | : : | **PLAINTIFFS' MEMORANDUM** |
| vs. | : : | **IN OPPOSITION TO MOTIONS** **FOR SUMMARY JUDGMENT OF** |
| RHODES, INC., et al. | : : | **GEISLER AND ZIMMER** |
| Defendants | : | |

## STATEMENT OF THE CASE

This action arises out a transaction involving the purchase of real estate by the Plaintiffs from the Defendant, Boggs, conveyed by deed at a closing December 6, 1999, and recorded December 9, 1999. Despite the fact that a pre-closing environmental assessment done by defendant Rhodes and the moving Defendants, Geisler and Zimmer reported there were no wetlands or other significant environmental issues at the site, a jurisdictional wetland condition (hydric soils and plants) has prevented the development of the real estate due to federal and state wetlands regulations.

The Plaintiffs' Complaint was initially filed November 8, 2001, against the seller, Defendant, H.T. Boggs, and Defendant, Rhodes, Inc. which did the environmental assessment. The First Amended Complaint was filed April 23, 2002 principally in response to a Motion by Defendant Boggs for a more definite statement of the allegations in the original Complaint. The Second Amended Complaint was filed November 25, 2003 following discovery which revealed the involvement of the individual Defendants, James M. Zimmer and H. Jack Geisler, employees of the Defendant, Rhodes, Inc., who performed the environmental assessment and warranted the

conclusions.

The Defendants, Boggs and the individual Defendants, Geisler and Zimmer, have separately filed Motions for Summary Judgment contending they are entitled to judgment as a matter of law. Boggs' Motion, to which Plaintiffs have filed a separate Memorandum in Opposition, asserts that the Plaintiffs' claims against him are barred by the doctrine of Caveat Emptor; that the Plaintiffs knew or should have known of the environmental conditions (wetlands) that have impeded the development of the land; that there is no evidence to support Plaintiffs' contention that Boggs represented the land would be ideal for the development of a mobile home park in order to fraudulently induce the Plaintiffs to purchase the land; that in purchasing the land, the Plaintiffs relied solely on a flawed environmental assessment by Rhodes and the individual Defendants, Geisler and Zimmer, not the representations of the seller, Boggs. In their separate opposition to the motion of Boggs, it is Plaintiffs' position that genuine issues as to material facts exist to support Plaintiffs' contention that the representations and statements by Boggs and documents Boggs gave to Plaintiffs' during the negotiations preceding the December 6, 1999 closing are sufficient to support Plaintiffs' claim of fraudulent inducement; that they were statements and information upon which the Plaintiff relied in purchasing the property; that the doctrine of Caveat Emptor does not preclude Plaintiffs' recovery in this case; and that the Defendant, Boggs is not entitled to summary judgment on Plaintiffs' claims.

The Motion for Summary Judgment jointly filed on behalf of the individual Defendants, Geisler and Zimmer, is based on the contention that the claims against them should be dismissed, because they do not comply with the requirements of Ohio Revised Code §2305.09(d) which they contend requires the actions against these individual Defendants to be filed within four (4)

2

years from November 8, 1999, the date on which they signed and allegedly "issued" their report and letter to Plaintiffs. Plaintiffs oppose the Zimmer Motion on the basis that R.C. §2305.90(d) does not bar the claims asserted; there are genuine issues as to material facts which support a conclusion that the cause of action against Geisler and Zimmer did not arise when they "issued" (signed) the report; that the cause of action did arise within the four (4) years preceding the filing of the Second Amended Complaint; that the requirements of Ohio Revised Code §2305.09(d) were met. Plaintiffs also assert that their claims against the individual Defendants, Geisler and Zimmer arose out of contract and/or quasi contract, and are therefore governed by a 15 year statute of limitation, not the four year provision of R.C. §2305.90(d).

