UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Scott Hutchison Enterprises, Inc., et al., | : | Civil Action No. C-1-01-776 |
| | : | |
| Plaintiffs | : | Judge Weber |
| | : | |
| v. | : | |
| | : | **REPLY MEMORANDUM OF** |
| Rhodes, Inc., et al., | : | **DEFENDANT BOGGS IN SUPPORT** |
| | : | **OF HIS MOTION FOR SUMMARY** |
| Defendants | : | **JUDGMENT** |

Plaintiffs concede that the doctrine of *caveat emptor* governs this real estate purchase dispute. Faced with this principle, they oppose Defendant Boggs' motion for summary judgment (doc. no. 93) by hypothesizing issues of material fact where none exist. The undisputed evidence compels the conclusion that Boggs is entitled to summary judgment based on the doctrine of *caveat emptor*.

Plaintiffs describe their claim against Boggs as one for "fraudulent inducement" (doc. no. 98, p. 2).[1] This cause of action requires them to show that they exercised reasonable diligence: "Ohio law requires a person to exercise proper vigilance in his dealings, so that where he is put on notice as to the propriety of a representation, he is under a duty to reasonably investigate before reliance thereon." *Columbia Gas Transmission Corp. v. Ogle*, 51 F.Supp.2d 866, 876 (S.D. Ohio 1997)(Graham, J.), *aff'd mem.*, 172 F.3d 47 (6th Cir. 1998), citing *Foust v. Valleybrook Realty Co.*, 4 Ohio App. 3d 164, 446 N.E.2d 1122 (1981). In a case involving the sale of land, a claim for fraudulent inducement requires the plaintiff to prove that he was "not given an unimpeded opportunity to examine the premises" and that the defendant's actions

---

[1] Plaintiffs address only their fraud claim against Boggs and ignore their claim for breach of the Real Estate Sales Agreement (see doc. no. 93, pp. 17-19). Plaintiffs apparently concede that Boggs is entitled to summary judgment on the breach of contract claim.

{W0169589.1}

prevented him discovering the truth. *Pagett v. Sanders,* 130 Ohio App. 3d 117, 124, 719 N.E.2d 636 (1998). Otherwise, the doctrine of caveat emptor bars the claim. *Id.* This means that "[i]n Ohio, a person is required to exercise proper vigilance in a transaction and to avail themselves of information which is easily accessible to them," so that "[w]here representations are made regarding certain aspects of a real estate transaction which are subject to inspection and verification by the purchaser, and where they have had an opportunity to investigate, a purchaser will not have a cause of action for fraud even though the representations are untrue." *In re Landon,* 37 B.R. 568, 570 (Bankr. N.D. Ohio 1984), citing *Traverse v. Long,* 165 Ohio St. 249, 134 N.E.2d 256 (1956), and *Ralston v. Grinder*, 8 Ohio App. 2d 208, 221 N.E.2d 602 (1966).

Plaintiffs contend that an issue of fact exists as to whether Boggs knew of wetlands conditions on the vacant lots which he failed to disclose to Scott Hutchinson (doc. no. 98, p. 10). What Boggs knew and what he told Hutchison about the property is irrelevant because Hutchison had an unimpeded opportunity to inspect the property and examine the public records, and did not rely on anything that Boggs told him. In light of Hutchison's testimony - - which is corroborated by that of the banker who financed the transaction (Van Nostrand) and the lawyer who prepared the purchase contract (Konrad) - - Plaintiffs cannot have reasonably relied on anything that Boggs did or did not tell Hutchison about the vacant lots in deciding to proceed with the transaction, especially after Hutchison agreed to the inclusion of the disclaimer about "hydric soils" in the Real Estate Sales Agreement (Van Nostrand Dep., pp. 60-63; Konrad Dep., pp. 49-55; Scott Hutchison Dep., pp. 66-84; Dep. Exs. 10, 11, 19).

Plaintiffs also contend that an issue of fact exists as to whether the wetlands were "discoverable" (doc. no. 98, p.12). Given that the wetlands are a matter of public record (Dep. Ex. 200) and that Hutchison was repeatedly warned about this risk before entering into the

transaction, Plaintiffs cannot credibly assert that the existence and parameters of the wetlands were not "open to observation", "discoverable", and "observable" (doc. no. 98, p. 12).[2] In short, Plaintiffs' fraud claim against Boggs founders on the doctrine of *caveat emptor*.

