Westlaw.

Not Reported in N.E.2d                                                                                                 Page 1
(Cite as: 1996 WL 181374 (Ohio App. 1 Dist.))

H
Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, First District, Hamilton County.

CROWNINSHIELD/OLD TOWN COMMUNITY URBAN REDEVELOPMENT CORPORATION
and
OLD TOWN APARTMENTS, LTD., dba Fourth & Plum Apartments, Plaintiffs-Appellees, Cross-Appellants,
v.
CAMPEON ROOFING AND WATERPROOFING, INC.,
and
PEABODY CONSTRUCTION CO., INC., Defendants,
and
NOTTER, FINEGOLD & ALEXANDER, INC., Defendant-Appellant, Cross-Appellee.

Nos. C-940731, C-940748.

April 17, 1996.

Strauss & Troy, Paul B. Calico, Esq., No. 0022365, William K. Flynn, Esq., No. 0029536, and Steven F. Stuhlbarg, Esq., No. 0059215, 2100 PNC Center, 201 East Fifth Street, Cincinnati, Ohio 45202, for Plaintiffs- Appellees/Cross-Appellants,

Rendigs, Fry, Kiely & Dennis, Ralph F. Mitchell, Esq., No. 0027102, Leonard A. Weakley, Jr., Esq., No. 0000152, and James J. Englert, Esq., No. 0051217, 900 Central Trust Tower, 5 West Fourth Street, Cincinnati, Ohio 45202, for Defendant-Appellant/ Cross-Appellee Notter, Finegold & Alexander, Inc.

PER CURIAM.

*1 These consolidated appeals stem from roofing-related problems that arose when several structures were converted into the residential apartment buildings known as the "Fourth & Plum Apartments" in downtown Cincinnati.

Plaintiff-appellee/cross-appellant, Crowninshield/Old Town Community Redevelopment Corporation ("Crowninshield"), a Massachusetts corporation, owned the buildings at issue, which, in turn, were leased to plaintiff-appellee/cross-appellant, Old Town Apartments, Ltd. ("Old Town"). Old Town, which undertook the project of converting the buildings into luxury apartments, is an Ohio partnership consisting of Crowninshield and Peabody Construction Co., Inc. ("Peabody").

In October 1978, Old Town contracted with defendantappellant/cross-appellee, Anderson, Notter, Finegold, Inc., a Massachusetts architectural firm now known as Notter, Finegold & Alexander, Inc. (hereafter "NFA"), to prepare plans and specifications for the renovation of the buildings. Pursuant to an "owner/architect" agreement, NFA was to provide certain pre-construction architectural, engineering and consulting services, including conducting necessary conferences and preparing preliminary studies and drawings. Old Town separately contracted with a Cincinnati-based architect, Thomas Cole, for the administration and supervision of the construction phase of the project.

In addition to being a general partner in Old Town, Peabody was the general contractor hired by Old Town for the renovation of the buildings. Peabody hired defendant-appellee, Campeon Roofing and Waterproofing, Inc. ("Campeon"), an Ohio corporation, to perform the roofing work. Defendant Koppers Company, Inc., ("Koppers") supplied the roofing materials that were ultimately used for the project.

The development of the 193-unit apartment complex at Fourth & Plum involved the conversion of three buildings. The largest of the buildings,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
(Cite as: 1996 WL 181374 (Ohio App. 1 Dist.))

Page 2

Building "A," had previously been comprised of three separate buildings itself and had served as a parking garage for the city of Cincinnati prior to its conversion into the Fourth & Plum Apartments. The other two buildings converted into the apartments are referred to as Buildings "B" and "C."

NFA's original plans and specifications for the project called for the construction of a "built-up" roof of layers of asphalt and felt paper fused together for Building A, and a patching job on the existing roofing on Buildings B and C. Evidently, despite the fact that Building A had previously been three separate buildings, the sections of which were separated by physical gaps referred to as "expansion joints", NFA did not separately identify the expansion joints in its specifications for the conversion project, and made no special provisions for the treatment of such expansion joints in the roofing plans for Building A.

