Not Reported in N.E.2d  Page 1
2002 WL 264578 (Ohio App. 10 Dist.), 47 UCC Rep.Serv.2d 1103, 2002-Ohio-783
**(Cite as: 2002 WL 264578 (Ohio App. 10 Dist.))**
H

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Tenth District, Franklin County.
**Judith C. MORRISON, Plaintiff-Appellant,**
v.
**FIRST NATIONAL BANK (Zanesville), Defendant-Appellee,**
Pamela M. GUGLE et al., Third-Party Defendants-Appellees.
No. 01AP-555.

Feb. 26, 2002.

Co-owner of business sued financing bank for conversion and breach of contract. Bank counterclaimed against co-owner, as guarantor, for amount of defaulted loan. The Court of Common Pleas, Franklin County, entered directed verdicts for bank on co-owner's claims and on bank's counterclaim. Co-owner appealed. The Court of Appeals, Petree, J., held that: (1) breach of contract claim was subject to three-year statute of limitations in chapter governing bank deposits and collections; (2) error in applying three-year statute of limitations in chapter governing bank deposits and collections to co-owner's conversion claim was harmless; (3) savings clause did not extend statute of limitations for co-owner's claims against bank; (4) whether corporate resolution modified loan agreement was a question for the jury; and (5) issue of whether checks improperly paid by bank was the proximate cause of loan default was question for the jury.

Affirmed in part, reversed in part, and remanded.

West Headnotes

**[1] Banks and Banking ⇌ 219**
52k219 Most Cited Cases
Business co-owner's claim for breach of contract against bank for opening a second checking account and paying checks without her signature was subject to three-year statute of limitations in chapter governing bank deposits and collections, even though co-owner alleged her claim was not governed by bank deposit and collections chapter, where claim plainly arose out of relationship between bank and customer and was created when business initially opened account with bank. R.C. 1304.09.

**[2] Appeal and Error ⇌ 1030**
30k1030 Most Cited Cases
Trial court's error in applying three-year statute of limitations in chapter governing bank deposits and collections to business co-owner's claim that bank converted checks that did not include signatures of both business owners was harmless; claim for conversion was governed by three-year statute of limitations applicable to chapter governing negotiable instruments. R.C. 1303.55, 1303.60.

**[3] Limitation of Actions ⇌ 130(1)**
241k130(1) Most Cited Cases
Savings statute did not extend the statute of limitations in which business co-owner could bring her claims against financing bank for breach of contract and conversion, even though co-owner's motion to amend complaint in suit against other co-owner to include claims against bank was denied; co-owner never attempted to serve bank with amended complaint which negated her motion to amend as an "attempt to commence" an action against the bank. R.C. 1303.60, 1304.09, 2305.19.

**[4] Guaranty ⇌ 92(1)**
195k92(1) Most Cited Cases
Whether corporate resolution that required signatures of both co-owners on checks and for future indebtedness modified the loan agreement with financing bank was a question for the jury as co-owner's affirmative defense to guaranty of defaulted loan for bank's breach of loan agreement, where resolution was ambiguous as to whether it modified the loan agreement or merely modified the checking agreement.

**[5] Guaranty ⇌ 92(1)**
195k92(1) Most Cited Cases
Issue of whether checks improperly paid by bank proximately caused default of loan was a question for the jury in action by bank against co-owner of business, as guarantor, to repay a defaulted loan, where evidence failed to show whether checks were for a legitimate business purpose, and checks did not have signatures of both co-owners as required by corporate resolution of the business.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in N.E.2d  
(Cite as: 2002 WL 264578 (Ohio App. 10 Dist.))

Page 2

**[6] Appeal and Error** ⚖ 207  
30k207 Most Cited Cases  
Business co-owner failed to preserve for appellate review her claim that misconduct of counsel for financing bank that sued her as guarantor of defaulted loan prejudiced her and denied her a fair trial, where co-owner failed to object to or otherwise raise the issue of alleged misconduct to the trial court.

Appeal from the Franklin County Court of Common Pleas.

Judith C. Morrison, pro se.

