**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| SCOTT HUTCHISON ENTERPRISES, INC., et al., | Civil Action No. C-1-01-776 |
| Plaintiffs, | (Judge Weber) |
| v. | PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT H.T. BOGGS |
| RHODES, INC., et al. | |
| Defendants. | (Affidavit of W. Scott Hutchison Attached Hereto) |

Now come the Plaintiffs Scott Hutchison Enterprises, Inc. and W.N. & Scott Hutchison Partnership (hereinafter collectively referred to as "Hutchison"), by and through counsel and pursuant to Rule 56(C) of the Federal Rules of Civil Procedure, move this Court for partial summary judgment on the issue of Defendant H.T. Boggs' ("Boggs") liability for fraud regarding the sale of undeveloped land ("Vacant Land") to Hutchison. Boggs owned a mobile home park known as Boggs Landing ("Boggs Landing") and the Vacant Land, which was immediately adjacent to Boggs Landing. While negotiating to sell Boggs Landing to Hutchison, Boggs insisted, as a condition of the sale, that Hutchison purchase the Vacant Land as well. To induce Hutchison to proceed with the purchase, Boggs knowingly misrepresented to Hutchison that the Vacant Land could be developed into a mobile home park and that sixty mobile home lots could be built on the Vacant Land. Boggs informed Hutchison that he began developing the Vacant Land into a mobile home park as an addition to Boggs Landing. Boggs further represented that the only reason he stopped the development was due to his age and the fact that he had moved to Florida. Despite those representations, Boggs knew wetlands existed on the Vacant Land, which prevented it from being developed into a mobile home park, and the

existence of the wetlands was the only reason he abandoned his plan to develop the Vacant Land into a mobile home park. Hutchison justifiably and reasonably relied upon Boggs' misrepresentations and omissions to its detriment and purchased the Vacant Land. After Hutchison purchased the Vacant Land, it discovered wetlands existed on the Vacant Land which prevented it from developing the Vacant Land into a mobile home park and, as a result, Hutchison has been damaged. While Boggs' representation or concealment to Hutchison and the amount of Hutchison's damages may be disputed and considered a question of fact, according to Civ. R. 56 (c), summary judgment may still be issue on certain elements of Hutchison's fraud claim against Boggs even if there are material issues of fact on certain other elements of the fraud claim.

The evidence in the record clearly indicates that if Boggs made a representation to Hutchison and concealed information from Hutchison, that representation and concealment were material to the transaction at hand and was made falsely, with knowledge of its falsity, and with the intent to mislead. Hutchison justifiably relied upon the representation and concealment and, as a result, was injured. Therefore, Hutchison is entitled to partial summary judgment on certain elements of their fraud claim against Boggs as a matter of law. Therefore, Hutchison respectfully request the Court to grant partial summary judgment in their favor on certain elements of their fraud claim against Boggs. A memorandum in support is attached hereto.

Respectfully submitted,

/S/ William P. Schroeder
William P. Schroeder (0027123)
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249
(513) 583-4212
(513) 583-4203 Fax
Trial Attorney for Plaintiffs

