UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SCOTT HUTCHISON ENTERPRISES, INC., et al., | : | Civil Action No. C-1-01-776 |
| Plaintiffs, | : | (Judge Weber) |
| v. | : | PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT RHODES, INC. |
| RHODES, INC., et al. | : | |
| Defendants. | : | (Affidavit of W. Scott Hutchison Attached Hereto) |

Now come the Plaintiffs Scott Hutchison Enterprises, Inc. and W.N. & Scott Hutchison Partnership (hereinafter collectively referred to as "Hutchison"), by and through counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, move this Court for partial summary judgment on the issue of Defendant Larry Rhodes, Inc. ("Rhodes") liability for negligence and breach of contract due to its failure to identify the presence of wetlands on the subject property, which damaged Hutchison, despite its contract with Hutchison which specifically states it was responsible for identifying the presence of wetlands on the subject property ("Property"). While the amount of Hutchison's damages may be disputed and considered a question of fact, according to Civ. R. 56 (c), summary judgment may still be issued on liability alone even if there is an issue of material fact regarding damages. The evidence in the record clearly indicates that Rhodes is liable to Hutchison for negligence and breach of contract and Hutchison is entitled to partial summary judgment as a matter of law. Therefore, Hutchison respectfully request the Court to grant partial summary judgment in their favor and against Rhodes. A memorandum in support is attached hereto.

Respectfully submitted,

/S/ William P. Schroeder
William P. Schroeder (0027123)
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249
(513) 583-4212
(513) 583-4203 Fax
Trial Attorney for Plaintiffs

**MEMORANDUM**

I.  **Statement of Facts**

In the summer and early fall of 1999, Hutchison became interested in purchasing a mobile home park and adjacent vacant land in Burlington, Ohio ("Property") owned by Defendant H. T. Boggs ("Boggs"). The Property is comprised of two distinct parcels of property separated by a public road known as Old U.S. 52. The parcel on the south side of Old U.S. 52 was developed as a mobile home park known as Boggs Landing and the parcel on the north side of Old U.S. 52 was vacant land ("Vacant Land"). Hutchison approached Boggs about purchasing Boggs Landing, but Boggs told him that the Vacant Land had to be part of the contract. (Hutchison, pp 27, 32-33, Boggs Depo. I, p. 100 and II, pp. 63-64). To induce Hutchison to purchase the Vacant Land, Boggs advised Hutchison it could develop the Vacant Land into a mobile home park. (Hutchison Depo., pp. 38-40). Ultimately, Hutchison offered to purchase Boggs Landing and the Vacant Land in order to develop the Vacant Land into a mobile home park.

On October 20, 1999, Boggs, as seller, and Hutchison, as buyer, entered into a contract to purchase Boggs Landing and the Vacant Land. (Boggs Depo. II, p. 72; Ex. 195). After Boggs and Hutchison executed this contract, Hutchison contacted his bank to arrange the financing.

2

(Hutchison Depo., p.61). Hutchison's bank required that it have a Phase I environmental assessment performed of the Property ("Assessment") and recommended Rhodes to conduct said Assessment. (Hutchison Depo., p. 51, 60-63, 76 and 80; VanNostrand Depo., pp. 60-63; Exs. 60 and 92). Rhodes made a written proposal to Hutchison to conduct the Assessment required by Hutchison's contract with Boggs. (Ex. 132). Hutchison accepted Rhodes' proposal and engaged Rhodes to conduct said Assessment ("Contract"). (Rhodes Depo. pp. 38, 40-41, 52, Hutchison Depo., pp. 61-63, 81; Ex. 92). The Contract states that Rhodes would review available information on the geographic areas and hydrologic conditions[1] present on the Property (Ex. 132) and do the following:

> (1) A walkover survey of the Property to identify an environmental concerns that may be present; and
>
> (2) A review of deed records to establish a chain-of-title for the Property; and
>
> (3) A review of federal and state government records to identify facilities listed in U.S. Environmental Protection Agency and Commonwealth of Kentucky environmental databases; and
>
> (4) A review of published historical, geological, topographic and soil maps to identify any...wetlands or other environmentally sensitive features; and
>
> (5) Survey of surrounding properties to identify current facilities with the potential to produce a negative environmental impact on the site.

