UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Scott Hutchison Enterprises, Inc., et al., | : | Civil Action No. C-1-01-776 |
| | : | |
| Plaintiffs | : | Judge Weber |
| | : | |
| v. | : | **DEFENDANT BOGGS'** |
| | : | **MEMORANDUM IN OPPOSITION TO** |
| Rhodes, Inc., et al., | : | **PLAINTIFFS' MOTION FOR** |
| | : | **PARTIAL SUMMARY JUDGMENT** |
| Defendants | : | **(DOC. NO. 110)** |

**PROCEDURAL POSTURE**

Following the completion of fact discovery, Defendant H.T. Boggs filed a motion for summary judgment on both of Plaintiffs' claims against him (doc. no. 93). Plaintiffs opposed this motion, asserting that "[i]t is clear that the test for Summary Judgment is not met in this case" (doc. no. 98, p. 8). The motion was fully briefed (doc. nos. 93, 98, and 100) and was argued to the Court on January 19, 2005. More than two months later, Plaintiffs filed a motion for partial summary judgment against Boggs (doc. no. 110) on the issue of liability on their first claim for relief against him (¶ 35) in their Second Amended Complaint (doc. no. 75), which they have described as one for "fraudulent inducement" (doc. no. 98, p. 2).[1] By its order of June 3, 2005 (doc. no. 117), the Court directed Boggs to respond to Plaintiffs' motion for partial summary judgment.

Plaintiffs' motion for partial summary judgment reargues the issues that were previously briefed and argued on Boggs' motion for summary judgment. Although Plaintiffs have attempted to recast the facts in light of the oral argument before the Court on January 19, their presentation adds nothing of substance to what they previously said. Similarly, although Plaintiffs cite numerous

---

[1] Plaintiffs have apparently abandoned their claim for breach of the Real Estate Sales Agreement entered into between Boggs and Plaintiff Scott Hutchison Enterprises, Inc. ("Hutchison Enterprises") (doc. no. 75, ¶ 36).

{W0460406.1}

authorities which they did not raise when responding to Boggs' motion for summary judgment, they have submitted nothing which supports their fraudulent inducement claim.

Plaintiffs' claim for fraudulent inducement fails because they are unable to prove that they exercised the requisite diligence in the real estate transaction at issue: "Ohio law requires a person to exercise proper vigilance in his dealings, so that where he is put on notice as to the propriety of a representation, he is under a duty to reasonably investigate before reliance thereon." *Columbia Gas Transmission Corp. v. Ogle*, 51 F.Supp.2d 866, 876 (S.D. Ohio 1997)(Graham, J.), *aff'd mem.*, 172 F.3d 47 (6th Cir. 1998), citing *Foust v. Valleybrook Realty Co.*, 4 Ohio App. 3d 164, 446 N.E.2d 1122 (1981). A claim for fraudulent inducement requires the plaintiff to prove that he was "not given an unimpeded opportunity to examine the premises" and that the defendant's actions prevented him discovering the truth. *Pagett v. Sanders*, 130 Ohio App. 3d 117, 124, 719 N.E.2d 636 (1998). Otherwise, the doctrine of *caveat emptor* bars the claim. *Id.* This means that "[i]n Ohio, a purchaser is required to exercise proper vigilance in a transaction and to avail themselves [*sic*] of information which is easily accessible to them," so that "[w]here representations are made regarding certain aspects of a real estate transaction which are subject to inspection and verification by the purchaser, and where they have had an opportunity to investigate, a purchaser will not have a cause of action for fraud even though the representations are untrue." *In re Landon*, 37 B.R. 568, 570 (Bankr. N.D. Ohio 1984), citing *Traverse v. Long*, 165 Ohio St. 249, 134 N.E.2d 256 (1956), and *Ralston v. Grinder*, 8 Ohio App. 2d 208, 221 N.E.2d 602 (1966).

## THE SUMMARY JUDGMENT STANDARD

The Court is familiar with the standard for deciding a motion for summary judgment under *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), and its progeny. As Plaintiffs observed in opposing Boggs' motion for summary judgment, "the Court must view the facts and draw all reasonable inferences therefrom 'in a light most favorable to the nonmoving party'," *Williams v. Belknap*, 154

F. Supp.2d 1069, 1071 (E.D. Mich. 2001), citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (doc. no. 98, p. 8). At the time they made that statement, Plaintiffs took the position that genuine issues of material fact precluded summary judgment on either of their claims against Boggs, even construing the record in Plaintiffs' favor. Now, however, they take the position that summary judgment is appropriate on the issue of liability on their fraudulent inducement claim. Boggs does not disagree with Plaintiffs that this claim may be resolved on summary judgment – just on how the Court should rule.

