**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SCOTT HUTCHISON
ENTERPRISES, INC., et al.,

                Plaintiffs,

      v.                                       C-1- 01-776

RHODES, INC., et al.,

                Defendants.

**<u>ORDER</u>**

This matter is before the Court upon a motion for summary judgment filed by defendants

H. Jack Geisler and James M. Zimmer (doc. 94).  Plaintiffs Scott Hutchison Enterprises, Inc. and

and W.N. & Scott Hutchison Partnership have filed an opposing memorandum (doc. 99) as has

defendant H.T. Boggs (Boggs) (doc.  96).  Defendants Geisler and Zimmer have filed a reply and

a supplemental brief in support of their motion (docs. 103, 108), and plaintiffs have filed a

supplemental response to the motion (doc. 115) and a submission of additional authority (doc.

109).

**I. Introduction**

This action arises out of the sale of certain property by Boggs to plaintiffs and the

performance of technical investigation, consultation and engineering services by defendants

Rhodes, Inc., Rhodes Incorporated, and Rhodes and Associates, Inc. (collectively "Rhodes") and

defendants Zimmer and Geisler in connection with plaintiffs' purchase of the property.  Plaintiffs

filed the original complaint in this action against defendants Boggs and Rhodes on November 8,

2001 (doc. 1).  In the original complaint, plaintiffs brought claims against Boggs for

misrepresentations and breach of warranty and for breach of contract.  Plaintiffs also brought

claims against Rhodes alleging that Rhodes had performed its services negligently and had

provided inadequate, incomplete, and misleading information to plaintiffs that did not disclose

the existence of protected wetlands and environmentally sensitive soils or other conditions on the

property, which Rhodes knew or in the exercise of reasonable care should have known existed

and was obligated to discover and describe to the plaintiffs.

Plaintiffs incorporated the allegations of the original complaint into an amended

complaint filed on April 23, 2003, and added factual allegations regarding the subject property to

the amended complaint  (doc. 19).  On November 6, 2003, plaintiffs filed a motion for leave to

file a second amended complaint and attached a proposed second amended complaint to the

motion (doc. 68). The proposed second amended complaint added Geisler and Zimmer as

defendants.  The Court granted plaintiffs leave to amend on November 20, 2003 (doc. 73).  In its

Order, the Court directed the Clerk to file the second amended complaint, and it was filed on

November 20, 2003 (doc. 75).  The defendants were served with that complaint on November

25, 2003 (doc. 76).

## II. Allegations of the second amended complaint

Plaintiffs make the following allegations in the second amended complaint: In October of

1999, plaintiffs and defendant Boggs entered into negotiations and ultimately executed an

agreement for the sale to plaintiffs of real estate owned by Boggs.  In connection with the

agreement, Boggs represented to plaintiffs that the property contained no wetlands or other

environmentally sensitive conditions or characteristics.  Plaintiffs relied upon Boggs's

representations in purchasing the property for development.

At all times pertinent to this action, and specifically prior to the closing of the sale of the

subject real estate and during the years 1995 through November of 1999, Boggs owned and

operated a mobile home park and sales business on the property.  Another portion of the property

was undeveloped at the time.  Some time during the time period 1997 through 1998, Boggs

decided to expand the mobile home park by adding a new mobile home park development.

Boggs procured a professional design and layout of the proposed expansion, which showed it to

be on the undeveloped portion of the real estate.  Some time during 1998, Boggs, operating as

Boggs Landing, began clearing trees, excavating materials, and digging and filling on areas of

the subject property that are now alleged to be "disturbed wetlands."  Upon information and

belief, after defendant Boggs, operating as Boggs Landing, had done substantial clearing and

filling, Boggs was informed by the adjoining property owner that the area of the property that

Boggs was clearing and filling was alleged to be a wetland area that could not be legally cleared

or filled without compliance with state and/or federal regulations pertaining to such areas.

Since purchasing the property, plaintiffs have been informed of, and believe that they are

obligated to comply with, regulations requiring mitigation and remediation of the disturbed

wetland on the property.  In reliance upon the representations of Boggs, and also in reliance upon

the professional environmental and engineering information, consultation, advice and warranties

provided by defendants Rhodes, Zimmer and Geisler, plaintiffs purchased the real estate and

undertook preliminary work to develop it, including clearing trees from the site.

