UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Scott Hutchison Enterprises, Inc., et al, | : | Civil Action No. C-1-01-776 |
| Plaintiffs | : | Judge Weber |
| -vs- | : | **REPORT OF EXPERT WITNESS,** |
| Rhodes, Inc., et al, | : | **KEVIN J. HOPPER, ATTORNEY** |
| Defendants | : | **AT LAW** |

This Report is prepared by Kevin J. Hopper, Attorney at Law, to provide an expert opinion on the necessity and reasonableness of the attorney fees charged by the lawfirm of Taft, Stettinius & Hollister LLP (hereinafter "Taft") in Cincinnati, Ohio, as counsel to the Defendant, H. T. Boggs, and Kevin J. Waldo, Esq. and Daniel Konrad, Esq. as local to the Defendant, H. T. Boggs, an individual. I am an attorney duly licensed to practice in the State of Ohio, the Commonwealth of Kentucky, and in the United States District Court Southern District of Ohio, Western Division, and the United States District Court Northern District of Ohio. I was admitted to practice law in the State of Ohio in November of 1978, and in the Commonwealth of Kentucky in May of 1991. I have a rating of "AV" in Martindale-Hubbell's *Law Directory*

Please see the Curriculum Vitae, which is attached hereto as Exhibit "A" and made a part hereof. Since July of 1980, I have been in the private practice of law. Prior to that time, I was employed by The Procter & Gamble Company. During the last twenty-five (25) years, my practice has emphasized the area of environmental law. During these years, I have represented

1

numerous companies in negotiations with the United States Environmental Protection Agency (hereinafter "USEPA"), Ohio and Kentucky State Environmental Protection Agencies, and the Ohio Attorney General, in negotiating Administrative Orders by Consent, Consent Decrees, and other Administrative Orders. I have also represented companies in meetings with citizens' groups and environmental groups, and also governmental bodies, such as zoning and planning commissions. My practice has also included the defense of individuals and corporations in actions brought by the United States and the State of Ohio for alleged violations of environmental laws and regulations. I have also prosecuted and defended contribution claims on behalf of individual companies against other alleged contributors under the environmental law known as CERCLA. I have also represented a number of individuals and corporations in acquisitions where there are environmental considerations, such as wetlands, contamination from prior use, and air, water and hazardous waste permitting issues.

I have also served as the Chairman of the Environmental Law Committee of the Cincinnati Bar Association. I am currently a member of the Environmental Law Committee of the Cincinnati Bar Association, the Ohio State Bar Association, and the Section of Environmental Energy and Resources Law of the American Bar Association.

**Information Reviewed**

I have been provided photocopies of invoices from Taft sent to its client, H. T. Boggs, commencing December 1, 2001, and continuing through August 31, 2005. These invoices provide detailed billing information on the time spent by attorneys and paralegals at Taft in representing H. T. Boggs in defense of the Complaint by the Plaintiffs, Scott Hutchison

Enterprises, Inc. and W.N. & Scott Hutchison Partnership, and the cross-claims brought by Defendant, Rhodes, Inc., Rhodes, Incorporated, and Rhodes and Associates, Inc (hereinafter "Rhodes Defendants"). The invoices are itemized to the quarter hour. The invoices also provide detailed information on the work performed for each time entry. Besides professional services, costs advanced are detailed on these invoices. Copies of the Taft invoices are attached hereto as Exhibit "B". Invoices for retained experts were also reviewed, copies of which are attached hereto as Exhibit "C".

I have been provided a photocopy of the billing summary from Kevin J. Waldo, Esq., for legal services rendered and costs advanced on behalf of H. T. Boggs, a copy of which is attached hereto as Exhibit "D".

I have been provided a photocopy of the billing history from Daniel Konrad, Esq., for legal services rendered and costs advanced on behalf of H. T. Boggs, a copy of which is attached hereto as Exhibit "E".