## STATEMENT OF FACTS

In the Summer and early Fall of 1999, Plaintiff became interested in purchasing a trailer park and adjacent vacant land in Burlington, Ohio, owned by the Defendant Boggs. The property lies near the southern most point of the State of Ohio, across the river from Huntington, West Virginia. It is comprised of two distinct parcels separated by a public road known as Old U.S. 52, (also called County Road 1). The parcel on the south side of Old U.S. 52 was already developed as a mobile home park known as Boggs Landing. The parcel on the north side of Old U.S. 52 was vacant. Plaintiffs wanted to acquire the mobile home park and the undeveloped parcel to develop another mobile home park approximately equal in size to Boggs Landing. During early discussions, Defendant, Boggs told the Plaintiff the vacant land on the north side would be ideal for development of an additional mobile home park. He told Plaintiffs he had looked into that, had plans and estimates, and had actually started clearing the land, but that his

interest had wained due to his age and the fact that he had moved away from the area and taken up residence in Florida. (Scott Hutchison Dep. Pp. 38-47)  Boggs gave Plaintiff a copy of plans and drawings for the development of the new mobile home park to be known as "Boggs Landing Addition," and some other information, and told Plaintiffs that he had bids and proposals for excavation and development work.

Plaintiff testified on deposition that Boggs led him to believe he could put in a mobile home park addition to Boggs Landing with no problems whatsoever; that Boggs showed him and gave him the plans for it, and gave him an estimate Boggs had received from an excavation company; that Boggs told Hutchison he could start on the project immediately and go forward with it, and that the only reason he "Boggs" had had not developed it was he relocated to Florida and was too old to have an interest in completing the project. (Scott Hutchison Dep. p. 38;  see also Dep. Ex. 90 a layout of the "Boggs Landing Addition" which was discussed and given to the Plaintiff).

In his deposition, Defendant Boggs denied he ever intended to build a "Boggs Landing Addition."  (Boggs [Day One] Dep. p. 47).[a]  He denied he had even seen documents produced from his own records in Florida that included correspondence and proposals addressed to him for work to be performed on the Boggs Landing Addition.  (Boggs [Day One] Dep. p. 76).  However, Boggs admitted he had a plan drawn for a "Boggs Landing Addition" done by a Marvin Grey in Florida.  (Boggs [Day One] Dep. pp.42-45)  He also admitted that Deposition Exhibit No. 189 bears the fax number of a Florida company called Metal-Mart, a company that

---

[a]     Note:  Two depositions of H.T. Boggs were taken on successive days, December 8 and 9, 2003.  References in this Memorandum are to the December 8, 2003 [Day One] deposition of H.T. Boggs.

4

Boggs still owns with a fax location where he regularly received faxes from Ohio. (Boggs [Day One] Dep. p. 79). Although Mr. Boggs denied any knowledge of the documents, Exhibit No. 181 is obviously a site plan and drawing of the Boggs Landing Addition; Exhibit No. 182 is a proposal for work to be performed in connection with the Boggs Landing Addition; Exhibit No. 183 is a letter of transmittal to H.T. Boggs transmitting the proposal for work to be performed on the addition; Exhibit Nos. 184 and 185 are additional proposals for work to be performed on the Boggs Landing Addition; Exhibit No. 186 is a drawing with notes for the development of Boggs Landing Addition; Exhibit No. 188 is another proposal for work and Exhibit No. 189 is a fax transmittal to Mr. Boggs. (Boggs [Day One] Dep. pp.57-80)

Relying on the representations of Boggs that the vacant land would be ideal for development of an additional mobile home park, Plaintiffs entered into a written purchase agreement with Boggs (Dep. Exhibit No. 195), dated October 20, 1999 which called for a closing on or before December 15, 1999. The closing documents were actually dated December 6, 1999, and the deed transferring the property was recorded December 9, 1999.