### Evidentiary Disputes over the Nature and Extent of Boggs' Statements to Hutchinson Do Not Preclude Summary Judgment Because Plaintiffs Did Not Justifiably Rely on Boggs' Statements in Deciding to Purchase the Real Estate

Plaintiffs acknowledge that "justifiable reliance" on Boggs' statements is an essential element of their fraud claim (doc no. 93, p. 11). The evidence establishes that Plaintiffs did not rely on Boggs' statements in deciding to go forward with the transaction. Hutchison admits that he was relying on the results of Rhodes' environmental study and on what VanNostrand told him regarding the existence of wetlands (Scott Hutchison Dep., pp. 76, 99-100). Given this testimony, evidentiary disputes over the extent of Boggs' knowledge and the nature of his disclosures are irrelevant.

Nonetheless, Plaintiffs assert that "Boggs had a duty to disclose what he knew about the wetland condition from the investigation he had performed, and the information received from Mr. Blatt" (doc. no. 98, p. 11), and oppose summary judgment based on what they characterize as an evidentiary dispute between Boggs on the one hand and Russell Blankenship and William "Red" Dawson on the other; and on the deposition testimony of Thaddeus Blatt, who owns Navy Trucking Company located next to the vacant lots (doc. no. 98, pp. 5, 7-8). However, there is no evidentiary dispute. As set forth in Boggs' memorandum in support of his motion for summary judgment (doc. no. 93, p. 7), Hutchison testified that Boggs told him that "he had plans - - and he told me this on the phone before Bob Evans - - that he had plans to put in a mobile home park there and that he already even started the park and he decided not to do it no more because of his

---

[2] The Rhodes Defendants identified the wetlands on a map appended to their report (Dep. Ex. 139).

age and because of his distance from Huntington where he lives now" (Scott Hutchison Dep., p. 38).[3] This testimony is consistent with that of Blankenship and Dawson. Blatt testified that he saw some "filling in the front end of it, the property, there on Old 52 which would be on the south end" some time after the fall of 1996 (Blatt Dep., pp. 40-43).[4] This testimony is consistent with Boggs', who acknowledged that he "filled in a ditch or a low area there that was created by Blatt, the people that built the, you know, Yellow Freight. They'd swamped part of ours" (Boggs Dep. 12/8/03, pp. 52-57). However, there is no evidence that Boggs knew of Blatt's conversation with Jalanovich or of what Jalanovich was doing, if anything.[5]

Plaintiffs also argue that there is a dispute about why Boggs decided not to develop the property and what he told Hutchison in that regard which creates a genuine issue of material fact precluding summary judgment. Again, this is not the case. Hutchison testified that Boggs told him that he had abandoned plans to develop the property because of his age and the fact that he lived in Florida (Scott Hutchison Dep., p. 38). Boggs testified to the same effect (Boggs Dep. 12/8/03, pp. 103-08). Plaintiffs argue that Boggs abandoned plans to develop the property

---

[3] Boggs testified that he also showed Hutchison the U.S.G.S. map that indicates that a portion of the vacant lots lies within a federal wetlands and told him about the wetlands. Hutchison does not deny this, but he did not volunteer this information in his deposition. Boggs accepts Hutchison's version of their conversation as true for the purpose of the present motion.

[4] Hutchison admits that he knew that a portion of the vacant lots fronting Old U.S. Route 52 had been cleared (Scott Hutchison Dep., p. 36) and that he saw the filled area when he started to clear the property in January, 2000 (id, p. 184). The U.S. Army Corps of Engineers has identified this fill. It is outside the wetlands (Fudge Dep., p. 70).

[5] Blatt said that he talked to someone watching the work being done who identified himself as Boggs' foreman and gave Blatt a business card bearing the name Dewey Jalanovich (Blatt Dep., pp. 43, 45-46, 68-69). Jalanovich bought the mobile home sales business located across New U.S. Route 52 from the subject property from Boggs' family in 1998 and operated it until he sold the inventory of that business to one of Hutchison's companies in 1999 (Boggs Dep. 12/8/03, pp. 81, 85-86; Konrad Dep., pp. 113-16; Dep. Exs. 37, 190, and 192). Blatt testified that he gave Jalanovich permission to clean out the ditch in front of Navy Trucking on Old U.S. Route 52 and suggested to Jalanovich that "maybe you do or may you don't" want to get a wetlands delineation study of the vacant lots (id., pp. 43-44). Blatt has never met Boggs and has never talked to him -- in fact, he admitted that he would not know Boggs if he saw him (id, pp. 50-51). He also admitted he has no knowledge of who was clearing the land or why other than what Jalanovich told him, and that he has no personal knowledge of whether Boggs was involved in what was going on (id, pp. 67-68). Boggs testified that Jalanovich did not operate the mobile home park for him or do anything with Boggs' authority concerning the vacant lots (Boggs Dep. 12/8/03, pp. 83-86).