At some point in early 1980, an alternate roofing plan was proposed by Campeon whereby the utilization of cheaper roofing membranes manufactured by Koppers was suggested for all three buildings. As a replacement for the built-up roof proposed by NFA, Campeon recommended "KKM Standard" (a multi-purpose membrane manufactured by Koppers) as a waterproofing system on the pool deck level of Building A to be covered by a concrete wearing course. Campeon further recommended a single-ply KKM aluminum membrane for the apartment roofs on Building A and for the roofs on Buildings B and C. These changes in the roofing plans were approved by the on-site architect, Thomas Cole, and the KKM products were subsequently utilized for the complex's roofing system.

*2 Roofing leaks appeared in Building A beginning in 1981, and a series of subsequent leaks developed in Buildings B and C. The roof leakage caused concrete spalling, deterioration and cracking, damage to interior apartments and loss of rental income, resulting in devastation to the apartment complex both physically and economically.

Crowninshield and Old Town initiated suit against Campeon on April 27, 1987. Koppers was added to the suit by Campeon. A separate action was filed by Crowninshield and Old Town against Koppers and NFA on February 13, 1988, and shortly thereafter, the two actions were consolidated. Numerous cross-claims among the parties were filed.

As a consequence of several settlements reached between the parties and the dismissal of various claims, NFA stood as the sole remaining defendant on the claims asserted by Crowninshield and Old Town. The two claims left pending against NFA alleged negligence and breach of contract with respect to NFA's design for the buildings' roofing system. NFA filed a motion for summary judgment based on its contention that the statute of limitations applicable to these claims had passed.

In March 1993, the trial court granted summary judgment to NFA. The trial court held that the claims asserted against NFA sounded in tort and were time-barred under the four-year statute of limitations set forth in R.C. 2305.09(D), since "it [was] clear that the plaintiffs knew or should have known that damage occurred, and was likely to keep occurring, * * * long before February 13, 1984, the date after which the cause of action against NFA would be barred by the statute of limitations." (T.d. 162.)

In July 1993, NFA filed an amended cross-claim against Campeon. In this pleading, NFA sought indemnification/ compensation for attorney fees from Campeon pursuant to certain language contained in a 1980 contract executed between Peabody and Campeon. Campeon filed a motion to dismiss the amended cross-claim on the basis that the cross-claim failed to state a claim upon which relief could be granted. The trial court granted Campeon's motion.

NFA has appealed, in C-940731, the August 12, 1994, dis-missal of its amended cross-claim, while Crowninshield and Old Town separately challenge, in the appeal numbered C-940748, the trial court's March 30, 1993, entry granting summary judgment to NFA. Campeon is included on the briefs submitted by Crowninshield and Old Town as a "plaintiff-appellee/crossappellant." Crowninshield, Old Town and Campeon will hereafter be collectively referred to as "Crowninshield."

We will first address the three assignments of error raised by Crowninshield with respect to the trial court's granting of summary judgment to NFA.

The second assignment of error advanced by

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d                                                                                                 Page 3
(Cite as: 1996 WL 181374 (Ohio App. 1 Dist.))

Crowninshield contends that the trial court erred when it ruled that Crowninshield's claim against NFA for breach of contract constituted a tort claim which was time-barred under the four-year statute of limitations set forth in R.C. 2305.09. Crowninshield maintains that the fifteen-year statute of limitations set forth in R.C. 2305.06 should have been applied to its purported contract claim.

*3 We begin our analysis by examining the claims asserted against NFA in Crowninshield's "Third Amended, Unified and Consolidated Complaint." The complaint set forth the following:
> Defendant [NFA] in its design work, plans, specifications, and drawings for Building A, failed to make any provisions for repairs of defective concrete and failed to investigate or address any potential corrosion and/or other problems caused by the contamination of the concrete and/or structural steel by chemicals used for de-icing purposes when Building A was a parking garage. [NFA's] failure resulted in corrosion of the re-enforcing [sic] steel and in spalling of the concrete. [NFA] also failed to design exterior expansion joints on the roof or on the balconies to overlay existing expansion joints. As a result of this failure, the concrete on the roof and certain of the balconies has cracked allowing additional water to penetrate Building A.