Stubbins, Lewis, Watson & Erhard Co., L.P.A., and Brent A. Stubbins, for defendant-appellee.

OPINION

PETREE, J.

*1 Plaintiff-appellant, Judith C. Morrison, appeals from a judgment of the Franklin County Court of Common Pleas granting directed verdicts to defendant-appellee, First National Bank of Zanesville ("FNB"), on plaintiff's claims for breach of contract and conversion, and on FNB's counterclaim for a judgment in the amount of the balance owed on a loan on which plaintiff is a personal guarantor.

In January 1994, plaintiff and her twin sister, Pamela M. Gugle, decided to open a consignment store for upscale furniture in Columbus, Ohio. In May 1994, plaintiff and Gugle incorporated under the name "An Elegant Encore." Pursuant to the terms of the articles of incorporation, the sisters were the sole stockholders in the corporation, each sister owning fifty percent of the corporation's stock, and the only members of the corporation's board of directors. The corporate officers were elected at a meeting of An Elegant Encore's board of directors held on May 17, 1995, with Gugle being elected president and plaintiff being elected secretary/treasurer. In addition, the business plan called for plaintiff and Gugle to be salaried employees of An Elegant Encore, and for each to be paid an annual salary of $15,000 during the first year of business.

Plaintiff and Gugle each invested $10,000 of their own money into An Elegant Encore and sought additional start-up capital through a Small Business Administration ("SBA") program administered by FNB. On February 17, 1995, An Elegant Encore obtained an $80,000 SBA guaranteed loan from FNB. In order to obtain the loan, both plaintiff and Gugle were required to personally guarantee the entire amount of the loan. In working to obtain the loan, plaintiff and Gugle met with FNB banking officer, Kim McCourt. From that time until she left FNB in early March 1996, McCourt was the FNB officer assigned to work with An Elegant Encore.

On the same day that An Elegant Encore's loan was approved, plaintiff and Gugle executed a corporate resolution on behalf of An Elegant Encore which authorized FNB to open a checking account in An Elegant Encore's name (hereinafter the "original account"), to pay checks drawn on the account and to open new accounts in the corporation's name on the signature of either plaintiff or Gugle. However, on April 24, 1995, plaintiff and Gugle executed a second corporate resolution in which they altered the signature requirements on the original account such that FNB was required to have both of their signatures to pay checks of $500 or more drawn on the corporation's checking account and to open any new accounts in the corporation's name.

On March 25, 1995, An Elegant Encore opened for business. From the beginning, the business was successful and outperformed the projections made in the business plan.

On Friday, January 26, 1996, much to plaintiff's surprise, Gugle presented plaintiff with a letter, prepared by Gugle's lawyer, Michael Vasko, which demanded that plaintiff convey all of her interest in An Elegant Encore to Gugle and vacate the business premises by the following Monday morning. According to the letter, the basis for the demand was plaintiff's misuse of corporate funds. Plaintiff's denies such misuse and no evidence of the same has ever been presented. Plaintiff did not comply with Gugle's demand.

*2 On January 29, 1996, Vasko, at Gugle's request, called plaintiff at home and informed her that Gugle had terminated plaintiff's employment with An Elegant Encore, that plaintiff would no longer be permitted access to the business premises, and that plaintiff's presence on the business premises would be treated as an act of trespass.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in N.E.2d                                                                                           Page   3
**(Cite as: 2002 WL 264578, \*2 (Ohio App. 10 Dist.))**

Also, on January 29, 1996, Gugle wrote a letter to McCourt at FNB informing her of plaintiff's termination and requesting that FNB close An Elegant Encore's original account and open a new checking account to which Gugle would have sole access (hereinafter the "new account"). To this end, FNB employee, Maria Lopresti, completed, and Gugle executed, two documents that purported to be corporate resolutions authorizing, among other things, FNB to open the new checking account and to pay all checks signed by Gugle and drawn on An Elegant Encore's funds. At trial, the evidence was uncontroverted that An Elegant Encore's board of directors never issued or approved either of the purported corporate resolutions or the changes in An Elegant Encore's checking agreement, which the resolutions professed to authorize. In fact, the evidence showed that plaintiff, one of the corporation's two directors, was completely unaware of the purported resolutions or the changes made to the corporation's checking agreement with FNB.