## **MEMORANDUM**

I. **Statement of Facts**

In the 1950's and 1960's, Boggs purchased land in the Village of Burlington on the Ohio River which is now occupied by Boggs Landing and the Vacant Land. (Boggs Depo. I, pp. 10-14, 17-19). In 1980, Boggs discovered there were wetlands on the Vacant Land. (Boggs Depo. I, p. 109-110, 118; Boggs Depo. II, pp. 48). Nevertheless, he decided to develop the Vacant Land into a mobile home park that would be an addition to Boggs Landing. (Boggs I, pp. 109, 118; Boggs II, p. 48). In the late 1990's, Boggs had a conceptual drawing of the addition to Boggs Landing labeled "Boggs Landing Addition" prepared in Florida and sent to Ohio ("Plans"). (Boggs Depo. I, pp. 42-45, 47-52, 71-72; Dawson Depo. p. 10, Exs. 90 and 181).[1] Boggs then spoke with a heavy-equipment operator, Russell Blankenship ("Blankenship") of Southern Excavating, and a site-development contractor, William Dawson ("Dawson") of Red Dawson Construction Company, Inc., regarding the work necessary to build Boggs Landing Addition. Additionally, Boggs gave these gentlemen copies of the Plans, solicited estimates from these companies and received proposals from these gentlemen who understood that Boggs intended to build Boggs Landing Addition on the Vacant Land. (Blankenship Depo., pp. 5-7, 9-11, 13, 15, 16, 19, 21-29, 44; Dawson Depo., pp. 4, 6, 8-13, 19-20; Boggs' Depo. pp. 58-65, Exs. 181-186, 188 and 189).

Over the course of a week, Boggs' neighbor, Thaddeus Blatt ("Blatt")[2], observed Boggs' foreman, Dewey Jalanovich ("Jalanovich"), bringing in truckloads of dirt, using a bulldozer, knocking down trees and clearing the Vacant Land. (Blatt Depo., pp. 40-43, 45-46, 47, 67, 76). Blatt cautioned Jalanovich about the existence of wetlands on the Vacant Land and advised him

---

[1] The Plans included a sanity sewer line, a water line and a divided road with stone. Id.
[2] Thaddeus Blatt is the president of Navy Trucking Company. (Blatt Depo., pp. 8-9). Navy Trucking Company owns the property immediately west of the Vacant Land.

3

that Boggs should have a wetland survey conducted of the Vacant Land to determine if he could build Boggs Landing Addition. (Blatt Depo. pp. 43-44). Soon thereafter, Boggs ceased building Boggs Landing Addition. (Blatt Depo. pp. 44, 80, Hutchison Depo., pp. 133-134).

In the summer and early fall of 1999, Hutchison approached Boggs about purchasing Boggs Landing, but Boggs told him that the Vacant Land had to be part of the contract. (Hutchison, pp 27, 32-33, Boggs Depo. I, p. 100 and II, pp. 63-64). To induce Hutchison to proceed with the purchase of the Vacant Land, Boggs advised Hutchison there was the need for another mobile home park, he had looked into building a mobile home park on the Vacant Land, he had plans and estimates for said park, he had begun to clear the Vacant Land for said park but his interest had waned due to his age and the fact that he had moved to Florida, the Vacant Land would be ideal for the development of mobile home park and it could develop the Vacant Land into a mobile home park and put sixty mobile homes on the Vacant Land. (Hutchison Depo., pp. 38-47, 128, 132, 181 and 186-187; Boggs. Depo. I, p. 103). Boggs then gave Hutchison the Plans and proposals. (Hutchison pp. 37-47, 55-56, 128, 132; Exs. 90 and 181).

Hutchison relied upon Boggs' representations that it could develop the Vacant Land into a mobile home park and purchased the Property. (Hutchison Depo., pp. 39-42, 47, 48, 73-76). Boggs, as seller, and Hutchison, as buyer, entered into a contract to purchase Boggs Landing and the Vacant Land ("Contract"). (Boggs Depo. II, p. 72; Ex. 195). After Boggs and Hutchison executed the Contract, Hutchison contacted his bank to arrange the financing. (Hutchison Depo., p.61). Hutchison's bank required that it have a Phase I environmental assessment ("Assessment") performed of the Property and recommended Defendant Rhodes, Inc. ("Rhodes") to conduct said Assessment. (Hutchison Depo., p. 51, 60-63, 76 and 80; VanNostrand Depo., pp. 60-63; Exs. 60 and 92). Hutchison engaged Rhodes to conduct said

4

Assessment. (Rhodes Depo. p. 38, Hutchison Depo., pp. 61-63, 81; Ex. 92). Rhodes reviewed published historical, geological, topographic, and soil maps to identify any wetlands and determined that no "recognized environmental conditions were revealed in respect to the undeveloped tract during the site reconnaissance and records search" other than the issues listed which did not include "wetlands." (Exs. 71, 134, 135). Rhodes issued its preliminary and final report finding no wetlands on the Property ("Report"). Id.