(Ex. 132).

Although Rhodes stated it would perform the items necessary to complete the Assessment, it actually outsourced part of the Assessment to EchoSearch, relied on EchoSearch's findings and incorporated the information provided by EchoSearch into its Report. (Rhodes Depo., pp. 25-27, 41). Rhodes called EchoSearch and said it needed a report on the Property and described the Property to them. (Rhodes Depo. pp. 26, 27). EchoSearch came

---

[1] The term "hydrologic conditions" includes subsurface and surface conditions, which would include a surface wetland. (Rhodes Depo. pp. 34-36, 58, 147; Ex. 69).

3

back with a report that covered different items pertaining to the Property including what happened to the Property in the past. Id. Although EchoSearch identified the Property as being situated in one location and created its report based upon that particular location, Rhodes identified the Property as being situated in a different location and created its report based upon that different location. (Rhodes Depo., p. 82, Exs. 139 and 143). Rhodes failed to confirm that it, as well as EchoSearch, was examining the proper, as well as the same, location for the Assessment. As a result, it examined the wrong piece of property for the Assessment and, in turn, the Rhodes' report regarding the Property was inaccurate. (Exs. 139 and 143).

Rhodes' representatives conducted a site reconnaissance of the Property but they did not bring GPS units with them to ensure they were inspecting the correct Property. (Rhodes Depo., pp. 72-73). When Rhodes conducted the site reconnaissance, Hutchison met Rhodes' representative and told her that he wanted to make sure she did two things: (i) make sure the Property is out of the hundred-year flood plain and (ii) make sure that there were not any wetlands on the Property. (Hutchison Depo., pp. 59-61). Hutchison specifically requested Rhodes to ascertain if there were wetlands on the Property. Id. Nevertheless, Rhodes did not do wetland studies of the Property and its Assessment did not include the determination of the existence of wetlands on the Property despite the fact that its contract with Hutchison states it would determine the existence of wetlands on the Property. (Rhodes Depo., pp. 34-35, 58, 76, 147; Exs. 35 and 69). Instead, Rhodes' representatives noted the Vacant Land consisted of 13.37 acres of scrubland and there was secondary tree and bramble growth over the entire site. (Ex. 135; Rhodes Depo., pp. 162-163, 168). Rhodes did not see standing water, saw grass, a swamp, cattails or a red-winged blackbird that would indicate the existence of wetlands on the Property. (Rhodes Depo., pp. 162, 164, 166 and 168). Rhodes' site reconnaissance revealed no physical

evidence of environmental conditions with respect to the Property (Exs. 134 and 135) Rhodes stated its records search also revealed no physical evidence of environmental conditions with respect to the Property but it was in possession of the National Wetland Inventory Map that identifies the locations of wetlands. (Rhodes Depo., pp. 137-140, and 153).

Although Rhodes' President confirmed that a site reconnaissance of the Property was performed, he could not identify who performed the remaining items necessary to complete the Assessment. Rhodes could not identify who reviewed the deed records at the clerk's office, the federal and state government records, or the published historical, geological, topographic and soil maps to identify any wetlands or other environmentally sensitive features. (Rhodes Depo., pp. 41, 56-58). Additionally, Rhodes could not confirm that that its representative actually did a survey of the surrounding properties to identify current facilities with the potential to produce a negative environmental impact on the Property. (Rhodes Depo., p. 59).