## STATEMENT OF FACTS

Boggs offers the following observations on Plaintiffs' statement of facts in support of their motion for partial summary judgment:

Plaintiffs assert that Tom Boggs attempted to develop the vacant lots into a mobile home park but abandoned his plans because portions of the lots lie within a federally designated wetlands (doc. no. 110, p. 3). Boggs admits having explored the possibility of developing the land (see doc. no. 93, p. 3) and according to Scott Hutchison, disclosed these activities to Hutchison when they had lunch on October 19, 1999, the day before the Real Estate Sales Agreement was executed.[2] Hutchison testified that when they had lunch that day, Boggs gave him a copy of the "Boggs Landing Addition" drawing and told him that he could construct a mobile home park on the vacant lots, and that Boggs also gave him the Southern Excavating proposal to clear the property (Scott Hutchison Dep., pp. 37-41, 46, 128). What Boggs told Hutchison about the wetlands is disputed. Boggs testified that he did not give Hutchison the "Boggs Landing Addition" drawing at that time,

---

[2] Plaintiffs cite the deposition testimony of Thaddeus Blatt, who owns Navy Trucking Company next door to the vacant lots (doc. no. 110, pp. 3-4), regarding a conversation which Blatt claims to have had with Dewey Jalanovich as evidence of what Boggs knew about wetlands on the property. This conversation is not significant because Boggs admits knowing about the wetlands. There is no evidence that Jalanovich, who Blatt testified was watching dirt being dumped on the vacant lots, was "Boggs' foreman" or represented Boggs in any way. Jalanovich purchased the corporation known as Boggs Landing, Inc., which operated a mobile home sales business on a nearby site, from the Boggs family in 1998 and operated that business until he sold the inventory of the business to one of Hutchison's companies at the time that W.N. & Scott Hutchison Partnership purchased the mobile home park and vacant lots from Boggs in 1999 (Boggs Dep. 12/8/03, pp. 37-40, 81, 85-86; Konrad Dep., pp. 113-16; Dep. Exs. 37, 190, 192). Blatt admitted that whatever he

{W0460406.1}   3

but did show Hutchison maps of the property, including the U.S. Geological Survey map of the Catlettsburg, Kentucky Quadrangle which shows that portions of the vacant lots lie within the wetlands (Boggs Dep. 12/9/03, pp. 45, 49-55 and Dep. Ex. 200). However, this testimonial dispute is not material to the resolution of Plaintiffs' fraudulent inducement claim for the reasons discussed below.

Plaintiffs make much of what they say Tom Boggs told Scott Hutchison about the vacant lots (doc. no. 110, p. 4), but omit to mention that the Real Estate Sales Agreement (Dep. Ex. 195) contains the express disclaimer that there are no "hydric soils" on the property "*except in areas which may be environmentally sensitive*" – that is, the wetlands. They make no mention of Attorney Konrad's testimony that he reminded Hutchison before the parties executed the Real Estate Sales Agreement on October 20, 1999 that WalMart had encountered problems in developing a site approximately 1/4 mile away from the vacant lots because of wetlands and that Tom Boggs was not making any representations regarding the soil conditions of the property (Konrad Dep., p. 53). They ignore Hutchison's admission that he knew about the "wetlands down there" and his response to Konrad that he was not concerned about the wetlands issue because he was getting an environmental study of the property covering wetlands (Scott Hutchison Dep., p. 57; Konrad Dep., pp. 54-55; Boggs Dep. 12/8/03, p. 128).

Plaintiffs confuse the chronology of events after the parties executed the Real Estate Sales Agreement (doc. no. 110, pp. 4-5). They assert that "Hutchison"[3] did not seek bank financing for

---

may have said to Jalanovich, he has never spoken to Boggs in his life (Blatt Dep., pp. 50-51).