Plaintiffs took title to the property at the closing on December 6, 1999.  Unbeknownst to

plaintiffs, the property contained wetlands and environmentally sensitive soils protected by state and federal law.  The United States Corp of Army Engineers (the Corps) notified plaintiffs to cease and desist all further activities on the property and issued a formal Cease and Desist Order on May 10, 2000.  Plaintiffs allege that they are unable to develop the subject property and that they are or may be obligated by law to perform remedial work on the property and/or restore or replace environmentally sensitive aspects of such property.  Plaintiffs have been damaged as a result.

Based on these allegations, plaintiffs brings claim against defendant Boggs for damage resulting from Boggs's "acts, omissions, breaches of warranty and misrepresentations" (First Claim) and for breach of contract and an agreement with plaintiffs (Second Claim).  Plaintiffs also bring claims against defendant Rhodes (Third and Fourth Claims).  For their Third Claim, plaintiffs allege that in October of 1999, Rhodes made a proposal to perform technical investigation, consultation and engineering services in connection with plaintiffs' investigation, and contemplated purchase, of the property from Boggs.  The parties entered into an agreement with Rhodes whereby Rhodes agreed to make a professional technical investigation of the property and to advise plaintiffs prior to the purchase of the property.  Under the agreement, Rhodes was to provide specific information regarding the environmental aspects, geographic area, and geologic and hydrologic conditions present on the property.  Defendants Rhodes, Zimmer and Geisler performed such services negligently and provided inadequate, incomplete, and misleading information to the plaintiffs that did not reveal or disclose the existence of protected wetlands and environmentally sensitive soils or other conditions on the subject property which they knew or in the exercise of reasonable care should have known existed and

4

were obligated to discover and describe to plaintiffs.  In reliance upon the work, advice, and

information provided by these defendants, plaintiffs purchased the real estate and took title to it

on December 6, 1999.  Shortly thereafter, plaintiffs began to clear the land in preparation for

development work that had been contemplated as part of the decision to purchase, but plaintiffs

ceased their activity when the Corps issued the Cease and Desist Order.

For their Fourth Claim, plaintiffs allege that Rhodes's report and recommendations to

them included a specific warranty made by defendants Rhodes, Zimmer and Geisler, which

states,

> In performing our professional services, we have used that degree of care and
> skill ordinarily exercised under similar circumstances by members of the
> profession.  This warranty is in lieu of all other warranties, expressed or implied.

Plaintiffs claim that Rhodes breached its express warranty to them.

Plaintiffs bring their Fifth Claim against Zimmer, the project geologist for Rhodes, and

their Sixth Claim against Geisler, Rhodes's Vice-President of Engineering Services and an

officer of Rhodes.  Plaintiffs claim that these defendants represented to plaintiffs that there were

no environmental conditions, except for the dumping of some common trash, revealed as to the

undeveloped tract, which was ultimately determined to be a wetland; that they warranted in

writing to plaintiffs that their professional services, and those of defendants Rhodes, were of the

degree of care and skill ordinarily exercised under similar circumstances by members of the

profession; that they further warranted that there were no marsh lands or other signs of wetlands

in the vicinity of the land; and that they breached the express warranty and further failed to

exercise reasonable and ordinary care and otherwise comply with the standards of skill and care

ordinarily exercised under similar circumstances by members of their profession.

**III. Motion for summary judgment**

Defendants Zimmer and Geisler move for summary judgment on all claims against them on the ground that those claims are barred by the governing statute of limitations.  Defendants allege that the claims against them are properly characterized as claims for professional malpractice against engineers to which the four-year statute of limitations set forth in Ohio Rev. Code § 2305.09(D) applies.  Defendants contend that these claims accrued on November 8, 1999, when the Phase I Environmental Site Assessment which Rhodes had completed for the property, and which was signed by Geisler and Zimmer, was issued to plaintiffs.  Defendants assert that plaintiffs' claims against them were filed more than four years after the date the claims accrued.

Plaintiffs oppose defendants' motion on the ground that § 2305.09(D) does not bar their claims for professional negligence and for breach of the written warranty contained in the assessment that defendants signed and issued to Hutchison Enterprises.  Plaintiffs claim that there are material facts that support a finding that the cause of action against Geisler and Zimmer did not arise when they "issued" or signed the report since there was no reliance and no standing to bring suit until plaintiffs subsequently took title to the property.  Rather, plaintiffs allege that the cause of action arose either at the time of the closing or on the date of the Cease and Desist letter that manifested the wetlands problem because no one knew that the Rhodes report was flawed, and no damage had resulted to plaintiffs, until the Cease and Desist Order was issued; that the cause of action arose within four years of the filing of the second amended complaint; and that the claims against Geisler and Zimmer arose out of contract and/or quasi-contract and are therefore governed by the fifteen-year statute of limitations applicable to such claims.  In

6

addition, plaintiffs contend that the amendment satisfies the requirements of Fed. R. Civ. P.