I have also reviewed pleadings in this case, consisting of the Complaint, First Amended Complaint, Second Amended Complaint, Cross-Claims, Answers to the First Amended Complaint, Answers to the Second Amended Complaint, Answers to the Third Amended Complaint, Answers to Cross-Claims, Plaintiffs' First Set of Interrogatories Addressed to the Defendants and Responses thereto, Plaintiffs' Interrogatories to the Defendant Boggs Annexed to the First Amended Complaint and Responses thereto, Defendant, H. T. Boggs' First Set of Interrogatories and Request for Production of Documents to Plaintiffs and Responses thereto, Defendant, H. T. Boggs' Second Request for Production of Documents to Defendants', Jack

Geisler and James Zimmer and Responses thereto, First Interrogatories and Requests for Production of Documents to Defendant, Rhodes, Inc. and Responses thereto, various Motions, including the Defendant Boggs' Motion for Summary Judgment and Memorandum in Support and Plaintiffs' Memorandum in Opposition thereto and the Reply Memorandum of Defendant, H. T. Boggs, in Support of His Motion for Summary Judgment, Defendants Geisler and Zimmer's Motion for Summary Judgment, including the Memorandum of Defendant, H. T. Boggs in Opposition to Motion of Defendants, James H. Zimmer and H. Jack Geisler for Summary Judgment, and Plaintiffs' Memorandum in Opposition to Motions for Summary Judgment of Geisler and Zimmer, Plaintiffs' Supplemental Response to Zimmer and Geisler's Motion for Summary Judgment, the Reply in Support of Defendants Geisler and Zimmer's Motion for Summary Judgment, the Supplemental Brief in Support of Defendants Geisler and Zimmer's Motion for Summary Judgment, Plaintiffs' Submission of Additional Authority in Response to the Supplemental Brief of Zimmer and Geisler, Defendants Geisler and Zimmer's Supplemental Memorandum and Response to Plaintiffs' Submission of Additional Authority, Plaintiffs' Motion for Partial Summary Judgment Against Defendant, H. T. Boggs, Motion of Defendant, H. T. Boggs, to Strike Plaintiffs' Motion for Partial Summary Judgment Against Him and Memorandum in Support, Plaintiffs' Memorandum Opposing Defendant, H. T. Boggs' Motion to Strike, Defendant Boggs' Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment, Plaintiffs' Reply Memorandum to Defendant, H. T. Boggs' Opposition to Plaintiffs' Motion for Summary Judgment, Plaintiffs' Motion for Partial Summary Judgment Against Defendant Rhodes, Inc., and various Orders.

I also noted that documents were produced during discovery, consisting of five (5) binders, each being three (3) inches in width, consisting of two hundred one (201) individual exhibits.

There are also transcribed depositions, pages of which exceed two (2) feet in thickness, plus six (6) VHS tapes of video depositions.

## Nature of Work Performed

The Court is very familiar with this action, which arose as the result of Plaintiff, Scott Hutchison Enterprises, Inc.'s, purchase of some vacant lots and a mobile home park located in the Village of Burlington, Lawrence County, Ohio, from the Defendant, H. T. Boggs, in December of 1999. The vacant lots were subsequently found to be burdened by Federally designated wetlands, precluding their commercial development by the Plaintiffs. On August 18, 2005, the Court determined that the Plaintiffs' claims against the Defendant, H. T. Boggs, were insupportable as a matter of law, and entered summary judgment in favor of the Defendant, H. T. Boggs. The Plaintiffs' claims and the cross-claims of the Defendant, H. T. Boggs, against the Rhodes Defendants are based on the environmental study of the real estate, which the Rhodes Defendants conducted as a precondition to the sale by the Defendant, H. T. Boggs.

Taft, through lead counsel Thomas R. Schuck, Esq., and local counsel, Kevin J. Waldo, Esq. and Daniel Konrad, Esq., not only defended successfully the action brought by the Plaintiffs, but also defended the cross-claims brought against the Defendant, H. T. Boggs, by the Rhodes Defendants, and also prosecuted the cross-claim against the Rhodes Defendants, which action is continuing as of the date of this Report.