In preparation for the closing, Plaintiff contacted a bank to arrange financing and retained a real estate attorney for the title examination, preparation of the deed and other matters needed at the closing. The bank also required an environmental assessment, as a result of which Plaintiffs engaged the Defendant Rhodes on October 20, 1999 to perform an environmental study. (Scott Hutchison Dep. Pp 61-62, 76, 80 and Dep. Exhibit No. 92). Due to the proximity of the land to the Ohio River and flood plain areas, both the bank and Hutchison decided to require an environmental study of the real estate (Scott Hutchison Dep., pp. 57-59, 72-73; Konrad Dep., pp. 54-55; Boggs [Day One] Dep. 12/8/03, p. 128; Boggs [Day Two] Dep.

12/9/03, pp. 68-69). The parties included the requirement of a "Satisfactory Level One EPA Study to be performed before December 1st, 1999" in the Real Estate Sales Agreement which they executed on October 20, 1999 (Dep. Ex. 195, ¶ 5.2). Plaintiff specifically requested Rhodes to ascertain if there were wetlands on the property. Defendants Geisler and Zimmer are former employees of Defendant Larry Rhodes, Inc. ("Rhodes"). Zimmer is a geologist. Geisler is an engineer and was Zimmer's supervisor (Dep. Larry Rhodes, pp. 151-52). Both of them signed the environmental report and warranted its conclusions.

On the same day that the Real Estate Sales Agreement was executed, Defendant Zimmer and another employee of Rhodes, Adonis Spivey, made a written proposal to Plaintiffs to conduct the environmental study required by the Real Estate Sales Agreement (Dep. Ex. 132). Plaintiffs accepted this proposal the same day, thereby creating a contract for the performance of the environmental study. This contract (Dep. Ex. 132) states in pertinent part that the environmental study will include a "[r]eview [of] available information on the geographic area and the geologic and *hydrologic* conditions present" (emphasis added). On October 28, 1999, Defendant Zimmer and Spivey reported to Bob VanNostrand of Huntington National Bank, which had agreed to finance the purchase of the property from Boggs, that the environmental study had been completed and that with the exception of some "areas of unlawful dumping of building debris . . . *[n]o recognized environmental conditions were revealed in respect to the undeveloped tract during the site reconnaissance and record search"* (Dep. Exs. 63/134, emphasis added).

On November 8, 1999, Zimmer, Geisler, and Spivey *issued* their final written report (Dep. Exs. 71/135) representing that "*our* report of this investigation" includes, among other things, a "[r]eview of published historical, geological, topographic, and soil maps to identify any

6

*. . . wetlands,* or other environmentally sensitive features" (emphasis added). Their report does not identify any wetlands on the subject property. Rhodes *issued* the preliminary report on October 28, 1999 and a final report on November 8, 1999 bearing the signatures and certification of the individual Defendants, Geisler and Zimmer. The report indicated the absence of wetlands or hydric soil conditions. Contrary to the conclusions of Zimmer and Geisler, however, portions of the undeveloped land lie within a federally protected wetlands. Development of the property has been stopped by the U.S. Army Corps of Engineers.

Plaintiffs did not initially sue Geisler and Zimmer. However, based on the deposition testimony of Larry Rhodes, owner of Larry Rhodes, Inc., on October 27, 2003, Plaintiffs sought leave on November 6, 2003 to file a Second Amended Complaint adding Geisler and Zimmer as defendants because they were "directly involved in the environmental assessment and report, and both signed the report which contained a written warranty of the work" (doc. no. 68, p. 2). That motion was granted by the Court on November 20, 2003 (doc. no. 73). The Second Amended Complaint was filed on November 25 (doc. no. 75).

About four (4) months after the closing, sometime in April of 2000, Plaintiffs began clearing the property in preparation for developing a new mobile home park on the vacant land. However, the U.S. Army Corps of Engineers stopped the work, and issued a letter to Plaintiff dated May 3, 2000 ordering him to "cease further filling activities at the site." (Exhibit No. 164). According to Exhibit No. 166, Andy Lockwood, of Thomas & Company, an engineering firm working for Plaintiffs, contacted the Army Corps of Engineers on April 19, 2000 to inquire about the possibility of wetlands at the site. As near as can be determined, that date represents the first time there was any suspicion by Plaintiffs of an environmental problem (wetland) on the property.