because "Boggs learned of the wetland issues when Mr. Blatt, the adjoining property owner, warned the Boggs Landing Manager, Dewey Jalanovich, who was clearing the land" (doc. no. 98, pp. 9-10), but there is no evidence to support this assertion. Indeed, the evidence is to the contrary: Boggs testified that he has known about the wetlands since the 1980s (Boggs Dep. 12/9/03, pp. 45, 49-55).

### The Wetlands Were Discoverable by Plaintiffs as a Matter of Law

The undisputed evidence is that the existence of the wetlands is a matter of public record and Hutchison was repeatedly warned about the risk before entering into the transaction. Indeed, Hutchison admits knowing about the "wetlands down there" (Scott Hutchison Dep., p. 57). Hutchison was warned first by VanNostrand and later by Konrad about the risk that the vacant lots might lie within a federal wetlands (VanNostrand Dep., pp. 60-61; Konrad Dep., pp. 53-55; Boggs Dep. 12/8/03, p. 128). Hutchison admits that on VanNostrand's recommendation, he hired Defendant Larry Rhodes, Inc. to perform an environmental study of the vacant lots (Dep. Exs. 71/135) specifically to make sure that there were no wetlands on the property (Scott Hutchison Dep., pp. 59-62, 81-82). He acknowledged Konrad's warning about the wetlands before the parties entered into the transaction and said that he was not concerned about the issue because he was getting an environmental study of the property covering wetlands (Konrad Dep., pp. 54-55; Boggs Dep. 12/8/03, p. 128), and he admits that he was relying on the results of Rhodes' environmental study and on what VanNostrand told him in lieu of making his own investigation (Scott Hutchison Dep., pp. 76, 99-100). Plaintiffs may not shift to Boggs the burden of "proper vigilance" which the law places on them.

## Conclusion

There is no genuine issue of material fact with respect to what did or did not occur with the vacant lots before Boggs sold them, what Boggs knew about them, what he told Hutchison, or what Hutchison knew and relied on in entering into the transaction. There is no evidence that Boggs received any information from Blatt or withheld any from Hutchison. Moreover, what Boggs knew and what he told Hutchison are irrelevant because of the doctrine of *caveat emptor*. Consequently, on the basis of the undisputed evidence, construing that evidence most favorably to Plaintiffs, including all reasonable inferences which may be drawn therefrom, Boggs is entitled to summary judgment in his favor as a matter of law.

Respectfully submitted,

_____
Thomas R. Schuck (0005336)
Trial Attorney for Defendant H.T. Boggs
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
(513) 381-2838


Of Counsel:

Kevin J. Waldo (0022379)
413 Center Street
Ironton, Ohio 45638-1505
(740) 532-4911


Craig R Paulus (0074352)
Taft, Stettinius & Hollister
1800 U.S. Bank Tower
425 Walnut Street
Cincinnati, Ohio 45202-3957
(513) 381-2838

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he served a copy of the foregoing Reply Memorandum upon the following counsel of record electronically or by regular United States mail, postage prepaid this 4th day of May, 2004:

							_____
							Thomas R. Schuck

William P. Schroeder, Esq.  
Attorney for Plaintiffs  
11935 Mason Road, Suite 100  
Cincinnati, Ohio 45249  

E. David Marshall, Esq.  
271 West Short Street, Suite 111  
Lexington, Kentucky 40507  

M. Bradford Sanders, Esq.  
9122 Montgomery Road, Suite 201  
Montgomery, Ohio 45242  
Attorneys for Defendant Rhodes, Inc., Rhodes Incorporated, and Rhodes & Associates, Inc.

Gayle B. McGrath, Esq.  
W. Craig Robertson, III. Esq.  
E. Christine Lewis, Esq.  
250 West Main Street, Suite 1600  
Lexington, Kentucky 40507-1746