Based upon the above factual allegations, Crowninshield directed two of its nine claims for relief against NFA. The eighth claim for relief asserted a claim for negligence in that NFA allegedly " * * * acted with negligence and/or gross negligence in designing the roofing system for Building A, in failing to address or provide for concrete remedial work for Building A, and in failing to design exterior balconies on Building A, which negligence is the proximate cause of Plaintiffs' damages alleged herein." The ninth claim for relief alleged breach of contract against NFA, stating specifically that:
> Defendant [NFA] breached its contractual obligations and warranties with respect to the design or lack thereof for the renovations of the Buildings regarding the roofing systems, the concrete remedial work, and the expansion joints on the roof and balconies of Building A and proximately caused the damages alleged herein.

As we noted earlier, despite Crowninshield's attempt to classify the ninth claim as a "contract" claim, the trial court determined that both claims asserted against NFA constituted tort claims subject to a four-year statute of limitations. The trial court pointed out that Crowninshield/Old Town and NFA did indeed have a contract, but stated that Crowninshield was unable to assert an express breach of any contractual provisions since the contract did not contain any express warranties. According to the trial court, Crowninshield "[i]nstead [claimed] * * * that NFA 'failed to perform services in a workmanlike manner' and [alleged that such claim was] founded on contract, and thus subject to the fifteen year statute of limitations of R.C. 2305.06." The trial court rejected Crowninshield's position based upon its determination that a claim for failure to perform services in a workmanlike manner constituted a tort claim.

Based on the following, we conclude that it was unnecessary for the trial court to engage in a detailed analysis of the cases cited by the parties in order to reject Crowninshield's contention that the ninth claim in its complaint implicitly asserted a breach-of-contract claim against NFA for a breach of the warranty to perform services in a workmanlike manner. The parties' reliance upon the line of cases discussing the applicability of *Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 433 N.E.2d 147, was misplaced, as those cases involved claims for breach of an implied warranty to perform services in a workmanlike manner asserted specifically against builders/vendors and not architects, who are held to different standards with respect to extending warranties as to the work they perform. In *Cincinnati v. Stanley Consultants, Inc.* (Nov. 7, 1984), Hamilton App. No. C-830815, unreported, we concluded that there is a distinct difference between the implied warranties of workmanship charged against a builder-vendor and those flowing from the work performed by an engineer or architect. In rejecting the argument that architects impliedly warrant workmanship and reasonable fitness for intended use, we stated:
> *4 Good faith and loyalty to his employer constitute a primary duty of the architect. And the architect must use the skill and diligence which is exercised ordinarily by architects. Thus, in the preparation of plans and drawings, an architect owes * * * the duty to exercise his skill and ability, his judgment and taste, reasonably and without neglect, his efficiency in this respect

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d  
(Cite as: 1996 WL 181374 (Ohio App. 1 Dist.))

Page 4

being tested by the rule of ordinary and reasonable skill usually exercised by one in that profession. *The architect's undertaking, however, in the absence of a special agreement, does not imply or guarantee a perfect plan or satisfactory result, but he is liable only for failure to exercise reasonable care and skill.* [Citations omitted.] [Emphasis ours.]

We are convinced that *Stanley* applies to the instant action. In the absence of any showing that NFA's contract with Crowninshield and Old Town contained special provisions which would have given rise to express or implied warranties of workmanship or fitness, we cannot say, in light of our pronouncement in *Stanley*, that an implicit contractual warranty of workmanship arose by virtue of the fact that NFA simply entered into a contract with Crowninshield to prepare plans and specifications for the construction project. Instead, we conclude, as did the trial court, that the "gist" of the claims asserted against NFA sounded in tort, as the underlying nature of the claims alleged negligent design. See *Hibbett v. Cincinnati* (1982), 4 Ohio App.3d 128, 166 N.E.2d 832. Crowninshield's second assignment of error is, accordingly, overruled.