On February 1, 1996, McCourt and Lopresti prepared an internal FNB memorandum in which they instructed FNB officials to open the new account for An Elegant Encore and to begin depositing all funds received from Visa, MasterCard, and American Express for An Elegant Encore in the new account rather than the old account.

On February 2, 1996, FNB opened An Elegant Encore's new checking account with Gugle having sole control over the account. Although Gugle had also requested that the original account be closed, the original account actually remained open until August 1996. The original account remained open because, shortly after opening the new account, FNB discovered that it was unable to have funds received from Discover Card deposited into the new account without plaintiff's approval. This was so because, unlike An Elegant Encore's relationships with Visa, MasterCard, and American Express, which were established through FNB, plaintiff and Gugle had contracted with Discover Card independently of FNB. Accordingly, FNB kept the original account open for the purpose of receiving Discover Card deposits and then transferred the funds received therefrom into the new account. Although the original account remained open, all of An Elegant Encore's business, except the receipt of Discover Card deposits, was transacted through the new account on Gugle's signature alone.

In the days after plaintiff learned that Gugle had terminated her employment with An Elegant Encore and locked her out of the corporate premises, plaintiff tried to telephone McCourt at FNB several times to set up a meeting to discuss the situation at An Elegant Encore. However, McCourt was never available to take plaintiff's calls and failed to return her calls.

**\*3** On February 13, 1996, plaintiff received a certified letter from McCourt instructing her to provide FNB with her annual financial statements no later than February 29, 1996, as required by the terms of An Elegant Encore's loan agreement. On February 27, 1996, plaintiff met with McCourt to provide FNB with her financial statement. At this meeting, plaintiff was told that McCourt was leaving FNB and that Jennifer Flocken would be taking her place. However, no one from FNB told plaintiff about any of the changes which had taken place with respect to An Elegant Encore's checking agreement with FNB.

On March 6, 1996, FNB entered into an allonge with Gugle that permitted An Elegant Encore to make interest-only payments for the months of February and March 1996. On June 10, 1996, FNB and Gugle entered into another allonge authorizing An Elegant Encore to make an interest-only payment for the month of April 1996.

On June 24, 1996, plaintiff was informed by Flocken that the loan of An Elegant Encore was in arrears. Plaintiff then told Flocken that she wanted an opportunity to try to save the business, and to that end would like to visit the bank and review An Elegant Encore's bank statements in order to help her assess whether the business could be saved. At this point, plaintiff was informed, for the first time, that FNB had taken her off of An Elegant Encore's checking account at Gugle's request and that FNB would not permit her to see the banking statements for the corporation of which she was half owner.

On July 22, 1996, Gugle informed Flocken that, in addition to being three months behind on its loan payments, An Elegant Encore was also several months behind on its lease and would have to close. Plaintiff, however, did not learn of the business's closing until November 1996, when she received a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in N.E.2d                                                                                                       Page   4
(Cite as: 2002 WL 264578, *3 (Ohio App. 10 Dist.))

certified letter from FNB advising her that the bank was preparing to sell off An Elegant Encore's few remaining assets and reminding her that she and Gugle were personally responsible for the outstanding balance on the loan.

On August 19, 1996, FNB made a final transfer of funds from An Elegant Encore's original account to its new account and closed the original account. On September 30, 1996, FNB closed the new account.

On December 2, 1996, plaintiff filed a complaint in the Franklin County Court of Common Pleas against Gugle for wrongful termination and defamation. Plaintiff subsequently amended this complaint to include a claim for defamation against Vasko. On May 13, 1998, plaintiff sought leave to file a second amended complaint adding FNB as a defendant, and asserting claims for conversion and breach of contract against FNB. On May 25, 1999, the trial court denied plaintiff's motion to amend. This court affirmed that denial in *Morrison v. Gugle* (2001), 142 Ohio App.3d 244, 262, 755 N.E.2d 404.