On December 6, 1999, Boggs and Hutchison closed on the Contract. (Hutchison Depo., pp. 121-122). Hutchison leased equipment in order to develop the Vacant Land. (Hutchison Depo., pp. 144, 157-158). In January of 2000, Hutchison's contractor began clearing the Vacant Land. (Hutchison Depo., pp. 124-125, 135, 147-148). On April 19, 2000, Hutchison's contractors became concerned about the possible existence of wetlands on the Vacant Land so it contacted the Army Corps of Engineers ("Corps"). (Fudge Depo., pp. 56, 76-77). The Corps advised Hutchison that the Vacant Land is located in jurisdictional wetlands and issued a cease and desist order prohibiting further work on the Vacant Land. (Fudge Depo., pp. 13-14, 56, 76-77; Hutchison Depo., p. 135; Dep. Exs. 95 and 99). As a result, Hutchison cannot develop the Vacant Land and it is losing money each month. (Hutchison Depo., pp. 174, 178-180).

II.   **Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). A party seeking to recover upon a claim . . . may . . . move . . . for

summary judgment in the party's favor upon all or <u>any part thereof.</u> Fed R. Civ. P. 56(c). (Emphasis added).

In the case at bar, Hutchison moves for partial summary judgment on certain elements of their fraud claim against Boggs. Summary judgment can be granted on single elements of a claim even if those elements do not resolve the entire claim. <u>Cardington Rd. Site Coalition v. Synder Properties</u>, 1994 U.S. Dist LEXIS 21508, 19-20, fn. 12 (S.D. Ohio 1994).

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. <u>Celotex</u>, 477 U.S. at 323, 106 S. Ct. at 2548. Once the movant meets this burden, the opposing party must set forth specific facts showing that there is as genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u> 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

The purpose of summary judgment is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. <u>Abercrombie & Fitch Stores v. American Eagle Outfitters</u>, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, the Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is one-sided that one party must prevail as a matter of law. <u>Anderson</u>, 477 U.S. at 251-52, 106 S. Ct. at 2502.

II.    Analysis

**Hutchison is entitled to summary judgment on its fraud claim against Boggs.**

The elements needed to establish fraud under Ohio law are: (a) a representation or, where there is a duty to disclose, concealment, (b) which is material, (c) made falsely, with knowledge of its falsity or with reckless disregard for the truth, (d) with the intent to mislead, (e) justifiable reliance upon the representation or concealment, and (f) resulting injury proximately caused by the justifiable reliance. <u>Gaines v. Preterm-Cleveland Inc</u>. (1987), 33 Ohio St. 3d 54, 55, 514 N.E.2d 709.

***Boggs had a duty to disclose the existence of wetlands on the Property to Hutchison, but he failed to disclose the existence of said wetlands to Hutchison and he misrepresented the ability of the Vacant Land to be developed into a mobile home park.***

A seller has a duty to disclose the existence of wetlands to buyers of parcels of property. See <u>Gershberg v. Kean</u>, 2002 Conn. Super. LEXIS 1956 ("The seller knew or ought to have known that the unit was located within wetlands, and near a landfill; it thus had a duty to disclose these problems to the buyers."). A seller's failure to disclose the existence of wetlands on the property that is being sold constitutes a misrepresentation. See <u>Shore Builders, Inc. v. Dogwood, Inc.</u>, 616 F. Supp. 1004, 1014 (1985) (The court found that the seller's failure to disclose the existence of "significant undisclosed building restrictions," namely that the subject property encroached on state and federal wetlands, possibility constituted a misrepresentation in the form of a nondisclosure) and <u>Miles v. McSwegin</u>, 58 Ohio St. 2d 97 (1979) ("It is well established that an action for fraud and deceit is maintainable not only as a result of affirmative misrepresentations, but also for negative ones, such as the failure of a party to a transaction to fully disclose facts of a material nature where there exists a duty to speak.").