Rhodes reported all of its findings in a document entitled "Report of Phase I Environmental Site Assessment of Two Tracts: A 14.64 Acre Mobile Home Park and an Undeveloped 13.37 Acre Tract") ("Report"). (Rhodes Depo., p. 47; Exs. 71, 134, 135). Rhodes' Report states that no "recognized environmental conditions were revealed in respect to the undeveloped tract during the site reconnaissance and records search" other than the issues listed which did not include "wetlands." (Exs. 71, 134, 135). Rhodes' Report indicates the absence of wetlands and hydric soil conditions on the Property. Id. Rhodes' Report failed to disclose the presence of wetlands on the Property. Id. Rhodes' Report did not identify any wetlands on the Property. Id. In closing, Rhodes warranted its conclusions. Id. See page 11 of the Report wherein it is stated:  "**Warranty** – In performing our professional services, we have used that

5

degree of care and skill ordinarily exercised under similar circumstances by members of the profession. This warranty is in lieu of all other warranties, expresses or implied."

On December 6, 1999, Boggs and Hutchison closed on the Contract. (Hutchison Depo., pp. 121-122). Hutchison leased equipment in order to develop the Vacant Land. (Hutchison Depo., pp. 144, 157-158). In January of 2000, Hutchison's contractor began clearing the Vacant Land. (Hutchison Depo., pp. 124-125, 135, 147-148). Hutchison's contractor became concerned about the possible existence of wetlands on the Vacant Land so it contacted the Army Corps of Engineers ("Corps"). (Fudge Depo., pp. 56, 76-77, Ex. 166). The Corps advised Hutchison that the Vacant Land is located in jurisdictional wetlands and issued a cease and desist order prohibiting further work on the Vacant Land. (Fudge Depo., pp. 13-14, 56, 76-77; Hutchison Depo., p. 135; Dep. Exs. 95, 99 and 164). As a result, Hutchison cannot develop the Vacant Land as intended or use the land and it is losing money each month. (Hutchison Depo., pp. 174, 178-180).

**VI.     Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. Celotex, 477 U.S. at 323, 106 S. Ct. at 2548. Once the movant meets this

burden, the opposing party must set forth specific facts showing that there is as genuine issue for trial. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

The purpose of summary judgment is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Abercrombie & Fitch Stores v. American Eagle Outfitters, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, the Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is no one-sided that one party must prevail as a matter of law. Anderson, 477 U.S. at 251-52, 106 S. Ct. at 2502.

## VI. Analysis

**Rhodes is liable for negligence.**

The elements that a plaintiff must **prove** the following elements to succeed on a **claim** for **negligence**: duty, breach of duty, causation, and damages. Clay v. Sotheby's Chi., Inc., 257 F. Supp. 2d 9, 16-17 (2003) citing Anderson v. St. Francis-George Hosp., Inc., 77 Ohio St. 3d 82, 671 N.E. 2d 225, 227 (1996).

In the case at bar, Rhodes had a duty, assumed by its contract with Hutchison, to perform an Assessment of the Property and, in the course of performing said Assessment, determine the existence, if any, of wetlands on the Property. (Exs. 132, 134, 135; Hutchison Depo., pp. 59-61); Rich v. Ohio Underground, 1991 Ohio App. LEXIS 6155 at *9. Rhodes admitted that it breached its duty to the extent that it admitted that it did not determine the existence, if any, of wetlands on the Property. (Rhodes Depo., pp. 58, 76, 147).

Rhodes may assert, by way of defense, that it only agreed to conduct a Phase I environmental assessment of the Property and a Phase I environmental assessment does not