[3] Plaintiffs refer to themselves collectively as "Hutchison," omitting the distinction between Hutchison Enterprises, the corporation with which Tom Boggs dealt and to which he contracted to sell the real estate, and W.N. & Scott Hutchison Partnership, which took title to the property for tax reasons (Klein Dep., p. 185; Laya Hutchison Dep., p. 44). Boggs never dealt with the partnership. The Real Estate Sales Agreement (Dep. Ex. 195) was never assigned by the corporation to the partnership (Scott Hutchison Dep., pp. 57-60) and the deed to the property was accepted by the partnership without qualification (Dep. Ex. 47), so the partnership is not entitled to rely on any representations which Boggs is alleged to have made to the corporation either orally or in writing. *Fuller v. Drenberg*, 3 Ohio St. 2d 109, 209 N.E.2d 417 (1965). The partnership sold the property to the corporation almost a year later for a $115,000 profit over its purchase price from Boggs, when both entities had full knowledge of the wetlands and endangered species issues (Laya Hutchison Dep., pp. 56-58; Scott Hutchison Dep., pp. 144-45, 165-67; Dep. Exs. 101, 102, 108).

the transaction and a Phase I environmental study until after Scott Hutchison had met with Tom Boggs and they had executed the Real Estate Sales Agreement, but the record is otherwise. The documents show that Scott Hutchison met with Robert VanNostrand of Huntington National Bank about the proposed transaction sometime prior to October 12, 1999, when the bank informed Hutchison Enterprises that its request for financing had been granted (Dep. Ex. 60). The real estate appraiser whom VanNostrand hired to appraise the property did so on October 18, the day before Hutchison met Boggs (Schwartz Dep., p. 20). Rhodes' proposal for conducting the Phase I environmental assessment called for by the Real Estate Sales Agreement states that it is "based upon the information we received October 19, 1999" (Dep. Ex. 132) – the day before the contract was executed. This proposal was accepted by Hutchison Enterprises the following day.

Finally, Plaintiffs imply that Tom Boggs made incomplete disclosure to Scott Hutchison about the condition of the vacant lots – telling him about the prior plans to develop the property but not about the wetlands areas – and assert that "Hutchison" relied on these representations (doc. no. 110, p. 5), but again they ignore the record. They ignore VanNostrand's testimony that he warned Scott Hutchison that the property might be located in a wetlands area which could inhibit development of the vacant lots, and therefore conditioned any bank loan on Hutchison obtaining a satisfactory Phase I environmental study of the property (VanNostrand Dep., pp. 60-61; Scott Hutchison Dep., pp. 61-62). They ignore Hutchison's testimony that he inspected the property "very early" with his surveyor, Jeffrey Stephens (Stephens Dep., pp. 10-11, 49-52), and that he was aware of the possibility of a wetlands situation and the problems that WalMart had had at its nearby site (Scott Hutchison Dep., pp. 57-59). They discuss Rhodes' Phase I environmental report (doc. no. 110, pp. 4-5), but omit to mention that Hutchison specifically requested Rhodes to make sure that there were no wetlands on the vacant lots (Scott Hutchison Dep., pp. 59-62, 81-82). They also omit to mention that Boggs insisted on an environmental study of the property, so the parties included

that requirement in the Real Estate Sales Agreement (Boggs Dep. 12/9/03, p. 57; Dep. Ex. 195 ¶ 5.2). They ignore the fact that Rhodes included in its report an excerpt from the U.S.G.S. map which shows that the wetlands cover portions of the "site" north of County Road 1, that is, the vacant lots (Dep. Ex. 139).[4] They ignore Konrad's warning to Scott Hutchison before he signed the Real Estate Sales Agreement. In short, they ignore all the evidence that "Hutchison" was not only on inquiry notice but had actual knowledge of the wetlands condition on a portion of the vacant lots before Scott Hutchison signed the Real Estate Sales Agreement on behalf of Hutchison Enterprises and the corporation proceeded with the transaction.

## ARGUMENT

Under the doctrine of *caveat emptor* as adopted and applied in Ohio, what Tom Boggs did or did not tell Scott Hutchison about the federally designated wetlands in the area of the vacant lots is irrelevant to the disposition of Plaintiff's fraudulent inducement claim. Consequently, the factual dispute between Hutchison's testimony and Boggs' about what Boggs told Hutchison and which documents he gave or showed to Hutchison when they had lunch does not preclude summary judgment in Boggs' favor. For the same reason, the new cases which Plaintiffs cite from other jurisdictions[5] do not inform the Court's decision because they do not speak to a purchaser's duty to investigate discoverable information before proceeding with a real estate transaction. Plaintiffs have not shown that the buyer, Hutchison Enterprises, exercised reasonable diligence by investigating the propriety of any representations which Tom Boggs is alleged to have made to its principal, Scott Hutchison, and availing itself of information which was readily accessible to it. Accordingly, Plaintiffs "[do] not have a cause of action for fraud even though the representations are untrue." *In re Landon, supra*, citing *Traverse v. Long* and *Ralston v. Grinder, supra*. In other words, what

---

[4] A copy of this exhibit accompanies this memorandum for the Court's convenience.
[5] Boggs urges the Court to review these decisions with caution because a number of them do not contain the quotations which are attributed to them and others discuss the issue of wetlands in contexts different than Plaintiffs' memorandum suggests.