15(c)(2) and (3) because the claims against Geisler and Zimmer arise out of the conduct set forth

or attempted to be set forth in the original pleading, these defendants received notice of the

institution of the action, they knew or should have known that they might be sued, and they have

asserted no prejudice that their joinder would occasion.  Plaintiffs allege that based on

correspondence sent to Geisler and Zimmer by Attorney Bert Ketchum, who represented Scott

Hutchison at the time, these defendants knew by May 2001 of the potential claims against them

and the facts on which they are based and also knew that they might be named as defendants if a

lawsuit were filed.

The Court heard oral arguments on the motion for summary judgment on January 19,

2005.  Following the hearing, the Court allowed the parties additional time to brief the issue of

when the statute of limitations began to run on plaintiffs' claims.   Plaintiffs thereafter submitted

supplemental authority in support of their position that the doctrine of equitable tolling should be

applied so that the date of their filing of the motion for leave to file a second amended complaint

is construed as the date that their complaint against Geisler and Zimmer was filed, thereby

precluding dismissal of the claims against these defendants on limitations grounds.  Defendants

counter that there is no authority for the proposition that the filing of a motion for leave to amend

commences an action for statute of limitations purposes.  Defendants further contend that

equitable tolling is proper in only rare and exceptional circumstances, which are lacking in this

case.

### IV. Undisputed facts

Defendants have not submitted proposed findings of fact and conclusions of law in support of their motion for summary judgment as required by the Court's Order of February 18, 2003 (doc. 37).  The Court has therefore gleaned the undisputed facts from the parties' briefs and the remainder of the record and will determine the motion based on those undisputed facts and the applicable law.

### V. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action.  This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).  The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.  There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249 (citing *Cities Serv.*,  391 U.S. at 288-289).  If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not

8

significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

## VI. Opinion

Plaintiffs arguably bring two claims against defendants Geisler and Zimmer in the second amended complaint: (1) claims for negligence, and (2) claims for breach of the warranty contained in the Phase I Environmental Assessment issued by defendants. The Court will first address whether Zimmer and Geisler are entitled to summary judgment on the negligence claims on the ground that they are time-barred.

### A. Negligence claims

The negligence claims against defendants Zimmer and Geisler are properly characterized as professional negligence claims. Ohio courts have held that professional negligence claims are governed by the four-year statute of limitations for general negligence claims found in Ohio Rev. Code § 2305.09(D), which provides that claims "[f]or an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 1304.35, 2305.10 to 2305.12, and 2305.14 of the Revised Code" shall be brought "within four years after the cause thereof accrued." *See Investors REIT One v. Jacobs,* 46 Ohio St.3d 176, 546 N.E.2d 206, syll. ¶ 1 (1989) (claims for accountant negligence); *Hater v. Gradison Div. of McDonald & Co. Securities, Inc.,* 101 Ohio App.3d 99, 109-111, 655 N.E.2d 189, 195-196 (1995) (claims for professional negligence brought against broker-dealers and appraisers); *Avery B. Klein & Co. v. Joslyn*, 1993 WL 106948 (Ohio App. 8 Dist.) (unreported decision) (professional negligence claims against investment advisors). For statute of limitations purposes, there is no basis for distinguishing plaintiffs' claims for negligence arising from Geisler and Zimmer's rendering of professional

services from those professional negligence claims to which the Ohio courts have applied the

four-year statute of limitations found in § 2305.09(D).  Accordingly, the Court finds that the

statute of limitations set forth in § 2305.09(D) applies to the negligence claims against

defendants Geisler and Zimmer.

The question then becomes when the negligence claims accrued.  The Ohio Supreme

Court in *Reit One* rejected a discovery rule for claims of accountant negligence in the context of

§ 2305.09(D) and held that the four-year statute of limitations governing those claims

commenced to run "when the allegedly negligent act was committed." 46 Ohio St.3d at 182, 546

N.E.2d at 212.  Several Ohio courts have extended the reasoning of *Reit One* to claims of

professional negligence by individuals other than accountants and have rejected the argument

that no actionable injury can be held to have occurred so as to set in motion the running of the

statute of limitations until damage has resulted from the negligent act.  ***See Hater,*** 101 Ohio