The Curriculum Vitae of Thomas R. Schuck, Esq., lead counsel at Taft, is attached hereto as Exhibit "F". In reviewing this Curriculum Vitae, one would quickly recognize that Thomas R. Schuck, Esq. is an attorney with impeccable credentials, twenty-six (26) years of experience, and a graduate of one of the top law schools in the United States.

### Negligence Action Against Rhodes Defendants

Taft and local counsel, Kevin J. Waldo, Esq. and Daniel Konrad, Esq., are also pursuing a cross-claim against the Rhodes Defendants alleging that the Rhodes Defendants were negligent in conducting their environmental study. After the Rhodes Defendants conducted a survey of the property, and their purported review of the available government records, the Rhodes Defendants concluded that there were no wetlands on the property. This report was prepared as a condition precedent to the purchase of the property by the Plaintiffs. In relying upon this report, the Plaintiffs purchased the property and then found out subsequent to that purchase that wetlands existed. The construction that had commenced was ordered to cease, as Federal wetlands were being impacted. The Rhodes Defendants included the relevant excerpt from the USGS map in their report, but incorrectly concluded that there were no wetlands issues. The Plaintiffs relied upon this report and proceeded to acquire the property from the Defendant, H. T. Boggs. The failure of the Rhodes Defendants to conclude that there were no wetlands present was clearly professional negligence.

The real estate purchase contract (Dep. Exs. 23/195) entered into by the Plaintiffs and the Defendant, H. T. Boggs, included as a condition precedent that a satisfactory Phase I environmental report be performed. The Defendant, H. T. Boggs, also insisted on an

environmental study of the property (Boggs Dep. 12/9/03, p. 57). The final report issued by the Rhodes Defendants (Dep. Exs. 71/135) gave the property a clean bill of health. The report specifically included the review of wetlands issues. The Defendant, H. T. Boggs, further testified in his deposition that he was "relying on the people who were going to do this study to give the property a clean bill of health as far as wetlands were concerned." (Boggs Dep.12/9/03, pp. 68-70). It was, therefore foreseeable that the Defendant, H. T. Boggs, would rely on the Phase I environmental report issued by the Rhodes Defendants.

I, therefore conclude that **had** the Rhodes Defendants properly identified the wetlands issue prior to closing, the Plaintiffs and the Defendant, H. T. Boggs, would have either agreed to the purchase, would have renegotiated the purchase price, or would have terminated the entire transaction. In any of these events, the litigation involved herein would have been obviated.

### Summary of Fees Charged and Costs

### Taft

| Date | Fees | Costs Advanced |
|---|---|---|
| 12/1-12/31/01 | $460.00 | $.04 |
| 1/1-1/31/02 | $4,737.50 | $43.88 |
| 2/1-2/28/02 | $13,201.25 | $213.85 |
| 3/1-3/31/02 | $6,148.75 | $559.20 |
| 4/1-4/30/02 | $2,517.50 | $45.45 |
| 5/1-5/31/02 | $6,206.25 | $246.17 |

| Date | Fees | Costs Advanced |
|---|---|---|
| 6/1-6/30/02 | $6,061.25 | $109.90 |
| 7/1-7/31/02 | $1,533.75 | $23.41 |
| 8/1-8/31/02 | $351.25 | $3.90 |
| 9/1-9/30/02 | $1,587.50 | $27.06 |
| 10/1-10/31/02 | $555.00 | $75.65 |
| 11/1-11/30/02 | $158.75 | $1.80 |
| 12/1-12/31/02 | $275.00 | $.18 |
| 1/1-1/31/03 | $532.50 | $2.87 |
| 2/1-2/28/03 | $635.00 | $2.41 |
| 3/1-3/31/03 | $22.50 | -0- |
| 6/1-6/30/03 | $4,373.75 | $107.20 |
| 7/1-7/31/03 | $9,147.50 | $344.06 |
| 8/1-8/31/03 | $7,292.50 | $168.66 |
| 9/1-9/30/03 | $27,676.25 | $1,442.78 |
| 10/1-10/31/03 | $44,267.50 | $1,198.27 |
| 11/1-11/30/03 | $24,491.25 | $2,595.25 |
| 12/1-12/31/02 | $21,377.50 | $1,171.24 |
| 1/1-1/31/04 | $4,665.00 | $1,515.24 |
| 2/1-2/27/04 | $15,131.25 | $541.55 |
| 3/1-3/31/04 | $1,772.50 | $41.77 |