# **ARGUMENT**

A.   SUMMARY JUDGEMENT STANDARD

It is clear that the test for Summary Judgment is not met in this case. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which they believe demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25, 106 S.Ct. 2548. Once the movant meets this burden, the opposing party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom "in a light most favorable to the nonmoving party."*Williams v. Belknap*, 154 F.Supp.2d 1069, 1071 (E.D.Mich.2001) (citing 60 *Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987)). However, at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter, *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir.1994) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505).

8

Therefore, the Court is not required or permitted ... to judge the evidence or make findings of fact. *Williams*, 154 F.Supp.2d at 1071. The purpose of summary judgment is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 130 F.Supp.2d 928, 930 (S.D.Ohio 1999). Ultimately, the Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52, 106 S.Ct. 2505.

 B. THE MOTION OF GEISLER AND ZIMMER FOR SUMMARY JUDGEMENT SHOULD BE OVERRULED

  The Motion of the individual Defendants, Geisler and Zimmer, should be overruled. Their reliance on Ohio Revised Code §2305.09 is misplaced for the reason that it attempts to place the claims against Geisler and Zimmer under the c*atch all* statute which is intended to cover causes of action "for an injury to the rights of the plaintiff not arising on contract nor enumerated in §§2305.01 to 2305.12, 2305.14 and 1304.35 of the Revised Code." Plaintiffs claims are not time-barred because they arise out of contract, and also because the causes of action against Geiser and Zimmer accrued at or after the closing December 6, 1999.. Consequently, the Second Amended Complaint filed November 25, 1999 was within four the four year time specification of RC §2305.09.

  In their Motion for Summary Judgment, Geisler and Zimmer misconstrue the claims asserted against them. Plaintiffs and Boggs have asserted *two* claims: (1) for professional negligence and (2) for breach of the written warranty contained in the environmental report which they signed and issued to Hutchison Enterprises (doc. no. 75, ¶¶ 46-58; doc. no. 80, cross-

claims). In their motion for Summary Judgment, Defendants Geisler and Zimmer contend that Plaintiffs' claims and Boggs' cross-claims against them are barred by the 4 year statute of limitations provided by Ohio Revised Code § 2305.09(D) because Plaintiffs did not add them to this action within four years of the date the *issued* their environmental report, November 8, 1999.

However, Plaintiffs claims against them are contractual in nature, and are governed by a 15 year limitation provided by R.C. § 2305.06, and are therefore timely filed.

Civil Rule 15(c) provides that an amendment of a pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, (2) the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth in the original pleading, or (3) in the case of an amendment changing the party against whom a claim is asserted, the new claim arises out of the original claim and the new party has received such notice that he will not be prejudiced and knew or should have known that the action would have been brought against him.

R.C. § 2305.06 provides a 15 year limitation period for claims based on an agreement, contract, or promise in writing. The environmental report (Dep. Exs. 71/135) contains the following written warranty (p. 11, no. H00019) immediately above Defendants' signatures:

> **Warranty –** In performing our professional services, we have used that degree of care and skill ordinarily exercised under similar circumstances by members of the profession. This warranty is in lieu of all other warranties, expressed or implied.

The contract into which Geisler and Zimmer entered (Dep. Ex. 132) called for them to identify the hydrologic condition of the real estate, and their report (Dep. Exs. 71/135), which specifically references wetlands, gives the property a clean bill of health. Based on the undisputed fact that a portion of the undeveloped land lies within a federal wetlands, which inhibits development of the property, there are genuine issues of fact that could result in a finding that Geisler and Zimmer

10

breached both their contract for the performance of the environmental study and their warranty of its results.  Inasmuch as both the contract and the report are in writing, the 15 year statute of limitations provided by R.C. § 2305.06 applies to these claims against Geisler and Zimmer, satisfying the requirement of Civil Rule 15(c)(1).