Crowninshield's first assignment of error alleges that the trial court erred in granting summary judgment to NFA be-cause a genuine issue of material fact existed as to the date of the onset of damages attributable to the leaking roofs. According to Crowninshield, the trial court's determination that Crowninshield's claims were time-barred because it knew or should have known before 1984 of damage attributable to the leaks amounted to a "finding regarding a disputed fact that is inappropriate in [a] summary judgment posture."

Crowninshield concedes that leaking first appeared in Building A in 1981. However, Crowninshield argues that those leaks, which, it maintains, were caused by a failure to turn up the waterproofing membrane at its edge, were "minor" and had been successfully addressed when an "entirely separate set of leaks occurred in 1986 in all three buildings which resulted in a new type of damage which was different and far more extensive than any of the damage occurring previously." According to Crowninshield, its cause of action against NFA for statute-of-limitation purposes was based on the more serious set of leaks which occurred in Buildings B and C in 1986. Crowninshield contends that NFA cannot demonstrate, with regard to the roofing system on Buildings B and C, any leakage prior to 1986, and that, therefore, summary judgment was improvidently granted on the basis that its claims were timed- barred, "at least with respect to those portions of Crowninshield's case based upon leaks in Buildings B and C." Crowninshield's position is meritless.

*5 As we previously stated, the roofing system which was ultimately placed on Buildings B and C was a single-ply KKM aluminum membrane identical to the roofing material installed on portions of Building A, namely the penthouse roofs of Building A and the eastern portion of the eighth-floor pool deck. Contrary to Crowninshield's assertions, the record is replete with documents which indicate that severe leakage and resulting damage in both the KKM standard membrane and the KKM aluminum membrane were manifest prior to 1986.

In a 1981 letter from Crowninshield's management company to the general contractor, Peabody, serious problems with the roofing were detailed, including problems with the penthouse roofs, which, as we have already noted, were sealed with the same KKM material used on Buildings B and C. Thus, as the trial court aptly pointed out in its March 30, 1993, "Opinion and Entry" granting summary judgment to NFA, "since the same roofing material used on all three buildings was found to be defective as early as 1982, [Crowninshield was] on notice that, like the series of leaks in Building A, Buildings B and C would more that likely leak as well." Additionally, by October of 1982, the Ben T. Young Company had been contacted to perform repairs in the balcony and walkway areas of the eighth and ninth floors for

$33,498.00, and yet approximately one month later, in the "minutes" of a November 26, 1992, meeting convened for the on-site architect and Peabody to discuss roof leaks at the ninth-floor level of Building A, nine new roof leaks were listed. Moreover, in a February 1983 letter from Campeon's vice president, Mary Barnes, to Koppers, the manufacturer of the KKM products, Barnes indicated that her company's January 1983 inspection of the roof revealed the presence of "several very long splits in the KKM Aluminum"

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
(Cite as: 1996 WL 181374 (Ohio App. 1 Dist.))

Page 5

and that not only had the aluminum covering split, but its "core" had split as well. Barnes also noted that the KKM aluminum was "ridging over" the insulation joints on a large portion of the roof and had split open at several such joints.

Thus, it is clear that by a point in time no later than 1983 Crowninshield knew, or at least should have known, that it had a potential cause of action against NFA for damages attributable to deficiencies in NFA's designs and specifications with respect to the roofing system. The second assignment of error is, accordingly, overruled.

In Crowninshield's third, and final, assignment of error, Crowninshield essentially asserts that the trial court applied an inappropriate standard when it determined the accrual date for Crowninshield's tort claims. Crowninshield argues that a separate cause of action accrued for each separate occurrence of damage it alleged and that, therefore, claims arising after February 13, 1984, remained viable under a "delayed occurrence of damages" theory. Crowninshield's contention is meritless.