On December 17, 1999, plaintiff filed the instant action in the Franklin County Court of Common Pleas asserting the same claims for conversion and breach of contract against FNB that she had attempted to bring by way of an amended complaint in her action against Gugle. On March 30, 2000, FNB filed an answer, together with a counterclaim, against plaintiff seeking a judgment in the amount of the unpaid balance of An Elegant Encore's delinquent loan, plus interest thereon.

*4 Beginning on April 2, 2000, plaintiff's claims and FNB's counterclaim were tried to a jury. On April 16, 2001, the trial court entered directed verdicts for FNB on plaintiff's claims and FNB's counterclaim. Specifically, the trial court concluded that plaintiff's claims for breach of contract and conversion were time barred by the three-year statute of limitations contained in R.C. 1304.09. The trial court further concluded that, to the extent that plaintiff was attempting to bring a common law claim for conversion against FNB, such claim had been displaced by Ohio's adoption of the Uniform Commercial Code ("UCC"). With respect to FNB's counterclaim, the trial court found that the evidence was uncontroverted that plaintiff was personally liable on the loan and that plaintiff had failed to prove any affirmative defense which would relieve

her of that liability. Plaintiff appeals therefrom assigning the following assignments of error:

[1.] TRIAL COURT ERRED IN DIRECTING A VERDICT AGAINST APPELLANT BY FINDING HER CAUSES OF ACTION AROSE WITHIN R.C. 1304.01 TO R.C. 1304.40 AND MISAPPLYING R.C. 1304.09.

[2.] IN THE ALTERNATIVE THE TRIAL COURT ERRED IN DISREGARDING THE MATERIAL ISSUE OF FACT THAT APPELLANT PREVIOUSLY ATTEMPTED TO COMMENCE THIS ACTION WITHIN THREE YEARS AFTER HER CAUSES OF ACTION ACCRUED.

[3.] THE TRIAL COURT ERRED IN DIRECTING A VERDICT AGAINST APPELLANT BY FAILING TO ALLOW JURY DETERMINATION OF MATERIAL ISSUES OF FACT INTRODUCED IN DEFENSE OF APPELLEE'S COUNTER CLAIM.

[4.] APPELLANT'S RIGHT TO A FAIR TRIAL AND THE INTEGRITY OF THE JUDICIAL PROCESS WERE COMPROMISED BY MISCONDUCT OF APPELLEE.

Preliminarily, because plaintiff's assignments of error arise in the context of the trial court's grant of directed verdicts, the trial court's judgment will not be reversed on appeal unless the evidence adduced at trial and the facts established by admissions in the pleadings and in the record, construed most strongly in favor of the nonmoving party, are such that reasonable minds might arrive at differing conclusions about factual issues in the case. *Brown Motor Sales, Inc. v. Keeley* (Sept. 30, 1996), Lucas App. No. L-95-330, unreported; *Savin Corp. v. American Business Equipment, Inc.* (June 15, 1982), Franklin App. No. 81AP-545, unreported. Neither the weight of the evidence nor the credibility of the witnesses is before the trial court when ruling on a motion for a directed verdict. *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 344 N.E.2d 334.

Plaintiff's first and second assignments of error will be addressed together as both challenge the trial court's conclusion that plaintiff's claims against FNB were commenced outside of the three-year

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




statute of limitations set forth in R.C. 1304.09 (Uniform Commercial Code ["UCC"] 4-111).

Plaintiff first argues R.C. 1304.09 does not apply to her claims for breach of contract and conversion. We will address this argument separately with respect to plaintiff's two claims.