In the case at bar, Boggs failed to disclose the existence of wetlands on the Property to Hutchison. Boggs discovered the existence of wetlands on the Property in the 1980's and was

also told of the existence of wetlands on the Property in 1999. (Boggs Depo. I, pp. 109-110; Boggs Depo. II, pp. 45, 49-55; Blatt Depo. pp. 40-44). Nevertheless, Boggs never disclosed the existence of the wetlands on the Property to Hutchison despite his numerous conversations with Hutchison. (Hutchison Depo., pp. 31-34, 38-43). Although Rhodes' Report indicated there were no wetlands on the Property, Boggs did not correct this error. (Ex. 135). Accordingly, Boggs concealed the nature of the Property from Hutchison.

Boggs also misrepresented the ability of the Vacant Land to be developed into a mobile home park. Although Boggs stopped developing the Vacant Land due to the wetlands on the Vacant Land, he advised Hutchison he had looked into building a mobile home park on the Vacant Land, he had plans and estimates for said park, he had begun to clear the Vacant Land for said park but his interest had waned due to his age and the fact that he had moved to Florida, the Vacant Land would be ideal for the development of mobile home park and it could develop the Vacant Land into a mobile home park and put sixty mobile homes on the Vacant Land. (Hutchison Depo., pp. 38-47, 128, 132, 181 and 186-187; Boggs. Depo. I, p. 103). Accordingly, Boggs misrepresented the ability of the Vacant Land to be developed into a mobile home park.

***Boggs' misrepresentation and concealment were Material to the Transaction At Hand.***

A seller's misrepresentation regarding the existence of wetlands on the property is plainly one of material fact. See <u>Pepsi-Cola Bottling Co. v. Handy,</u> 2000 Del. Ch. LEXIS 52 ("[T]he misrepresentation at issue was plainly one of material fact: the defendants failed to disclose that the property they were selling contained wetlands (which adversely affected the property's value)."); <u>Bear Fritz Land Co. v. Kachemak Bay Title Agency,</u> 920 P. 2d 759 (1996) ("[A] wetlands designation was a defect affecting the market value of the property that included

wetlands."); Sharpe v. Von Hoene, 575 So. 2d 514 (1991) ("[T]he land's designation as a federally protected wetland was a significant restriction on the use of the property."); Gisclair v. Matmoor, Inc., 537 So. 2d 876 (1989)("The wetlands designation of the land was ample reason for rescission of the contract."); Shore Builders, Inc., 616 F. Supp. at 1008 ("The seller failed to disclose the existence of 'significant undisclosed building restrictions' [the subject property encroached on wetlands]." Hence, a misrepresentation regarding the existence of wetlands is material to a transaction between a seller and a buyer of property containing wetlands.

In the case at bar, Boggs never disclosed the existence of the wetlands on the Property to Hutchison despite his numerous conversations with Hutchison. (Hutchison Depo., pp. 31-34, 38-43). Instead, he advised Hutchison that he had plans and estimates to build a mobile home park on the Vacant Land, he had begun to clear the Vacant Land for said park, it could develop the Vacant Land into a mobile home park and it could put sixty mobile homes on the Vacant Land to induce Hutchison to proceed with the purchase of the Vacant Land. (Hutchison Depo., pp. 38-47, 128, 132, 181 and 186-187; Boggs. Depo. I, p. 103). Hutchison would have not purchased the Vacant Land if it knew that it could not develop it into a mobile home park. (Hutchison Depo., p. 130). Accordingly, Boggs' representations and failure to disclose the existence of wetlands on the Vacant Land were material to the transaction at hand.