include the determination of the existence of wetlands on a piece of property. (Rhodes Depo. pp. 34-36, 58, 147; Ex. 69). However, a close inspection of the Contract as well as Rhodes' Report specifically states that Rhodes was required to identify any wetlands on the Property. (Ex. 132). Despite its express obligation to do so, Rhodes admittedly failed to identify the existence of wetlands on the Property even though it was in possession of the National Wetland Inventory Map that identifies the locations of wetlands. (Rhodes Depo., pp. 58, 76, 137-140, 147 and 153). Additionally, Rhodes failed to confirm that it, as well as EchoSearch, was examining the proper piece of property for the Assessment. (Rhodes Depo., p. 82, Exs. 139 and 143). As a result, it examined the wrong piece of property for the Assessment. (Exs. 139 and 143). Moreover, Rhodes could not identify who performed the remaining items necessary to complete the Assessment. (Rhodes Depo., pp. 41, 56-59). It could not identify who reviewed the deed records at the clerk's office, the federal and state government records, or the published historical, geological, topographic and soil maps to identify any wetlands or other environmentally sensitive features *nor* could it confirm that that its representative actually surveyed the surrounding properties to identify current facilities with the potential to produce a negative environmental impact on the Property. Id. Hence, Rhodes breached its duty to Hutchison.

As a direct and proximate result of Rhodes' breach of its duty to Hutchison, Hutchison has been damaged. First, Hutchison paid Rhodes for the Assessment and more than $100,000.00 for property that he planned on developing into a mobile home park. Then, Hutchison leased equipment in order to develop the Vacant Land and paid a contractor to clear the Vacant Land. (Hutchison Depo., pp. 124-125, 135, 144, 147-148, 157-158). After Hutchison's contractor became concerned about the possible existence of wetlands on the Vacant Land and contacted Corps of Engineers, the Corps of Engineers advised Hutchison that the Vacant Land is located in

8

jurisdictional wetlands and issued a cease and desist order prohibiting further work on the Vacant Land. (Fudge Depo., pp. 13-14, 56, 76-77, Hutchison Depo., p. 135; Ex. Dep. Exs. 95, 99, 164 and 166). As a result, Hutchison cannot develop the Vacant Land as intended or use the land and it is losing money each month. (Hutchison Depo., pp. 174, 178-180). Additionally, Hutchison must continue to pay the mortgage for the Vacant Land and incur the costs associated with remediating the Property, which includes, but is not limited to, the costs of purchasing additional land and the costs involved in getting EPA approval for the remediation. (Hutchison Depo., p. 178 and Hutchison Affidavit ¶ 2). Hutchison has been damaged as a direct and proximate result of Rhodes' breach of its duty to perform the Assessment and identify the existence of wetlands on the Property. Since Rhodes was negligent in performing its duty that it assumed by contract with Hutchison and its negligence is the proximate cause of Hutchison's damages, Rhodes is liable to Hutchison for Hutchison's damages. Rich v. Ohio Underground, 1991 Ohio App. LEXIS 6155 at *9.

**Rhodes breached its contract with Hutchison.**

A plaintiff must **prove** the following elements to succeed on a **breach of contract claim**: the existence of a contract, plaintiff's performance of the contract terms, breach of the contract by defendant, and plaintiff's damage or loss caused thereby. Ventura v. Cincinnati Enquirer, 2002 U.S. Dist. LEXIS 25723 citing Doner v. Snapp, 98 Ohio App. 3d 597, 60, 649 N.E. 2d 42, 44 (1994).

In the case at bar, Rhodes made a written proposal to Hutchison to conduct the Assessment required by Hutchison's contract with Boggs. (Ex. 132). Hutchison accepted Rhodes' proposal and engaged Rhodes to conduct said Assessment. (Rhodes Depo. pp. 38, 40-41, 52, Hutchison Depo., pp. 61-63, 80-81; Exs. 92 and 132). Rhodes admitted it had a contract

9

with Hutchison. (Rhodes Depo., p. 41). Hence, a contract exists between Hutchison and Rhodes.

Under the terms of the Contract, Hutchison was obligated to pay Rhodes for said Assessment. Hutchison fulfilled its contractual obligations and paid Rhodes for the Assessment. (Hutchison Depo. p. 115). Although Hutchison fulfilled its contractual obligations, Rhodes failed to fulfill its contractual obligations.