{W0460406.1}                                6

matters is not what Boggs did or did not say to Scott Hutchison; what matters is what Scott Hutchison did about what he knew and was warned to investigate.

In this respect, two Ohio decisions which Plaintiffs cite, *Rose v. Zaring Homes, Inc.*, 122 Ohio App. 3d 739, 702 N.E.2d 952 (1997), *appeal disallowed*, 81 Ohio St. 3d 1421, 688 N.E.2d 1046 (1998), and *Noth v. Wynn*, 59 Ohio App. 3d 65, 571 N.E.2d 446 (1988), are instructive. Plaintiffs cite them for the proposition that "[w]etlands are not issues relating to the title of the property that can be easily discovered on an examination of public records, particularly records that a buyer would be expected to review in connection with the purchase of a piece of property" (doc. no. 110, p. 15). However, neither of these decisions stands for that proposition or anything like it. Rather, *Rose* reaffirms the well-established rule that a buyer has a duty reasonably to investigate patent defects and matters that are readily observable or discoverable. This includes matters which are public record:

> With respect to the land itself, there is no right to rely on oral representations regarding the property transferred where the true facts are equally open to both parties. *Traverse v. Long* (1956), 165 Ohio St. 249, 59 O.O. 325, 135 N.E.2d 256; *Van Horn v. Peoples Banking Co.* (1990), 64 Ohio App.3d 745, 582 N.E.2d 1099. As stated by this court in *Noth v. Wynn* (1988), 59 Ohio App.3d 65, 67, 571 N.E.2d 446, 449,
>
> "Where any adversities regarding title to property are of record and therefore easily discoverable, the purchaser of the property is not entitled to rely upon the alleged misrepresentations of the seller or the seller's agent." See, also, *Higginbottom v. Manhattan Life Ins. Co.* (Feb. 3, 1994), Cuyahoga App. No. 64633, unreported, 1994 WL 30428.
>
> Thus, under certain circumstances, a buyer's failure to inspect can defeat a claim of fraudulent misrepresentation.
>
> 122 Ohio App. 3d at 744

The fact that portions of the vacant lots lie within a federally designated wetlands is readily ascertainable by looking at the U.S.G.S. topographical map for the Catlettsburg, Kentucky

Quadrangle (Dep. Ex. 200). This map is available from the government and a number of private sources listed in the U.S. Geological Survey's website, *www.usgs.gov*. The relevant excerpt from this map is included in Rhodes' report (Dep. Ex. 139). It is absurd for Plaintiffs to assert in the face of this evidence and the public record that Hutchison Enterprises was not on notice of the possibility of wetlands on the vacant lots and that it could not with reasonable diligence have discovered the facts. It is equally absurd for Plaintiffs to assert that "[w]etlands are not issues . . . that can be easily discovered on an examination of public records, particularly records that a buyer would be expected to review in connection with the purchase of a piece of property" when the wetlands are shown on a map included in the report which Hutchison commissioned specifically to address that issue.

The important point is that under the law of Ohio, "[w]here representations are made regarding certain aspects of a real estate transaction which are subject to inspection and verification by the purchaser, and where they have had an opportunity to investigate, a purchaser will not have a cause of action for fraud even though the representations are untrue." *In re Landon, supra*, citing *Traverse v. Long* and *Ralston v. Grinder, supra*. In that case, a bankruptcy debtor misrepresented the existence of secured debt on real estate which she contracted to sell to the plaintiffs. The Bankruptcy Court found that the debtor, who was "an experienced businesswoman . . . familiar with transactions in real estate," was aware of a second mortgage on the property but concealed its existence from the purchasers with the intent to deceive them. Nonetheless, the court found that the purchasers could not maintain an action for fraud against the seller because a title search would have disclosed the existence of the mortgage and the purchasers, who were licensed real estate sales people, therefore did not reasonably rely on what the debtor told them or did not tell them about the property. 37 B.R. at 570-71. Even when viewed in the light most favorable to Plaintiffs, the facts of the present case are more compelling: Scott Hutchison is an experienced real estate developer (Scott Hutchison Dep., pp. 64-65; Klein Dep., pp. 13-14; VanNostrand Dep., pp. 20, 65-66, 91-94;