App.3d 99,  109-111, 655 N.E.2d 189, 195-196; ***Reidel v. Houser,*** 79 Ohio App.3d 546, 607

N.E.2d 894 (1992) (rejecting argument that notwithstanding the holding of ***REIT One,*** the

statute of limitations should not have commenced to run on a claim that an accountant's

preparation of tax returns was negligent until the date upon which damages could be attributed to

the faulty returns); ***James v. Partin,*** 2002 WL 1058152, *1 -3 (Ohio App. 12 Dist.) (unreported

decision) (claims of professional negligence against surveyors commenced to run when the

allegedly negligent surveys were completed, not at the time the plaintiffs discovered the injury);

***Avery B. Klein,*** 1993 WL 106948 (cause of action for negligent investment advice accrued when

advice was received, not when appellant's note was called as a result of allegedly faulty advice);

***Philpott v. Ernst & Whinney***, 1992 WL 357250 (Ohio App. 8 Dist.) (unreported decision)

10

(appellant's argument that statute of limitations on claim for accountant malpractice did not

commence until a deficiency was assessed rejected upon the basis of *REIT One*); *Bagley v. Hall***,**

1992 WL 132454  (Ohio App. 10 Dist.) (unreported decision) (appellants' argument that their

cause of action for accountant negligence that precluded recovery of overpayment of taxes did

not accrue at the time of the misrepresentation because they suffered no damage until a later date

rejected on the basis of *REIT One*); *Lord v. Ernst & Whinney***,** 1992 WL 126125 (Ohio App. 9

Dist.) (unreported decision)  (rejecting argument that claim for accountant negligence for

improperly prepared gift tax return did not accrue until IRS assessed gift tax liability).

The court in *Hater* summarized the reasoning underlying its determination, which applies

equally to the other cases cited above, as follows:

> The controlling law on this issue is, we believe, set forth in *REIT One*. By
> holding that the statute of limitations began to run 'when the allegedly negligent
> act was committed,' the court in *REIT One,* in our view, meant exactly that: the
> date upon which the tortfeasor committed the tort, in other words, when the act or
> omission constituting the alleged professional malpractice occurred.

101 Ohio App.3d 99, 110, 655 N.E.2d 189, 196.  The *Hater* court went on to note that although

the effect of the holding in *REIT One* "may seem harsh and arguably out of step with the

discovery rule adopted in other areas of tort law, we note that the holding of *REIT One* is

explicit and that it has not been subsequently modified or limited by the Ohio Supreme Court."

*Id.* at 111, n. 3.

Plaintiffs cite the decisions in *Velotta v. Leo Petronzio Landscaping, Inc*., 69 Ohio St.2d

376, 433 N.E.2d 147 (1982) and *Point East Condominium Owners' Assn. v. Cedar House*

*Assoc.,* 104 Ohio App.3d 704, 663 N.E.2d 343 (1995) for the proposition that a cause of action

for damages arising from negligent construction and failure to perform work in a workmanlike

manner does not accrue until actual injury or damages ensue.  These decisions do not, however, involve claims of professional negligence of a nature addressed in the numerous cases discussed above and do not support a departure from the rule in Ohio that causes of action for professional negligence accrue at the time the negligent act is committed.

Applying Ohio law governing professional negligence claims to the present case, the Court finds that the earliest date that the statute of limitations on plaintiffs' professional negligence claims could have begun running was the date on which the Phase I Environmental Assessment signed by Zimmer and Geisler was issued.  The parties are in apparent agreement that the assessment was signed and issued on November 8, 1999.  Thus, so long as plaintiffs filed their professional negligence claims against Geisler and Zimmer within four years of November 8, 1999, the claims are not barred by the applicable statute of limitations.

The parties disagree as to when the claims against defendants Geisler and Zimmer were filed for purposes of applying the statute of limitations.  Plaintiffs contend that the claims were filed when they filed their motion for leave to file the proposed second amended complaint on November 6, 2003.  Defendants argue that the claims were not filed until the second amended complaint was actually filed with the court, which was on November 25, 2003.