8

| Date | Fees | Costs Advanced |
|---|---|---|
| 4/1-4/30/04 | $8,695.00 | $284.51 |
| 5/1-5/31/04 | $1,347.50 | $164.59 |
| 7/1-7/31/04 | $3,416.25 | $51.53 |
| 9/1-9/30/04 | -0- | $17.60 |
| 11/1-11/30/04 | $75.00 | -0- |
| 12/1-12/31/04 | $248.75 | -0- |
| 1/1-1/31/05 | $4,373.75 | $67.25 |
| 2/1-2/28/05 | $1,250.00 | $.20 |
| 3/1-3/31/05 | $3,311.25 | $28.57 |
| 4/1-4/30/05 | $217.50 | $2.40 |
| 6/1-6/30/05 | $9,238.75 | $35.55 |
| 7/1-7/31/05 | $27.50 | $4.10 |
| 8/1-8/31/05 | $2,802.50 | $53.10 |

Total Taft Fees and Costs Advanced:  $251,298.59

### Kevin J. Waldo, Esq.

Total Kevin J. Waldo, Esq. Fees:  $26,000.00

### Daniel Konrad, Esq.

Total Daniel Konrad, Esq. Fees:  $6,985.71

### Miscellaneous Costs

Total Miscellaneous Costs:  $15,257.49

TOTAL FEES AND COSTS:  $299,541.79

## Compensation

The compensation I am receiving for this Report is based upon my normal billable rate of Two Hundred Ten Dollars and no/100 ($210.00) per hour for all time incurred in reviewing the pertinent reports, files, pleadings, depositions and discovery, plus paralegal time at the rate of Eighty-Five Dollars and no/100 ($85.00) per hour, for a total of sixteen and 90/100 (16.90) hours, or Two Thousand Eight Hundred Ninety-Nine Dollars and no/100 ($2,899.00), plus costs in the amount of Fifteen Dollars and no/100 ($15.00), for a total of Two Thousand Nine Hundred Fourteen Dollars and no/100 ($2,914.00). I have not testified as an expert at trial or by deposition in any case within the preceding four (4) years.

## Conclusion

Based upon my review of the pleadings filed in the within action, the discovery produced, the detailed billing records of the attorneys retained by the Defendant, H. T. Boggs, the depositions taken, and further based upon my experience in representation of clients in environmental litigation, I conclude that the attorney fees and expenses of Taft and its local counsel, Kevin J. Waldo, Esq. and Daniel Konrad, Esq., were reasonable and proper based upon the custom and practice of environmental attorneys in Southwestern Ohio. The hourly rate charged by lead counsel at Taft, Thomas R. Schuck, Esq., based upon his experience as a seasoned trial attorney, is reasonable and proper.

I also conclude that the attorney fees and expenses incurred by the Defendant, H. T. Boggs, in responding to the within litigation were necessary and reasonable.

I also conclude after reviewing the various exhibits relative to the Rhodes Defendants, that the Rhodes Defendants were professionally negligent in failing to include in the Phase I report that the land purchased by the Plaintiffs was burdened by Federal wetlands.

My further opinion is that the lawsuit which the Plaintiffs brought against the Defendants was a direct and foreseeable consequence of the Rhodes Defendants' professional negligence, and that the attorney fees and expenses incurred by the Defendant, H. T. Boggs, in responding to the lawsuit were also foreseeable, and were the direct result of the Rhodes Defendants' professional negligence.

RESPECTFULLY SUBMITTED,

_____
Kevin J. Hopper (Ohio Registration No. 0019730)
KEVIN J. HOPPER CO., LPA
7434 Jager Court
Cincinnati, Ohio 45230
(513) 232-7578

C:\WORK\BOGGS.REP.wpd