The amendment also satisfies the requirements of Civil Rule 15(c) (2) and (3) because the claims asserted against Geisler and Zimmer in Plaintiffs' Second Amended Complaint are the same claims asserted against Rhodes initially, and therefore arise "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading"; and Geisler and Zimmer received notice of the institution of the action, knew or should have known that they might be sued, and have asserted no prejudice which their joinder would occasion.  On May 9, 2001, Attorney Bert Ketchum, who then represented Scott Hutchison, wrote to Spivey, Zimmer, and Geisler informing them that "[a]round the 1st of the year, wetlands were identified in the undeveloped 13.37 tract" and that as a result, "Mr. Hutchison has incurred loss of use of the property and damages," and asked them "why the wetlands in the undeveloped 13.37 acre tract were not identified during Rhodes, Inc.'s investigation of the property" (Dep. Ex. 144).  On May 16, 2001, Geisler and Zimmer responded to Ketchum asserting that the identification of wetlands on the undeveloped land was not properly within the scope of their environmental report (the language of the report notwithstanding) and that "[n]o obvious indication of a wetlands environment was encountered in either the site reconnaissance or the literature review conducted for the subject property," despite the fact that a portion of the vacant land lies within a federally designated wetlands (Dep. Ex. 145).

Based on these exhibits and Rhodes' deposition testimony (Rhodes Dep., pp. 153-154), Geisler and Zimmer obviously knew by May, 2001 (six months prior to the institution of this action) of the potential claims against them and the facts on which they are based, and

recognized that they might be named as defendants if a lawsuit were filed. They have not been prejudiced by not being added to the suit until 2003, given that they have elected not to participate in discovery (see copy of their counsel's letter of March 23, 2004 attached). The requirements of Civil Rule 15(c) are therefore satisfied with respect to the claims against Geisler and Zimmer for breach of their written warranty.

Plaintiffs also contend that a claim of professional negligence is not time barred under R.C. §2305.09. In an action against an insurance agent for a loss occasioned by the agent's failure to secure coverage, the cause of action was held not to have accrued until the loss had been sustained. *Hambleton v. R.G. Barry Corp.*, 12 Ohio S.3d 179, 465 N.E.2d 1298 (1984). In this case, while the report may have been printed and signed by defendants, Geisler and Zimmer and *issued* to Hutchison on November 8, 1999, there is no documentation to establish exactly that the report was delivered to Hutchison, received and relied upon prior to November 23, 1999. In fact, the more compelling inference is that there was no reliance until December 6, 1999, when the closing occurred. Moreover, the deed was not recorded until December 9, 1999 and the cease and desist order which prevented Hutchison from developing the property was not issued by the Army Corps. of Engineers until April of 2000. It is clear that the "issuance of the report" in the abstract did not give rise to a cause of action by Plaintiffs. The injury could not have accrued until, at the earliest, December 6, 1999. Hence, the Second Amended Complaint filed November 23, 2003 was within four years and is not time-barred.

When negligence does not immediately result in damage, a cause of action for damages arising from negligent construction does not accrue until actual injury or damage ensues. *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio S.2d 376, 23 Ohio App.3d 346, 433 N.E.2d 147.

12

When a claim is based on work not performed in a workmanlike manner, although the tort is governed by Revised Code §2305.09, unless the damage is immediate, the cause of action does not accrue until actual injury occurs or damage ensues. <u>Point East Condominium Owners Assn. v. Cedar House Assoc.</u>, 104 Ohio App.3d 704, 663 N.E.2d 343 (1995). The four-year limitation does not begin to run until the plaintiff suffered an injury as a result of the alleged tortious conduct of the defendant, even if the plaintiff discovered the tortious conduct before the resulting injury occurred. <u>Wisecup v. Golf Development</u>, 56 Ohio App.3d 162, 565 N.E.2d 865 (1989).