The cases cited by Crowninshield fail to provide support for Crowninshield's proposition. Rather, these cases provide support for the trial court's determination that the cause of action against NFA for its alleged negligent design services accrued no later than 1983, when, according to documents contained in the record, Crowninshield had clearly incurred actual damages in the form of roof leakage, money expenditures to offset the roof damage, and a reduction in the tenancy of the apartments due to the leaks. See *Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 433 N.E.2d 147; *Wisecup v. Gulf Development* (1989), 56 Ohio App.3d 41, 565, N.E.2d 865. Based on the same underlying discussion and reasoning set forth in our resolution of the previous assignment of error, we likewise overrule this assignment of error.

*6 Based on the above, we cannot say that the trial court erred in granting summary judgment to NFA. The trial court correctly applied the statute of limitations contained in R.C. 2305.09, and, accordingly, NFA was entitled to judgment as a matter of law.

We turn now to the single assignment of error asserted by NFA in C-940731, wherein NFA argues that the trial court erred by granting Campeon's motion to dismiss NFA's amended cross-claim, which sought indemnification for attorney fees.

In its amended cross-claim, NFA stated that it was adding an additional claim to its initial cross-claim filed in July 1988. NFA's amended cross-claim alleged that NFA was entitled to indemnity from Campeon based upon its contention that NFA was the "architect" referred to in an express indemnity provision contained in a contract entered into in March 1980, between Peabody and Campeon. Attached to the cross-claim was that portion of the contract which NFA claimed gave rise to its entitlement to indemnification from Campeon. Campeon filed a motion to dismiss on the basis that NFA had failed to state a claim upon which relief could be granted. Campeon provided several affidavits in support of its position. The trial court granted Campeon's motion to dismiss, stating that it had considered the motion "along with the copious briefs, including all affidavits and exhibits thereto and oral arguments of counsel * * *."

In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted under Civ.R. 12(B)(6), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recover. *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 610, 433 N.E.2d 572, 575. Civ.R. 12(B) provides in relevant part that:
> When a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56.

The trial judge, in his entry, clearly stated that he had gone beyond the pleadings and considered evidence. Thus, the trial court, in effect, converted the motion into one for summary judgment. It is well settled that when a court converts a motion to dismiss for failure to state a claim into a motion for summary judgment, it must, at least fourteen days before the time fixed for hearing, expressly notify all parties that it has made such a conversion. See *State ex rel. Baran v. Fuerst* (1990), 55 Ohio St.3d 94, 563 N.E.2d 713; *Petrey v. Simon* (1983), 4 Ohio St.3d 154, 477 N.E.2d 1285. In the instant action, the record is devoid of any clear form of notice. Consequently, NFA is correct in its contention that the trial court erred by failing to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
(Cite as: 1996 WL 181374 (Ohio App. 1 Dist.))

Page 6

notify the parties of the conversion and by failing to provide them with an opportunity to present documentary evidence for the court to consider in determining the matter pursuant to Civ.R. 56. See *Motorists Mutual Ins. Co. v. Hancock* (Nov. 9, 1995), Trumbull App. No. 94-T- 5109, unreported; *Gillispie v. Harvey* (May 8, 1991), Hamilton App. No. C- 900171, unreported.

*7 The single assignment of error raised by NFA is, therefore, well taken.

Based on the foregoing, we affirm, in C-940748, the trial court's entry of summary judgment for NFA on the claims asserted by Crowninshield. However, with respect to C-940731, we reverse the trial court's dismissal of NFA's amended cross-claim and remand the cause for further proceedings consistent with law in regard to that cross-claim.

1996 WL 181374 (Ohio App. 1 Dist.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**Westlaw.**

101 F.3d 702 (Table)  
**Unpublished Disposition**

Page 1

(Cite as: 101 F.3d 702, 1996 WL 665609 (6th Cir.(Tenn.)))

**C**  
NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

Ronald L. FORCE, Plaintiff-Appellant,  
v.  
CITY OF MEMPHIS, James Ivy, Joseph Laurenzi, Defendants,  
7Rowena Adams, Carlos R. Davis, Paul H. Elrod, Gene Edward Hulley, Luther McCaskill, Steven Paul Opler, James K. Smith, William D. Taylor, John Vanzandt, Ronald Willis, Troy Todd, Defendants-Appellees.

No. 95-6333.