*5 [1] We turn first to plaintiff's assertion that R.C. 1304.09 does not apply to her contract claim against FNB. In support of this assertion, plaintiff relies upon *Stauffer v. Oakwood Deposit Bank* (1969), 19 Ohio App.2d 68, 74, 249 N.E.2d 848, wherein it was held that former R.C. 1304.29, the predecessor of current R.C. 1304.35 (UCC 4-406), did not give rise to a cause of action by a customer against a bank for breach of a depository contract. Based upon the holding in *Stauffer,* plaintiff appears to presume that no breach of contract action by a customer against a bank arises under R.C. 1304.01 to 1304.40 (Article 4 of the UCC), and therefore that R.C. 1304.09, the statute of limitations applicable to claims arising under these sections, does not apply to her contract claim. The flaw in plaintiff's argument is her conclusion that her contract claim against FNB does not arise under R.C. 1304.01 to 1304.40.

Plaintiff's contract claim asserts that FNB breached its contract with An Elegant Encore when it opened the second checking account in An Elegant Encore's name with only Gugle's signature and again when it paid checks drawn on more than five hundred dollars of An Elegant Encore's funds which bore only Gugle's signature, both in disregard of the terms of the contract as modified by the corporate resolution executed by plaintiff and Gugle on April 24, 1995. This claim plainly arises out of the bank/customer relationship that was created when An Elegant Encore opened its original checking account with FNB. It is well established that the contractual relationship between a bank and its customer is governed by R.C. 1304.01 to 1304.40 (Article 4 of the UCC). *Ed Stinn Chevrolet, Inc. v. National City Bank* (Nov. 27, 1985), Cuyahoga App. No. 49752, unreported, reversed on other grounds (1987), 31 Ohio St.3d 150, 151, 509 N.E.2d 945; see *SOS Oil Corp. v. Norstar Bank of Long Island* (N.Y.App.1989), 152 A.D.2d 223, 226, 548 N.Y.S.2d 308 (discussing Article 4 of the UCC). R.C. 1304.09 provides that "[a]n action to enforce an obligation, duty, or right arising under sections 1304.01 to 1304.40 of the Revised Code shall be brought within three years after the cause of action accrues." By its express terms, R.C. 1304.09 is the statute of limitations applicable to actions arising under R.C. 1304.01 to 1304.40. Accordingly, the trial court correctly concluded that R.C. 1304.09 is the statute of limitations applicable to plaintiff's claim for breach of contract.

We now turn our attention to plaintiff's argument that R.C. 1304.09 does not apply to her conversion claim. Plaintiff contends that there is nothing in R.C. 1304.01 to 1304.40, which would suggest that these sections govern her claim for conversion against FNB, and that her claim is therefore a common law claim subject to the four-year statute of limitations set forth in R.C. 2305.09.

[2] Plaintiff's conversion claim asserts that FNB converted numerous checks drawn on An Elegant Encore's funds when it paid checks bearing only one of two signatures required to make them "properly payable." [FN1] Subsection (A) of R.C. 1303.60 (UCC 3-420), entitled "Conversion of instruments," provides that an instrument is converted "if a bank makes * * * payment with respect to the instrument for a person not entitled to * * * receive payment." Plaintiff's allegations of conversion fall within this provision in that they effectively assert that, each time FNB paid corporate funds on checks which were not properly payable, FNB made payment to a person not entitled to receive such payment. See *Palmer Manufacturing and Supply Co., Inc. v. BancOhio National Bank* (1994), 93 Ohio App.3d 17, 21, 637 N.E.2d 386 (holding that a bank's payment of a check which was not properly payable due to a forged endorsement constituted conversion under R.C. 1303.55, the predecessor provision of current R.C. 1303.60). Consequently, plaintiff's conversion claim arises under R.C. 1303.01 to 1303.70 (Article 3 of the UCC), not under R.C. 1304.01 to 1304.40. Because plaintiff's conversion claim does not arise under R.C. 1304.01 to 1304.40, R.C. 1304.09 does not provide the statute of limitations applicable to the claim.

FN1. R.C. 1304.30(A) (UCC 4-401), provides that an item is "properly payable" if it is "authorized by the customer and is in accordance with any agreement between the customer and bank."