*Boggs' Misrepresentations were made falsely, with knowledge of their falsity.*

In 1980, Boggs discovered that there were wetlands on the Vacant Land. (Boggs Depo. I, pp. 109-110; Boggs Depo. II, pp. 45, 49-55). Boggs was also told of the existence of wetlands on the Vacant Land in 1999. (Blatt Depo. pp. 40-44). Boggs' neighbor, Blatt, cautioned Boggs' foreman about the existence of wetlands on the Vacant Land and advised Boggs' foreman that

Boggs should have a wetland survey conducted of the Vacant Land to determine if he could build Boggs Landing Addition. (Blatt Depo. pp. 40-44). Boggs admitted he was well aware of the wetlands problems with the Vacant Land. (Boggs Depo. I, p. 109 and II, pp. 45, 49-55). Furthermore, Boggs admitted that he priced the Vacant Land because he recognized that Hutchison would have to make a substantial investment to make use of the Vacant Land. (Boggs Depo., II, p. 64).

Despite the knowledge in Boggs' possession, he advised Hutchison he had looked into building a mobile home park on the Vacant Land, he had plans and estimates for said park and he had begun to clear the Vacant Land for said park, the Vacant Land would be ideal for the development of mobile home park, it could develop the Vacant Land into a mobile home park and it could put sixty mobile homes on the Vacant Land. (Hutchison Depo., pp. 38-47, 128, 132, 181 and 186-187; Boggs. Depo. I, p. 103). Accordingly, Boggs made false misrepresentations of fact to Hutchison with knowledge of their falsity with the intent to mislead Hutchison to purchase the Property.

*Boggs' Misrepresentations were made with the intent to mislead Hutchison.*

**Intent to mislead** is rarely proven by **direct evidence** and usually can be inferred or presumed from the facts and circumstances of the case. Bell v. Holden Surveying, 2002 Ohio 5018 citing Doyle v. Fairfield Machine Co., 120 Ohio App. 3d 192, 208 and Davis v. Sun Ref. & Mktg. Co., 109 Ohio App. 3d 42, 56, 109 Ohio App. 3d 42, 56, 671 N.E. 2d 1049. See Naekel v. Department of Transportation, 782 F. 2d 975, 978 (Fed. Cir. 1986) ("There is rarely direct evidence of intent to mislead so courts must rely on circumstantial evidence to infer intent.").

In the case at bar, Boggs' intent to mislead Hutchison can be gleaned from his own testimony. First, Boggs denied that he ever intended to build Boggs Landing Addition. (Boggs Depo. I, pp. 42, 53). But, in the next breadth, Boggs admitted that Marvin Gray drew up a plan for name labeled "Boggs Landing Addition" *and* Blankenship and Dawson testified that they had spoken with Boggs regarding the development of Boggs Landing Addition. (Boggs. Depo., I, pp. 42-45, 47-48; Ex. 90; Blankenship Depo., pp. 10-11, 15, 19, 21-22, 24-25, 28-29, 44; Dawson Depo., pp. 6, 8-9, 11-13 and 19-20). Boggs denied that he had spoken with Blankenship and Dawson regarding the development of Boggs Landing Addition. (Boggs Depo. I, p. 60). Then, Boggs denied that he had seen correspondence and proposals addressed to him for work to be performed for the development of Boggs Landing Addition even though <u>he produced these documents</u>, as part of the discovery in this case, to Hutchison. (Boggs. Depo., I, pp. 58-65, 75-76, Exs. 181-189). Boggs denied that he took any steps to construct an addition to the existing mobile home park or otherwise develop the Vacant Land. (Boggs Depo. I, p. 53). However, Boggs' neighbor testified that he observed Boggs' foreman bringing in truckloads of dirt, using a bulldozer, knocking down trees and clearing the Vacant. (Blatt Depo., pp. 40-44). Finally, Boggs denied that he discussed his plans to build Boggs Landing Addition with Hutchison, gave Hutchison a copy of the Plans, advised Hutchison that there had been estimates for developing Boggs Landing Addition and told Hutchison the Vacant Land would be ideal for the development of Boggs Landing Addition, but Hutchison testified that he received the Plans and proposal from Boggs and was told by Boggs that it could develop a mobile home park on the Vacant Land. (Boggs Depo. I, pp. 104-108; Hutchison pp. 37-47, 55-56, 128, 132).