As discussed supra, Hutchison was obligated to perform an Assessment of the Property and, in the course of performing said Assessment, determine the existence, if any, of wetlands on the Property. (Exs. 132, 134 and 135). Although Rhodes denies that the identification of wetlands on the Vacant Land was within the scope of its engagement, the Contract states that Rhodes would conduct a "review of published historical, geological, topographic and soil maps to identify any…wetlands or other environmentally sensitive features." Rhodes failed to identify wetlands on the Property. (Exs. 134 and 135). Rhodes admitted that it did not determine the existence, if any, of wetlands on the Property. (Rhodes Depo., pp. 58, 76, 147). Rhodes was also obligated to conduct a walkover survey of the Property to identify an environmental concerns that may be present. (Exs. 132, 134 and 135). Although Rhodes conducted a walkover survey of the Property, it failed to identify the existence of wetlands on the Property. (Exs. 134 and 135). Accordingly, Rhodes clearly breached its contract with Hutchison.

As a direct and proximate result of Rhodes' breach of its contract with Hutchison, Hutchison has been damaged. First, Hutchison paid Rhodes for the Assessment and more than $100,000.00 for property that he planned on developing into a mobile home park. Then, Hutchison leased equipment in order to develop the Vacant Land and paid a contractor to clear the Vacant Land. (Hutchison Depo., pp. 124-125, 135, 144, 147-148, 157-158). After

Hutchison's contractor became concerned about the possible existence of wetlands on the Vacant Land and contacted Corps, the Corps advised Hutchison that the Vacant Land is located in jurisdictional wetlands and issued a cease and desist order prohibiting further work on the Vacant Land. (Fudge Depo., pp. 13-14, 56, 76-77, Hutchison Depo., p. 135; Ex. Dep. Exs. 95, 99, 164 and 166). As a result, Hutchison cannot develop the Vacant Land as intended or use the land and it is losing money each month. (Hutchison Depo., pp. 174, 178-180). Additionally, Hutchison must continue to pay the mortgage for the Vacant Land and incur the costs associated with remediating the Property, which includes, but is not limited to, the costs of purchasing additional land and the costs involved in getting EPA approval for the remediation, which will exceed $200,000. (Hutchison Depo., p. 178, Hutchison Affidavit ¶ 2). Hutchison has been damaged as a direct and proximate result of Rhodes' breach of its contract with Hutchison. Since Rhodes breached its contract with Hutchison, it is liable for the damages Hutchison incurred as a result of Rhodes breach of the Contract.

## VII.   Conclusion

For the foregoing reasons, Plaintiffs Scott Hutchison Enterprises, Inc. and W.N. & Scott Hutchison Partnership respectfully request this Court to issue partial summary judgment regarding Defendant Rhodes, Inc.'s liability for negligence and breach of contract.

Respectfully submitted,

/S/ William P. Schroeder
William P. Schroeder (0027123)
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249
(513) 583-4212
(513) 583-4203 Fax
Trial Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: E. David Marshall at edavidm@iglou.com; Gayle Benner McGrath at gmcgrath@wyattfirm.com; and Thomas Robert Schuck at schuck@taftlaw.com and **I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:**

Kevin J. Waldo, 413 Center Street, Ironton, OH 45638-1505; E. Christine Lewis, Wyatt Tarrant & Combs, LLP, 250 West Main Street, Suite 1600, Lexington, KY 40507-1746; W. Craig Robertson, Wyatt Tarrant & Combs, LLP, 250 West Main Street, Suite 1600, Lexington, KY 40507-1746; Craig R. Paulus, Taft Stettinius & Hollister, 425 Walnut Street, Suite 1800, Cincinnati, Ohio 45202; and M. Bradford Sanders, Sanders & Associates, 9122 Montgomery Road, Suite 201, Montgomery, OH 45242.

/S/ William P. Schroeder
William P. Schroeder