Dep. Exs. 68 and 91). Tom Boggs is alleged to have told this experienced developer over lunch that he could build a mobile home park on the vacant lots. Hutchison claims to have relied on this opinion even though he had already been warned by his banker that the vacant lots might include wetlands that could inhibit their development, and that he therefore needed an expert report assuring him and Huntington National Bank that there were no wetlands on the property, and he was in the process of commissioning that report specifically to cover the wetlands issue. The attorneys for the parties drafted a contract which specifically excluded any representations regarding "hydric soils" in areas which may be "environmentally sensitive." Before the Real Estate Sales Agreement was executed, Attorney Konrad again warned Hutchison about the possibility of wetlands on the vacant lots, but Hutchison told him that he was not concerned because he was getting the environmental report from Rhodes covering that issue. Rhodes issued its preliminary report on October 28 and its final report on November 8, 1999 with a map taken from the U.S.G.S. survey that shows the wetlands bisecting the "site" north of County Road 1, *e.g.*, the vacant lots. The transaction did not close until December 6, almost a month after the final report was issued, but neither "Hutchison" nor Huntington National Bank raised any issue about the fact that the site map shows wetlands on the vacant lots. Instead, Hutchison Enterprises and the bank proceeded with the transaction. Scott Hutchison explained that this was because he was relying on VanNostrand's decision to finance the transaction in consummating the purchase:

> Q. Help me understand, Mr. Hutchison, if your banker had told you that you had a wetlands issue and you need to get a Phase I report to make sure there wasn't a problem and you specifically tell the people at Rhodes that you want them to address wetlands when they do the report, and so they send you a report and the report includes a United States Geological Survey map of the area delineating features such as wetlands, why would you not want to make sure that you weren't buying wetlands?
>
> A. Well, Bob told me when we got the report that everything was okay; it was a go. So I guess if he was going to loan me the money to buy the property, then I figured there was not a big issue.

{W0460406.1}                                     9

> Q. So you were relying on Mr. VanNostrand?
>
> A. I looked at the report. I saw -- I read and comprehended what was okay with me. Bob told me that everything was a go. And I -- after what I read and what he said, I believed it was okay.

(Scott Hutchison Dep., pp. 99-100)

In other words, by his own admission, Scott Hutchison was relying not on anything Boggs did or did not say to him, but on the fact that Huntington National Bank was satisfied with Rhodes' report, and he made no further effort to ascertain the facts or their significance before consummating the transaction.

On the basis of this record, it is beyond dispute that Scott Hutchison and his corporation did not exercise reasonable diligence in proceeding with the purchase of the vacant lots, and therefore that whatever Boggs may have told him or not told him about them is irrelevant to Plaintiffs' fraudulent inducement claim; and that as a matter of law, Plaintiffs cannot be said reasonably to have relied on anything that Boggs said or did not say to Scott Hutchison. Accordingly, Plaintiffs' motion for partial summary judgment should be denied and Boggs' motion for summary judgment should be granted.

Respectfully submitted,

Of Counsel:

Kevin J. Waldo (0022379)
413 Center Street
Ironton, Ohio 45638-1505

/s/ Thomas R. Schuck
Thomas R. Schuck (0005336)
Trial Attorney for Defendant H.T. Boggs
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
(513) 381-2838

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he served a copy of the foregoing Memorandum in Opposition upon the following counsel of record electronically or by regular United States mail, postage prepaid this 14th day of June, 2005:

/s/ Thomas R. Schuck
Thomas R. Schuck

William P. Schroeder, Esq.
Attorney for Plaintiffs
11935 Mason Road, Suite 100
Cincinnati, Ohio 45249

E. David Marshall, Esq.
271 West Short Street, Suite 111
Lexington, Kentucky 40507

M. Bradford Sanders, Esq.
9122 Montgomery Road, Suite 201
Montgomery, Ohio 45242
Attorneys for Defendant Rhodes, Inc.,
Rhodes Incorporated, and Rhodes &
Associates, Inc.

Gayle B. McGrath, Esq.
W. Craig Robertson, III
250 West Main Street, Suite 1600
Lexington, Kentucky 40507-1746
Attorneys for Defendants Zimmer and Geisler