The parties have not cited any authorities that provide a definitive answer to the question of when plaintiffs' claims against defendants Geisler and Zimmer can be deemed to have been filed so as to stop the running of the statute of limitations.  The Court notes that Ohio courts have recognized that a "statute of limitations is remedial in nature and is to be given a liberal construction in order to allow cases to be decided upon their merits." *See Fritz v. Bruner Cox, L.L.P.,* 142 Ohio App.3d 664, 669, 756 N.E.2d 740, 744 (2001) (citing *Elliott v. Fosdick &*

12

*Hilmer, Inc.*, 9 Ohio App.3d 309, 313, 460 N.E.2d 257, 262-263  (1983); *Draher v. Walters*, 130

Ohio St. 92, 94, 196 N.E. 884, 885 (1935) ("[E]very reasonable presumption will be indulged and

every doubt will be resolved in favor of affording rather than denying a plaintiff his day in

court.") Consistent with this policy, the Court finds that it is appropriate to deem the claims filed

as of the date plaintiffs filed with the Court their motion for leave to file the proposed second

amended complaint, to which the proposed second amended complaint was attached.  Plaintiffs

took action within the limitations period to bring their claims against Geisler and Zimmer by

filing the motion for leave to amend.  Once plaintiffs had filed the motion for leave to amend with

the proposed second amended complaint attached, they had no control over when the motion

would be ruled on and/or when the complaint might actually be filed.  In the interest of fairness,

then, plaintiffs should not be barred from bringing their claims based on the lapse of time between

the filing of the proposed second amended complaint with the Court and the Court's ruling

directing that such complaint be filed.  Construing the date of the filing of the proposed second

amended complaint as the date that the claims were filed against Geisler and Zimmer does not

work an injustice toward these individuals, particularly since the lapse of time between the filing

of the motion for leave to file that complaint and the date the second amended complaint was

actually filed by Order of the Court was brief.  Accordingly, because plaintiffs submitted their

proposed second amended complaint containing the claims against Geisler and Zimmer to the

Court within four years of the date that the Phase I Environmental Assessment was issued,

defendants are not entitled to summary judgment on the ground that the professional negligence

claims against them are barred by the applicable four-year statute of limitations.

**B. Breach of warranty claims**

Plaintiffs bring breach of warranty claims against defendants Geisler and Zimmer based on the following provision contained in the assessment prepared by these defendants:

> **Warranty -** In performing our professional services, we have used that degree of care and skill ordinarily exercised under similar circumstances by members of the profession.  This warranty is in lieu of all other warranties, express or implied.

Plaintiffs contend that the fifteen-year statute of limitations set forth in Ohio Rev. Code § 2305.06 applies to these claims.  Defendants argue that plaintiffs' purported breach of warranty claims are properly construed as professional negligence claims to which the four-year statute of limitations set forth in Ohio Rev. Code § 2305.09(D) applies.

In determining the applicable statute of limitations for a claim, courts generally look to the actual nature of the claim and not to the form in which the cause of action is pled.  ***Doe v. First United Methodist Church,*** 68 Ohio St.3d 531, 536, 629 N.E.2d 402, 407 (1994); ***Hambleton v. R.G. Barry Corp.,*** 12 Ohio St.3d 179, 183, 465 N.E.2d 1298, 1302 (1984)).  In this case, the Court finds that the breach of warranty claims against Zimmer and Geisler sound in negligence and, indeed, are essentially indistinguishable from plaintiffs' negligence claims against these defendants.  While it is true that the assessment issued by Zimmer and Geisler contains an express warranty, the warranty simply reiterates the applicable standard of negligence and imposes no duties beyond those imposed under tort law.  Thus, the causes of action against Zimmer and Geisler are based on tort, not on contract.  ***See Schwartz v. Banc One, Portsmouth, N.A.,*** 84 Ohio App.3d 806, 811, 619 N.E.2d 10, 13 (1992) (where duty allegedly breached by defendant is one that is imposed by law, whether or not it arises out of a contract, the cause of action is not based on contract but on tort).  Plaintiffs' claims for breach of warranty are therefore governed by the

14

four-year statute of limitations found in § 2305.09(D).  Based on the same reasoning set forth

above with respect to plaintiffs' professional negligence claims, defendants are not entitled to

summary judgment on the breach of warranty claims on the ground that such claims are time-

barred.

## C. Relation back of the amendment

Because the Court has determined that defendants Geisler and Zimmer are not entitled to

summary judgment on the ground that plaintiffs' claims against them are time-barred, the Court

need not address plaintiffs' argument that the claims asserted in the second amended complaint

relate back to the date of the original complaint.

## VII. Conclusion

In accordance with the foregoing, defendants Geisler and Zimmer's motion for summary

judgment (doc. 94) is **DENIED.**

**IT IS SO ORDERED.**

S/ Herman J. Weber

HERMAN J. WEBER
SENIOR JUDGE, UNITED STATES DISTRICT COURT

J:\HJWA\01-776slmsjPUB.wpd