The argument by Geisler and Zimmer that the claims should be time-barred is based entirely upon the assertion that the report was *issued* November 8, 1999. Presumably that is the date on which the Rhodes Report was completed and signed by Geisler and Zimmer, as that printed date appears on the documents which bear their signatures. (Exhibit 135). However, there is no indication before the Court as to when and how it was actually delivered, as distinguished from *"issued"*. Exhibit 134 suggests that there was a fax transmission dated October 29, 1999 of something characterized as a "preliminary letter," a copy of which went to Scott Hutchison. However, the closing documents were dated December 6, 1999, and the deed was recorded on December 9, 1999. Hence, until the closing, there was obviously no reliance, and no legal action taken upon the report because the Plaintiff had not taken title to the property. Prior to then, Plaintiff had no injury or damages, and no standing to bring a cause of action based on injury resulting from his purchase of the property in reliance on the certification of Geisler and Zimmer. See Exhibits 48 through Exhibit 53.

The records of the Army Corps. of Engineers (Exhibit 164) show that a site investigation was done by them in April 2000. A letter was written to Hutchison May 3, 2000 by the Army

13

Corps. of Engineers, which required Mr. Hutchison to "cease further filling activities at the site." It is the "cease and desist" letter which manifested the wetlands problem, and provides the date on which the cause of action arose. Exhibit 166 reveals that Mr. Andy Lockwood, of Thomas & Company, an engineering firm working for Plaintiff on the project, contacted the Army Corps. of Engineers April 19, 2000 to inquire about the possibility of wetlands in the site. This memorandum specifically documents when the Corps of Engineers investigation was initiated, which revealed the certification of Geisler and Zimmer to be wrong, and led to the stop work order. Only then could it be known that the conclusions, representations, and warranties of Geisler and Zimmer were flawed. It is factually and legally analogous to Fritz v. Brunner Cox, LLP, 142 O.App.3d 644, 756 N.E. 2d 740, which held that a claim against an accounting firm for alleged professional negligence in the preparation of a tax return did not accrue until the IRS issued an assessment. In this case, the Rhodes environmental assessment report of Geisler and Zimmer was analogous to the tax return in Brunner Cox, LLP, and the "cease and desist" letter of the Corps of Engineers was tantamount to the "assessment" made by the IRS. Until the "cease and desist" letter of the Corps of Engineers, no one knew that the Rhodes report was flawed and no damage to the Plaintiff had resulted.

## CONCLUSION

For the foregoing reasons, Plaintiffs submit that their claims against Defendants Geisler and Zimmer are timely and proper, and that Zimmer's and Geisler's motion for summary judgment should therefore be denied with respect to these claims.

Respectfully submitted,

       S/William P. Schroeder
William P. Schroeder (0027123)
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249
(513) 583-4212 (telephone)
(513) 583-4203 (facsimile)
**Attorney for Plaintiffs**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and accurate copy of the foregoing was served upon the following this 28th day of April, 2004:

Thomas R. Schuck, Esq.  
1800 Firstar Tower  
425 Walnut Street  
Cincinnati, OH 45202-3957  
*Attorney for Defendnt, H.T. Boggs*

W. Craig Robertson, III, Esq.  
Wyatt, Tarrant & Combs LLP  
250 West Main Street, Suite 1600  
Lexington, Kentucky 40507  
**Attorney for Defendants, Zimmer & Geisler**

E. David Marshall, Esq.  
Marshall, Dennehey, Warner, Coleman & Goggin  
271 W. Short Street  
Lexington, Kentucky 40507

Kevin J. Waldo, Esq.  
413 Center Street  
Ironton, OH 45638-1505  
*Of Counsel for Defendant, H.T. Boggs*

Craig R. Paulus, Esq.  
Taft, Stettinius & Hollister  
1800 First Tower  
425 Walnut Street  
Cincinnati, OH 45202-3957  
*Of Counsel for Defendant, H.T. Boggs*

           S/ William P. Schroeder  
           William P. Schroeder