Nov. 14, 1996.

On Appeal from the United States District Court for the Western District of Tennessee, No. 94-02136; Julia Smith Gibbons, Chief Judge.

W.D.Tenn.

AFFIRMED.

Before: LIVELY and NELSON, Circuit Judges, and HACKETT, [FN*] District Judge.

FN* The Honorable Barbara K. Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation.

LIVELY, Circuit Judge.

**1 The question in this case is whether an amended complaint naming previously unnamed individuals as defendants, which was filed after the expiration of the applicable statute of limitations, relates back to the date of the original, timely-filed complaint. The district court held that the amendment did not relate back, and we agree.

I.

In the early evening of February 25, 1993, approximately nine Memphis police officers arrived at the plaintiff's home and announced that they had a warrant for his arrest. The police--who apparently had no warrant--handcuffed the plaintiff, put him in a squad car, and allegedly abused him for about 15 minutes. The police soon learned that they had arrested the wrong person and released the plaintiff. An internal police department memorandum dated February 25, 1993, summarized this incident.

The plaintiff filed this 42 U.S.C. § 1983 action in district court on February 24, 1994, one day before the expiration of the limitations period, against the City of Memphis and "Several Unknown City of Memphis Police Officers." The complaint alleged that the defendants violated the plaintiff's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments and, in addition, asserted pendent state law claims for assault and battery, false arrest, and negligence. The plaintiff maintains that it was impossible for him to ascertain and enumerate in his original complaint the names of the police officers who were involved in the incident because the February 25 departmental memorandum, which implicated specific officers, was not a public record. The plaintiff ultimately discovered the names of the unknown officers from the Memphis

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

101 F.3d 702 (Table)
**Unpublished Disposition**

Page 2

(Cite as: 101 F.3d 702, 1996 WL 665609 (6th Cir.(Tenn.)))

City Attorney on June 1, 1994, and filed an amended complaint on August 3, 1994, in which he named those officers and sued them individually and in their official capacities.

The only claim against the city in the amended complaint was based on the doctrine of *respondeat superior,* and the district court dismissed this claim. See *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 691 (1978). The individual police officers also moved for dismissal or summary judgment, arguing that the plaintiff's amended complaint was time-barred. In response, the plaintiff asserted that the amended complaint related back to the original complaint under Fed.R.Civ.P. 15(c)(3) because the original complaint described the officers and their conduct in sufficient detail to attribute constructive notice of the lawsuit to them. The district court disagreed, granted summary judgment for the defendant police officers, and entered a judgment dismissing the case in its entirety. The plaintiff filed a timely appeal.
We have jurisdiction under 28 U.S.C. § 1291 and review the district court's actions *de novo. Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995).

II.
A.

This case arose from the wrongful arrest of Mr. Force, which occurred on February 25, 1993, and the plaintiff's claims under § 1983, as well as his pendent state tort claims, are subject to a one-year statute of limitations. *Wilson v. Garcia,* 471 U.S. 261 (1985); Tenn.Code Ann. § 28-3-104(a)(1), (3) (Supp.1996). The plaintiff concedes that his amended complaint was filed outside the applicable limitations period. Thus, unless the amended complaint relates back to the original, timely-filed complaint, the plaintiff's action is time-barred.

**2 The relation back issue is controlled by Fed.R.Civ.P. 15(c), which in pertinent part provides:
  (c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
  (1) relation back is permitted by the law that provides the statute of limitations applicable to

the action, or
  (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
  (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
The claims asserted in Mr. Force's original and amended complaints arose from the same incident and are nearly identical in substance. The relation back issue must therefore turn on whether the police officers named in the amended complaint had sufficient notice of the lawsuit and whether they knew or should have known that, but for a mistake of identity, they would have been named in the original complaint.

B.

This court has held that the notice required by Rule 15(c)(3)(A) can be either actual or constructive. *Berndt v. Tennessee,* 796 F.2d 879 (6th Cir.1986).
In the present case, each police officer submitted to the district court an affidavit stating that he had no actual notice of the lawsuit during the relevant period of time. Apparently conceding as much, the plaintiff argues on appeal that the officers nonetheless had constructive notice, within the Rule 4(m) [FN1] period referred to in Rule 15(c)(3), of the lawsuit filed against the City of Memphis and "Several Unknown City of Memphis Police Officers."