*6 Rather, R.C. 1303.16(G) (UCC 1-118) provides

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in N.E.2d                                                                                              Page   6
(Cite as: 2002 WL 264578, *6 (Ohio App. 10 Dist.))

the statute of limitations applicable to plaintiff's conversion claim. R.C. 1303.16(G) provides:
\* \* \* [T]he following actions shall be brought within three years after the cause of action accrues:
(1) An action for conversion of an instrument, an action for money had and received, or a similar action based on conversion[.]
 Because R.C. 1303.60 provides the statute of limitations applicable to plaintiff's conversion claim, we can only conclude that the trial court erred in applying the three-year statute of limitations contained in R.C. 1304.09 to plaintiff's conversion claim. However, the trial court's error in this regard was harmless, as R.C. 1303.60 also provides a three-year time limit for filing plaintiff's conversion claim.

[3] Plaintiff next argues that, if her contract and conversion claims are subject to a three-year statute of limitations, as we have concluded they are, the savings statute, R.C. 2305.19, acts to extend the time within which the claims could be filed because she attempted to bring the same claims against FNB when she sought leave to amend her complaint to add FNB as a party in her action against Gugle.

R.C. 2305.19 provides, in relevant part:
In an action commenced, or *attempted to be commenced,* \* \* \* if the plaintiff fails otherwise than upon the merits, and the time limited for the commencement of such action at the date \* \* \* failure has expired, the plaintiff \* \* \* may commence a new action within one year after such date. This provision applies to any claim asserted in any pleading by a defendant. \* \* \* [Emphasis added.]
 In *Shanahorn v. Sparks* (June 29, 2000), Franklin App. No. 99AP-1340, unreported, this court recognized that the savings statute applied to extend the time for filing an action if the filing party had previously commenced or *attempted to commence* the action within the applicable statute of limitations. *Id.* In *Shanahorn,* the plaintiff brought an action and attempted service on the defendant by certified mail within the applicable statute of limitations. The attempted service failed, however, and plaintiff did not successfully obtain service on the defendant within one year of the filing of the original complaint. Thereafter, the plaintiff voluntarily dismissed the original action. Less than one year later, plaintiff re-filed the action. Although the second action was filed outside of the applicable statute of limitations, the plaintiff argued that the savings statute had extended her time for filing since she had previously attempted to commence the same action. The defendant asserted that the savings statute did not apply because the plaintiff had never obtained service on him in the original action. This court resolved the dispute in the plaintiff's favor, concluding that the plaintiff had attempted to commence the action when she attempted to effect proper service on the defendant in the prior action. *Id.* See, also, *Thomas v. Freeman* (1997), 79 Ohio St.3d 221, 227, 680 N.E.2d 997 (indicating that the savings statute applied where the plaintiff had "demanded service" in the original action prior to the expiration of the statute of limitations).

\*7 Applying our holding in *Shanahorn* to the instant case, we conclude that the savings statute did not extend the time which plaintiff had to file her claims against FNB. Plaintiff has pointed to no evidence, and we have found none in the record which would indicate that plaintiff took any action to effect service upon FNB during the pendency of her motion to amend her complaint to add FNB as a party in her action against Gugle. Consequently, plaintiff's motion to amend her complaint did not constitute an "attempt to commence" the action against FNB for purposes of the savings statute. [FN2]

> FN2. Because plaintiff never took any action to effect service upon FNB in her original action, we do not reach the question of whether the denial of plaintiff's motion to amend her complaint to add FNB constituted a "failure of the action otherwise than the merits" for purposes of R.C. 2305.19.

Plaintiff's first and second assignments of error are overruled.

Plaintiff's third assignment of error challenges the trial court's granting of a directed verdict for FNB on its counterclaim for judgment on An Elegant Encore's loan balance. Plaintiff asserts that the trial court erred in granting FNB a directed verdict on its counterclaim, as the evidence presented at trial created genuine issues of fact regarding her affirmative defenses of breach of contract and prevention of performance.

At trial, plaintiff raised the affirmative defense that FNB breached the loan agreement with An Elegant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Encore. Specifically, plaintiff asserted that the April 15, 1995 corporate resolution, which required FNB to have the signatures of both plaintiff and Gugle before taking certain actions, modified not only An Elegant Encore's checking agreement with FNB, but also its loan agreement with FNB; that, despite the fact that this modification required FNB to have the signature of both Gugle and plaintiff to alter the loan agreement, FNB twice agreed to allonges which were signed only by Gugle and which effectively extended the period of the loan; that FNB's extensions of the loan without plaintiff's consent constitute breaches of the loan agreement; and that such breaches excuse plaintiff's obligation to repay the loan.