Boggs' intent to mislead Hutchison can also be gleaned from his misrepresentations to Hutchison. Boggs knew that the Vacant Land contained wetlands and, as a result of these wetlands, he could not develop a mobile home park on the Vacant Land. Nevertheless, when Hutchison approached Boggs regarding purchasing the mobile home park, Boggs told him that the Vacant Land had to be part of the Contract and advised Hutchison he had looked into building a mobile home park on the Vacant Land, he had plans and estimates for said park and he had begun to clear the Vacant Land for said park, the Vacant Land would be ideal for the development of mobile home park, it could develop the Vacant Land into a mobile home park and it could put sixty mobile homes on the Vacant Land. (Hutchison Depo., pp. 38-47, 128, 132, 181 and 186-187; Boggs. Depo. I, p. 103). Based on the foregoing, it is evident that Boggs' misrepresentations to Hutchison regarding Hutchison's ability to develop the Vacant Land were made with the intent to mislead Hutchison to purchase the Property.

***Hutchison justifiably relied upon Boggs' representations regarding the Property.***

Hutchison justifiably relied upon Boggs' representations regarding Hutchison's ability to construct a mobile home park on the Vacant Land and purchased the Property from Boggs. Boggs had successfully owned and operated Boggs Landing on the Property and obtained plans and bids in order to build an addition to Boggs Landing on the Vacant Land and shared this information with Hutchison. (Hutchison Depo., pp. 27, 38, 42, 128 and 132). Hutchison testified that:

> [Boggs] was a very convincing man...I respected him very much and what he told me, I pretty much just took it to the bank....I believed everything he said about the [P]roperty...Boggs told me that the [P]roperty was ready to go and there was not problems with it ...I really had a lot [of] confidence in Mr. Boggs. And if – I felt if there was problem, he would have told me.

(Hutchison Depo., pp. 39, 40-42, 47, 48, 73). Since Hutchison believed Boggs and there were no zoning requirements, it did not inquire into the history of the Property, inquire into the character of the Property, look at any government maps of the Property or look at any official information about the Property. (Hutchison Depo., pp. 50, 54). Instead, Hutchison, at the behest of its bank, simply had Rhodes conduct the Assessment of the Property. (Hutchison Depo., p. 51). When Hutchison was asked if it did anything other than the Assessment to make sure the wetlands issue was addressed, Hutchison replied that he talked to Boggs who "spoke of the [P]roperty as if he knew it like the back of his hand. And he told me what I could do with that [P]roperty like the back of his hand, and I believed every word that came out of that man's mouth." (Hutchison Depo. pp. 74-76). Accordingly, Hutchison relied upon Boggs' representations regarding its ability to construct a mobile home park on the Vacant Land and purchased the Property from Boggs.

Boggs may attempt to invoke Rhodes' Report as evidence that Hutchison did not rely on the misrepresentations of Boggs. Hutchison only retained Rhodes to perform an environmental assessment of the Property because it was required by its bank to do so. (Hutchison Depo., p. 60-63, 76 and 80; VanNostrand Depo., pp. 60-63; Hutchison Depo., pp. 61-63; Exs. 60 and 92). There is no case law that states one cannot rely on two sources and in this case, Hutchison relied on two sources, namely the Rhodes' Report and the representations made by Boggs to Hutchison regarding the Vacant Land. (Hutchison Depo. pp. 74-76).