  FN1. Rule 4(m) provides:
  (m) Time Limit for Service. If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

101 F.3d 702 (Table)  Page 3
**Unpublished Disposition**

(Cite as: 101 F.3d 702, 1996 WL 665609 (6th Cir.(Tenn.)))

to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).

In *Berndt*, this court discussed a "non-exhaustive" list of factors to be considered by a court that is attempting to determine whether a newly-named defendant had constructive notice of a lawsuit. These factors include the relationship of the new defendants to the defendant(s) originally named, whether the same attorney represented both original and new defendants, and whether the new defendants are officials of the original defendant. *Id.* at 884. Significantly, the *Berndt* court stated that "whether the new defendants knew or should have known that the suit should have been brought against them ... is a patently factual inquiry and left to the district court." *Id.*

### C.

In a written opinion, the district court carefully reviewed the requirements of Rule 15(c) and discussed decisions from this court and others dealing with the **relation back** issue. Referring specifically to *Brandt*, the district court found that the **relationship** between the originally-named city and the newly-named police officers in this case was insufficient to imply receipt of the notice required by Rule 15(c). The court noted that the newly-named defendants were not "high officials" of the city or of the police department and would not have been involved in the city's legal affairs so as to have notice of the institution of the action. Further, the city declined to represent the newly-named defendants; thus, the attorney who represented the original defendant was not involved in representing the later-named police officers.

**\*3** The district court then discussed other factors that led to its ultimate finding that the notice requirement was not met. The court pointed out that the plaintiff made no request for discovery until May 25, 1994, three months after the statute of limitations had expired, and offered no evidence that he could not have obtained the names of the officers involved in the incident if he had requested them earlier. The city responded within one week, giving the plaintiff the names of the officers he eventually named as new defendants. Finally, because the plaintiff received the names of the officers on June 1, 1994, three weeks before the time for service of process on the original complaint expired under Rule 4(m), he could have amended the complaint and served process on the new defendants within that time. Instead, the plaintiff waited until August 3, 1994, to file his amended complaint.

### III.
### A.

As he did in the district court, the plaintiff relies principally on our decisions in *Berndt* and in *Odum v. Knox County, Tennessee,* 902 F.2d 34 (1990) (Table). The plaintiffs in both cases were incarcerated and they filed the untimely § 1983 actions *pro se,* important facts that distinguish those cases from the present one. Furthermore, the unpublished decision in *Odum* is contained in a summary order issued under Rule 9 of the Rules of the Sixth Circuit and has no binding effect on this panel.

The plaintiff contends that a finding of constructive notice is required in the present case because he meets six of the eight factors mentioned in *Berndt*. Of that laundry-list of considerations, the only two not found in this lawsuit, alleges the plaintiff, are the presence of a *pro se* plaintiff and representation of all defendants by a common attorney. The plaintiff argues that, aside from these two factors, *Berndt* and the instant case are legally indistinguishable. The defendant, on the other hand, believes that the absence of these two factors is determinative. The plaintiff misinterprets *Berndt* 's reference to the non-exhaustive list of factors. Finding that a particular number of these factors is present does not automatically require a finding of constructive notice. The district court must make this determination on the basis of all the circumstances revealed by the entire record.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

101 F.3d 702 (Table)  
**Unpublished Disposition**

Page 4

**(Cite as: 101 F.3d 702, 1996 WL 665609 (6th Cir.(Tenn.)))**

The district court's "patently factual" determination that the newly-named defendants neither knew nor should have known that the action should have been brought against them and thus did not have constructive notice that the original complaint sought to hold them liable for the plaintiff's injuries is not clearly erroneous.

B.