[4] Plaintiff is correct that a breach of the loan agreement by FNB will provide an affirmative defense to her obligation on the loan. *Graphic Enterprises, Inc. v. TAS International, Inc.* (Mar. 13, 2000), Stark App. No.1999CA0085, unreported. Plaintiff is also correct in asserting that, if the April 24, 1995 corporate resolution modified the loan agreement, FNB breached the agreement when it twice extended the loan without plaintiff's approval. However, the question remains as to whether the corporate resolution did in fact modify the loan agreement.

It is unclear from the face of the corporate resolution whether the document was intended to modify only An Elegant Encore's checking agreement with FNB, or whether it was also intended to modify the loan agreement. The language of the resolution does indicate that FNB is required to have the signatures of both Gugle and plaintiff before permitting either individual to: "Borrow money on behalf and in the name of this corporation, sign, execute and deliver promissory notes or other evidences of indebtedness." While this language is capable of being read to modify the loan agreement such that some future modifications of the agreement would require the approval of both Gugle and plaintiff, the language is not so clear as to make the document unambiguous. Thus, a question of fact exists regarding the meaning and effect of the corporate resolution.

*8 [5] Plaintiff also asserts that FNB's action in allowing Gugle to have sole control over An Elegant Encore's checking accounts in violation of the corporate resolution of April 24, 1995, prevented An Elegant Encore from performing its obligation to repay the loan by contributing to the corporation's financial failure. The evidence presented at trial indicates that An Elegant Encore was a successful and profitable venture until Gugle seized control of the corporation. The evidence further indicates that FNB paid numerous checks bearing only Gugle's signature, which were drawn on more than five hundred dollars of An Elegant Encore's funds in direct contravention of its depository contract with An Elegant Encore, as modified by the April 25, 1995 corporate resolution. However, the evidence does not reveal the identity of the payees on the improperly paid checks. Accordingly, it cannot be determined from the evidence presented whether the funds improperly paid out by FNB were used to pay legitimate business expenses or otherwise. In the absence of such information, a jury could not find that FNB's improper payment of An Elegant Encore's checks was a proximate cause of the corporation's subsequent default on the loan.

Given our conclusion that a question of fact exists regarding whether plaintiff proved the affirmative defense of breach of contract, we conclude that the trial court erred in granting a directed verdict for FNB on its counterclaim.

Plaintiff's third assignment of error is sustained.

[6] Plaintiff's fourth assignment of error asserts that FNB's trial counsel's repeated misconduct deprived her of a fair trial. In support of this assertion, plaintiff points to a list of incidents in which opposing counsel allegedly mischaracterized plaintiff's claims, misrepresented the state of the evidence, tampered with evidence, and raised unsupported legal arguments.

However, except for claiming generally that she was denied a fair trial, plaintiff has not explained how opposing counsel's alleged misconduct prejudiced her. It is not the duty of this court to help plaintiff construct her assignments of error or complete her arguments. *In the Matter of Estate of Joseph Lewis* (Nov. 19, 2001), Lawrence App. No. 00CA38, unreported. Further, it appears from the record that plaintiff has waived her right to raise any of the incidents of alleged misconduct by failing to object or otherwise raise them before the trial court.

Plaintiff's fourth assignment of error is overruled.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in N.E.2d  
**(Cite as: 2002 WL 264578, \*8 (Ohio App. 10 Dist.))**

Page 8

Having overruled plaintiff's first, second, and fourth assignments of error, but having sustained plaintiff's third assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas in part, reverse the judgment in part, and remand to that court for further proceedings in accordance with law and consistent with this opinion.

*Judgment affirmed in part, reversed in part, and cause remanded .*

BRYANT, J., and TYACK, P.J., concur.

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.