> ***As a direct and proximate result of Hutchison's justifiable reliance on Boggs' representations regarding the nature of the Property, Hutchison has been injured.***

As a direct and proximate result of Boggs' misrepresentations that Hutchison could build a mobile home park on the Vacant Land, Hutchison has been injured. First, Hutchison

13

purchased the Property from Boggs $1,100,00.00. (Boggs Depo. II, pg. 61; Hutchison Depo., p. 34). Then, Hutchison leased equipment in order to develop the Vacant Land. (Hutchison Depo., pp. 144, 157-158). Hutchison also hired the Thomas Company, Engineers, Contractors & Consultants, to design an addition to Boggs Landing and engaged someone to develop an addition to Boggs Landing on the Vacant Land only to find out from the Corps of Engineers that the Vacant Land was located in jurisdictional wetlands *and* receive a cease and desist order prohibiting further work on the Vacant Land. (Fudge Depo., pp. 13-14, 56, 76-77; Hutchison Depo., p. 137; Dep. Exs. 95 and 99). Stated another way, Hutchison paid over $100,000.00 for property that he planned on developing into a mobile home park only to discover that he could not develop it into a mobile home park. Hutchison would have not purchased the Vacant Land if it knew that it could not develop it into a mobile home park. (Hutchison Depo., p. 130). Even Boggs' attorney agreed that "anybody with any common sense wouldn't seriously consider spending the money it takes to build a 60-unit mobile home park in a federally protected wetland if they knew it was a wetland" and one would "have to be crazy to try to do that." (Hutchison Depo., pp. 129-130).

Now, Hutchison must continue to pay the mortgage for the Vacant Land and incur the costs associated with remediating the Property, which includes, but is not limited to, the costs of purchasing additional land and the costs involved in getting EPA approval for the remediation. (Hutchison Depo., p. 178 and Hutchison Affidavit ¶ 2). Hutchison has clearly been damaged as a direct and proximate result of its reliance on Boggs' representations to it regarding its ability to construct a mobile home park on the Vacant Land.

14

The evidence in the record clearly establishes Boggs made numerous misrepresentations of fact that were material to the transaction at hand and made said misrepresentations with reckless disregard for their truth or falsity and with the intent of misleading Hutchison into relying on said misrepresentations. Hutchison reasonably and justifiably relied on Boggs' misrepresentations and purchased the Property. Therefore, Hutchison is entitled to a partial summary judgment regarding Boggs' liability for fraud.

**Hutchison's Fraud Claim is not Barred by the Doctrine of Caveat Emptor.**

Contrary to Boggs' prior assertions, Hutchison's fraud claim against Boggs is not barred by the doctrine of *caveat emptor*. It is logically impossible for fraud to be barred by the doctrine of *caveat emptor* because fraud is an exception to the doctrine of *caveat emptor*. The doctrine of *caveat emptor* precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the full and unimpeded opportunity to examine the premises, and (3) there is no evidence of fraud on the part of the vendor. Layman v. Binns, 35 Ohio St. 3rd 176, 178-179 (1988).

Wetlands are not issues relating to the title of the property that can be easily discovered on an examination of public records, particularly records that a buyer would be expected to review in connection with the purchase of a piece of property. See e.g. Rose v. Zaring Homes, (1997) 122 Ohio App. 3d 739 and Noth v. Wynn, 59 Ohio App. 3d 65.

In the case at bar, the existence of wetlands on the Vacant Land was not open to observation or discoverable upon reasonable inspection. The developers from whom Boggs solicited and obtained estimates saw the Vacant Land and did not know of the existence of

wetlands on the Vacant Land. (Blankenship Depo., pp. 16-18, 36, 41; Dawson Depo., pp., 14-15). Hutchison and Rhodes saw a lot of trees. (Hutchison Depo. pp., 36, 44; Rhodes Depo., pp. 162-163, 168). Rhodes did not see standing water, saw grass, a swamp, cattails or a red-winged blackbird that would indicate the existence of wetlands on the Property. (Rhodes Depo., pp. 162, 164, 166 and 168). Accordingly, the wetlands were not open to observation or discoverable upon reasonable inspection.