Aside from the problem of insufficient notice under Rule 15(c)(3)(A), there exists an independent ground for affirming summary judgment for the defendants, one not discussed by the parties in their briefs or in oral argument. Under Rule 15(c)(3)(B), an amended complaint that adds a new defendant relates back to the original complaint only if the newly-named defendant "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [him]." We have recently held that this requirement is not satisfied where the caption of an original complaint refers to "unknown police officers" and, after the expiration of the applicable limitations period, an amended complaint specifically names those officers. See *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir.), *cert. denied*, 117 S.Ct. 78 (1996). This interpretation of Rule 15(c) is consistent with the statement in *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986), "[r]elation back is dependent upon four factors, all of which must be satisfied." The third of these factors is that the newly-named "party must or should have known that, *but for a mistake concerning identity*, the action would have been brought against it...." *Id.* (emphasis added). See also *Doe v. Sullivan County, Tennessee*, 956 F.2d 545, 552 (6th Cir.), *cert. denied*, 506 U.S. 864 (1992) (the issue is whether parties added by an amendment must or should have known that, but for a mistake concerning identity, the action would have been brought against them within the period of limitations).

**\*\*4** Other courts of appeals also limit relation back where a new party is added by an amended pleading to instances of mistake or misnomer. See, e.g., *Wilson v. United States Government*, 23 F.3d 559, 563 (1st Cir.1994); *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 468 (2nd Cir.1995), *modified*, 74 F.3d 1366 (1996); *Western Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1201 (4th Cir.1989); *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir.1993). Although *Cox* represents the first Sixth Circuit application of this rule in a case where named parties have been substituted for parties originally described as "unknown," we have long held that "FRCP 15(c) allows the correction of misnomers, but not the addition or substitution of new parties after the statute of limitations has expired." *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1450 (6th Cir.1991). See also *Ringrose v. Engelberg Huller Co., Inc.*, 692 F.2d 403, 405 (6th Cir.1982); *Marlowe v. Fisher Body*, 489 F.2d 1057, 1064 (6th Cir.1973). The *Cox* court simply clarified that "[s]ubstituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties." 75 F.3d at 240. In doing so, we concurred in the reasoning of several other courts of appeals that the mistake provision of Rule 15(c)(3)(B) requires, as its language suggests, a mistake or misnomer in the name of the original defendant, and that a plaintiff's lack of knowledge of the names of the "unknown officers" is not such a mistake or misnomer. See *Worthington*, 8 F.3d at 1256-57; *Barrow v. Wethersfield Police Dept.*, 74 F.3d 1366, 1367 (2nd Cir.1996), *modifying*, 66 F.3d 466 (1995).

The judgment of the district court is AFFIRMED.

101 F.3d 702 (Table), 1996 WL 665609 (6th Cir.(Tenn.)), Unpublished Disposition

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**Westlaw Attached Printing Summary Report for LEWIS,CHRISTINE 4138110**

| | |
|---|---|
| Your Search: | "RELATION BACK" W/75 RELATIONSHIP |
| Date/Time of Request: | Monday, May 03, 2004 14:20:00 Central |
| Client Identifier: | 000961-105311-ECL |
| Database: | OH-CS-ALL |
| Citation Text: | 101 F.3d 702 (Table) |
| Lines: | 249 |
| Documents: | 1 |
| Images: | 0 |

(C) 2004. Copyright is not claimed as to any part of the original work prepared by a U.S. government officer or employee as part of that person's official duties. All rights reserved. No part of a Westlaw transmission may be copied, downloaded, stored in a retrieval system, further transmitted or otherwise reproduced, stored, disseminated, transferred or used, in any form or by any means, except as permitted in the Westlaw Subscriber Agreement, the Additional Terms Governing Internet Access to Westlaw or by West's prior written agreement. Each reproduction of any part of a Westlaw transmission must contain notice of West's copyright as follows: "Copr. (C) 2004 West, a Thomson business. No claim to orig. U.S. govt. works."Registered in U.S. Patent and Trademark Office and used herein under license: KeyCite, Westlaw and WIN. WIN Natural Language is protected by U.S. Patent Nos. 5,265,065, 5,418,948 and 5,488,725.