Even if the Court finds that the wetlands were open to observation or discoverable upon reasonable inspection, Boggs engaged in fraud and the existence of fraud negates an essential element of the doctrine of *caveat emptor*. Hull v. Dietrich, 1997 Ohio App. LEXIS 5955 at *14; Harpest v. Parrott, 1999 Ohio App. LEXIS 4764. Evidence of fraud on the part of the seller renders caveat emptor an "impotent defense." Id.; See Rogers v. Hill, 124 Ohio App. 3d 468 (1998) ("If the vendor perpetrates fraud, he or she cannot rely on the defense of *caveat emptor*."); Hull v. Arrow Material Prods., 1995 Ohio App. LEXIS 3945 ("Thus, a vendor cannot reply on the defense of caveat emptor if, among other things, he perpetrates a fraud."); and Lepera v. Fuson, 83 Ohio App. 3d 17 (1992) ("[T]he seller…[was] not entitled to the defense of caveat emptor if [he] committed fraud"). Fraud will defeat any application of caveat emptor even where defects complained of are open and obvious and the buyer has had unimpeded access to the property. Frost v. Bank One of Fremont, 1990 Ohio App. LEXIS 4176. The sort of fraud necessary to defeat application of *caveat emptor* was described by the Supreme Court as follows:

> An action for fraud may be grounded upon failure to fully disclose facts of a material nature where there exists a duty to speak. This court has held that a vendor has a duty to disclose material facts which are latent, not readily observable or discoverable through a purchaser's reasonable inspection.

Layman, 35 Ohio St. 3d at 178.

In the case at bar, Boggs had a duty to disclose the existence of wetlands on the Vacant Land but he failed to do so. Additionally, he made numerous misrepresentations to Hutchison regarding its ability to construct a mobile home park on the Vacant Land which were material to the transaction at hand. Boggs made said misrepresentations to Hutchison falsely with knowledge of their falsity and with the intent of misleading Hutchison into relying on said misrepresentations. Hutchison reasonably and justifiably relied on Boggs' misrepresentations and purchased the Property. Accordingly, Boggs is liable for fraud. Therefore, Hutchison's fraud claim against Boggs is not barred by the doctrine of *caveat emptor*.

### III. Conclusion

For the foregoing reasons, Plaintiffs Scott Hutchison Enterprises, Inc. and W.N. & Scott Hutchison Partnership respectfully request this Court to issue partial summary judgment in their favor on certain elements of their fraud claim against Defendant H.T. Boggs.

Respectfully submitted,

/S/ William P. Schroeder
William P. Schroeder (0027123)
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249
(513) 583-4212
(513) 583-4203 Fax
Trial Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: E. David Marshall at edavidm@iglou.com; Gayle Benner McGrath at gmcgrath@wyattfirm.com; and Thomas Robert Schuck at schuck@taftlaw.com and **I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:**

Kevin J. Waldo, 413 Center Street, Ironton, OH 45638-1505; E. Christine Lewis, Wyatt Tarrant & Combs, LLP, 250 West Main Street, Suite 1600, Lexington, KY 40507-1746; W. Craig Robertson, Wyatt Tarrant & Combs, LLP, 250 West Main Street, Suite 1600, Lexington, KY 40507-1746; Craig R. Paulus, Taft Stettinius & Hollister, 425 Walnut Street, Suite 1800, Cincinnati, Ohio 45202; and M. Bradford Sanders, Sanders & Associates, 9122 Montgomery Road, Suite 201, Montgomery, OH 45242.

/S/ William P. Schroeder
William P. Schroeder