UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SCOTT HUTCHISON ENTERPRISES, INC. et al., : | | Civil Action No. C-1-01-776 |
| Plaintiffs, : | | (Judge Weber) |
| v. : | | PLAINTIFFS' MOTION |
|  : | | FOR SUMMARY |
| RHODES, INC., et al. : | | JUDGMENT AGAINST |
|  : | | DEFENDANTS RHODES, |
| Defendants. : | | ZIMMER AND GEISLER |
|  : | |  |
|  : | | (Affidavit of W. Scott Hutchison |
|  : | | Attached Hereto) |

Now come the Plaintiffs Scott Hutchison Enterprises, Inc. and W.N. & Scott Hutchison Partnership (hereinafter collectively referred to as "Hutchison"), by and through counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, move this Court for summary judgment against Defendants, Larry Rhodes, Inc. ("Rhodes"), James Zimmer, and Jack Geisler (collectively, the "Rhodes Defendants") on the grounds that there is no genuine issue as to material fact and Plaintiffs are entitled to judgment against them as a matter of law.

This Motion is supported by a Memorandum in support attached hereto, and by the Affidavit of W. Scott Hutchison, the Expert Report of Donald A. Fay, C.P.G., (doc. nos. 139,140) depositions and related deposition exhibits and case law, as cited in the attached Memorandum.

In accordance with this Court's Order, Proposed Findings of Fact and Conclusions of Law will be separately filed.

1

Respectfully submitted,

/S/ William P. Schroeder
William P. Schroeder (0027123)
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249
(513) 583-4212
(513) 583-4203 Fax
Trial Attorney for Plaintiffs

**MEMORANDUM**

**I. Statement of Facts**

In the summer and early fall of 1999, Hutchison became interested in purchasing a mobile home park and adjacent vacant land in Burlington, Ohio ("Property") owned by Defendant H. T. Boggs ("Boggs"). Hutchison Affidavit ¶2. The Property is comprised of two distinct parcels separated by a public road known as Old U.S. 52. The parcel on the south side of Old U.S. 52 was developed as a mobile home park known as Boggs Landing and the parcel on the north side of Old U.S. 52 was vacant land ("Vacant Land"). (Hutchison Affidavit ¶3). Hutchison approached Boggs about purchasing Boggs Landing, but Boggs told him that the Vacant Land had to be part of the contract. (Hutchison, pp. 27, 32-33, Boggs Depo. I, p. 100 and II, pp. 63-64). Hutchison offered to purchase Boggs Landing and the Vacant Land in order to develop the Vacant Land into a mobile home park. (Hutchison Affidavit ¶4).

On October 20, 1999, Boggs, as seller, and Hutchison, as buyer, entered into a contract to purchase Boggs Landing and the Vacant Land. (Boggs Depo. II, p. 72; Ex. 195; Hutchison Affidavit ¶5). After Boggs and Hutchison executed this contract, Hutchison contacted his bank to arrange the financing. (Hutchison Depo., p.61). Hutchison's bank required that it have an environmental assessment performed of the Property ("Assessment") and recommended Rhodes conduct said Assessment. (Hutchison Affidavit ¶6; Hutchison Depo., p. 51, 60-63, 76 and 80; VanNostrand Depo., pp. 60-63; Exs. 60 and 92). Rhodes made a written proposal to Hutchison to conduct the Assessment. (Hutchison Affidavit ¶7; Ex. 132). Hutchison accepted Rhodes' proposal and engaged Rhodes to conduct said Assessment ("Contract"). (Rhodes Depo. pp. 38, 40-41, 52; Hutchison Depo., pp. 61-63, 81; Ex. 92). The Contract states that Rhodes would

3

review available information on the geographic areas and hydrologic conditions[1] present on the Property (Ex. 132) and do the following:

> (1) A walkover survey of the Property to identify an environmental concerns that may be present; and
>
> (2) A review of deed records to establish a chain-of-title for the Property; and
>
> (3) A review of federal and state government records to identify facilities listed in U.S. Environmental Protection Agency and Commonwealth of Kentucky environmental databases; and
>
> (4) A review of published historical, geological, topographic and soil maps to identify any…wetlands or other environmentally sensitive features; and
>
> (5) Survey of surrounding properties to identify current facilities with the potential to produce a negative environmental impact on the site.

(Hutchison Affidavit ¶8; Ex. 132).

Although Rhodes stated it would perform the items necessary to complete the Assessment, it actually outsourced part of the Assessment to EchoSearch, relied on EchoSearch's findings and incorporated the information provided by EchoSearch into its Report. (Rhodes Depo., pp. 25-27, 41). Rhodes called EchoSearch and said it needed a report on the Property and described the Property to them. (Rhodes Depo. pp. 26, 27). EchoSearch came back with a report that covered different items pertaining to the Property including what happened to the Property in the past. Id. Although EchoSearch identified the Property as being situated in one location and created its report based upon that particular location, Rhodes identified the Property as being situated in a different location and created its report based upon that different location. (Rhodes Depo., p. 82, Exs. 139 and 143). Rhodes failed to confirm that

---

[1] The term "hydrologic conditions" includes subsurface and surface conditions, which would include a surface wetland. (Rhodes Depo. pp. 34-36, 58, 147; Ex. 69).

4

it, as well as EchoSearch, was examining the proper, as well as the same, location for the Assessment. As a result, it examined the wrong piece of property for the Assessment and, in turn, the Rhodes' report regarding the Property was inaccurate. (Exs. 139 and 143).

Rhodes' representatives conducted a site reconnaissance of the Property but they did not bring GPS units with them to ensure they were inspecting the correct Property. (Rhodes Depo., pp. 72-73). When Rhodes conducted the site reconnaissance, Hutchison met Rhodes' representative, Adonis Spivey and told her that he wanted to make sure she did two things: (i) make sure the Property is out of the hundred-year flood plain and (ii) make sure that there were not any wetlands on the Property. (Hutchison Affidavit ¶9; Hutchison Depo., pp. 59-61). Hutchison had, in an earlier telephone conversation with Adonis Spivey (Rhodes' contact person), specifically requested Rhodes to ascertain if there were wetlands on the Property and Adonis Spivey agreed to do so. (Hutchison Affidavit ¶10). Nevertheless, Rhodes' Assessment did not include the determination of the existence of wetlands on the Property despite the fact that its contract with Hutchison states it would determine the existence of wetlands on the Property. (Rhodes Depo., pp. 34-35, 58, 76, 147; Exs. 35 and 69). Instead, Rhodes' representatives noted the Vacant Land consisted of 13.37 acres of scrubland and there was secondary tree and bramble growth over the entire site. (Hutchison Affidavit ¶12; Ex. 135; Rhodes Depo., pp. 162-163, 168). Rhodes did not see standing water, saw grass, a swamp, cattails or a red-winged blackbird that would indicate the existence of wetlands on the Property. (Rhodes Depo., pp. 162, 164, 166 and 168). Rhodes' site reconnaissance revealed no physical evidence of environmental conditions with respect to the Property (Exs. 134 and 135). Rhodes stated its records search also revealed no physical evidence of environmental conditions with

respect to the Property, but it was in possession of the National Wetland Inventory Map that identifies the locations of wetlands. (Rhodes Depo., pp. 137-140, and 153).

Although Rhodes' President confirmed that a site reconnaissance of the Property was performed, he could not identify who performed the remaining items necessary to complete the Assessment. Rhodes could not identify who reviewed the deed records at the clerk's office, the federal and state government records, or the published historical, geological, topographic and soil maps to identify any wetlands or other environmentally sensitive features. (Rhodes Depo., pp. 41, 56-58). Additionally, Rhodes could not confirm that that its representative actually did a survey of the surrounding properties to identify current facilities with the potential to produce a negative environmental impact on the Property. (Rhodes Depo., p. 59).

Rhodes reported all of its findings in a document entitled "Report of Phase I Environmental Site Assessment of Two Tracts: A 14.64 Acre Mobile Home Park and an Undeveloped 13.37 Acre Tract" ("Report"), that was signed by Defendants Zimmer and Geisler, and Adonis Spivey. (Hutchison Affidavit ¶13; Rhodes Depo., p. 47; Exs. 71, 134, 135). Rhodes' Report states that no "recognized environmental conditions were revealed in respect to the undeveloped tract during the site reconnaissance and records search" other than the issues listed which did not include "wetlands." (Exs. 71, 134, 135). Rhodes' Report indicates the absence of wetlands and hydric soil conditions on the Property. Id. Rhodes' Report failed to disclose the presence of wetlands on the Property. Id. Rhodes' Report did not identify any wetlands on the Property. Id. In closing, Rhodes warranted its conclusions. Id. See page 11 of the Report wherein it is stated: "**Warranty** – In performing our professional services, we have used that degree of care and skill ordinarily exercised under similar circumstances by members

6

of the profession. This warranty is in lieu of all other warranties, expresses or implied." The Warranty was signed by Defendants, Zimmer and Geisler.

On December 6, 1999, Boggs and Hutchison closed on the Contract. (Hutchison Affidavit ¶14; Hutchison Depo., pp. 121-122). Hutchison leased equipment in order to develop the Vacant Land. (Hutchison Depo., pp. 144, 157-158). In January of 2000, Hutchison's contractor began clearing the Vacant Land. (Hutchison Affidavit ¶15-16; Hutchison Depo., pp. 124-125, 135, 147-148). Hutchison's contractor became concerned about the possible existence of wetlands on the Vacant Land so it contacted the Army Corps of Engineers ("Corps"). (Hutchison Affidavit ¶16; Fudge Depo., pp. 56, 76-77, Ex. 166). The Corps advised Hutchison that the Vacant Land is located in jurisdictional wetlands and issued a cease and desist order prohibiting further work on the Vacant Land. (Fudge Depo., pp. 13-14, 56, 76-77; Hutchison Depo., p. 135; Dep. Exs. 95, 99 and 164). As a result, Hutchison cannot develop the Vacant Land as intended or use the land and it is losing money each month. (Hutchison Affidavit ¶18-19; Hutchison Depo., pp. 174, 178-180).

## II.   **Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by

demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2548. Once the movant meets this burden, the opposing party must set forth specific facts showing that there is as genuine issue for trial. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L.Ed. 2d 202 (1986).

The purpose of summary judgment is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Abercrombie & Fitch Stores v. American Eagle Outfitters,* 130 F.Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, the Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is no one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 251-52, 106 S.Ct. at 2502.

**III. Analysis**

**Rhodes, Zimmer and Geisler are liable for negligence.**

The elements that a plaintiff must **prove** the following elements to succeed on a **claim** for **negligence**: duty, breach of duty, causation, and damages. *Clay v. Sotheby's Chi., Inc.*, 257 F.Supp. 2d 9, 16-17 (2003) citing *Anderson v. St. Francis-George Hosp., Inc.*, 77 Ohio St.3d 82, 671 N.E. 2d 225, 227 (1996).

In the case at bar, Rhodes, Zimmer and Geisler each had a duty, assumed by the contract with Hutchison, to perform an Assessment of the Property and, in the course of performing said Assessment, determine the existence, if any, of wetlands on the Property. (Hutchison Affidavit ¶8-10: Exs. 132, 134, 135; Hutchison Depo., pp. 59-61); *Rich v. Ohio Underground*, 1991 Ohio App. LEXIS 6155 at *9. Rhodes admitted that it breached its duty to the extent that it admitted

8

that it did not determine the existence, if any, of wetlands on the Property. (Rhodes Depo., pp. 58, 76, 147).

Rhodes may assert, by way of defense, that it only agreed to conduct a Phase I environmental assessment of the Property and a Phase I environmental assessment does not include the determination of the existence of wetlands. (Rhodes Depo. pp. 34-36, 58, 147; Ex. 69). However, a close inspection of the Contract as well as Rhodes' Report specifically states that Rhodes agreed in its contract, and therefore, was required to identify any wetlands on the Property. (Ex. 132). They also agreed to do so in direct communications with Hutchison. (Hutchison Affidavit ¶¶8, 9, 10, 11). Despite its express obligation to do so, Rhodes admittedly failed to identify the existence of wetlands on the Property even though it was in possession of the National Wetland Inventory Map that identifies the locations of wetlands. ((Hutchison Affidavit ¶¶8, 9, 10, 11); Rhodes Depo., pp. 58, 76, 137-140,147 and 153). Additionally, Rhodes failed to confirm that it, as well as EchoSearch, was examining the proper piece of property for the Assessment. (Rhodes Depo., p. 82, Exs. 139 and 143). As a result, it identified and examined the wrong piece of property for the Assessment. (Exs. 139 and 143). Moreover, Rhodes could not identify who performed the remaining items necessary to complete the Assessment. (Rhodes Depo., pp. 41, 56-59). It could not identify who reviewed the deed records at the clerk's office, the federal and state government records, or the published historical, geological, topographic and soil maps to identify any wetlands or other environmentally sensitive features *nor* could it confirm that its representative actually surveyed the surrounding properties to identify current facilities with the potential to produce a negative environmental impact on the Property. Id. Hence, Rhodes breached its duty to Hutchison, and was negligent..

The individual Defendants, Zimmer and Geisler signed the final report for Rhodes (Exhibit 135), as James M. Zimmer, Project Geologist, and H. Jack Geisler, P.E., Vice President, Engineering Services. Mr. Zimmer also signed Exhibit 132, the proposal. Hence, the documents show that these individuals were the environmental professionals who were actually responsible for the work of Rhodes on this project, and for meeting the professional and industry standards described and discussed above that were not met. Hence, as individuals, they failed to meet the applicable standards for environmental professionals in this case and were negligent in their work on this project. (Expert Report of Donald A. Fay, C.P.G., doc. no. 140, p. 8).

Under Ohio law, a professional negligence action may be brought against a member of any profession, not just licensed professions, or those governed by R.C. 2305.11." *Alexander v. Culp,* 124 Ohio App. 3d 13, 20, 705 N.E. 2d 378, 382 (Cuyahoga Co. 1997).

The identification of wetlands and other environmentally sensitive features was a part of the environmental assessment undertaken by Rhodes. Having been specifically asked and having agreed to identify any wetlands on the subject property, Rhodes failed to identify or discuss wetlands on the subject site. Wetlands and other environmentally sensitive features were actually present on the site, as documented in public records Rhodes was obliged to review. Rhodes, Zimmer and Geisler were negligent in that they failed to identify and recognize the wetlands on the site which were indicated to be there on public records they had promised to review. Moreover, having failed to recognize wetlands from the information available on public maps and records, they misled Hutchison by their preliminary and final reports, which:

  a) failed to identify and point out any wetlands or other environmentally sensitive areas;
  b) stated there were no environmentally sensitive areas, and

10

    c) failed to recognize and/or discuss with Hutchison the existence of wetlands on the subject site, even though the wetlands were indicated on public records they committed to review, both in their engagement letter, and in the final report. (Expert Report of Donald A. Fay C.P.G. doc. no.140, p. 4).

The undisputed evidence before the Court establishes that the Rhodes Defendants, who represented themselves to be environmental specialists, were negligent in conducting their study. After conducting a survey of the property and purportedly reviewing the available government records (see Spivey's letter, Dep. Exs. 63/134), they concluded that there were no wetlands on the property. However, the record establishes that they were wrong: the United States Geological Survey map of the Catlettsburg, Kentucky Quadrangle, which includes the subject property, shows that a wetlands meanders across portions of the vacant lots (Dep. Ex. 200). Thomas Company subsequently plotted how this affects Hutchison's proposed development of the vacant lots (see Dep. Ex. 99, p. H00349). The Rhodes Defendants included the relevant excerpt from the U.S.G.S. map in their report (Dep. Exs. 71/135, p. H00027, and Dep. Ex. 139), but incorrectly concluded that there was no wetlands problem.

Plaintiffs have submitted the expert witness reports of Dan Keith Evans, Ph.D., Samuel A. Wood, Dewey Sanderson, Ph.D., and Donald A. Fay, C.P.G. (doc. nos. 135, 139 and 140). These reports speak to the relevant scientific issues, establish the applicable professional standard for conducting the study which the Rhodes Defendants undertook, and demonstrate that the Rhodes Defendants failed to meet that standard. The standard of care applicable to environmental professionals, performing an environmental assessment, such as the one undertaken by Rhodes, obligates them to exercise reasonable and ordinary care to properly

locate the site under investigation, review and interpret public records and maps applicable to that site, and accurately report the information to the client. In this instance that would include the obligation to exercise reasonable care and skill to ascertain from available information, and from an actual on-site investigation, whether or not environmentally sensitive conditions, such as wetlands, existed on the site and to set forth and discuss their findings in a report to the client. (Expert Report of Donald A. Fay, C.P.G., doc. nos. 139,140 p.6)

The Rhodes Defendants undertook to perform an environmental site assessment that included the two tracts described, and specifically stated Rhodes would "Review … published historical, geological, topographical, and soil maps *to identify wetlands, or other environmentally sensitive features."* Published topographical maps, wetlands inventory maps, and other sources available to Rhodes, and purportedly reviewed by Rhodes and referenced and included in their final report, identify the existence of wetlands and other environmentally sensitive areas (i.e., wetlands, boggy or swampy areas) on the site. However, there are no wetlands or other environmentally sensitive features of the site identified or discussed in the report.

A properly trained environmental professional, exercising reasonable care, should have recognized the symbols of wetlands and other environmentally sensitive areas and identified and discussed them in the report. In not doing so, the work of the Rhodes Defendants as set forth in their Report fell below the applicable standard of care and the industry standard for environmental assessment of the type undertaken in this instance, and constituted negligence on the part of the Rhodes Defendants. (Expert Report of Donald A. Fay, C.P.G., doc. nos. 139,140 p.6-7)

The Rhodes report and the investigation undertaken by the Rhodes Defendants, mis-

identified and/or mis-located the actual site by approximately .25 mile as shown on maps included in the Appendix. This makes references to the maps misleading, because the incorrect locations do not show symbols that signify wetlands, swampy or boggy areas, whereas references to the true and correct location of the site in question do show such symbols and do indicate the presence of wetlands, swamps and boggy areas. A properly trained environmental professional, exercising reasonable care, should have correctly identified the site on the maps, recognized the symbols of wetlands and other environmentally sensitive areas, and identified and discussed them in the report. Failing to do so fell below the applicable standard of care and the industry standard for environmental assessment of the type undertaken in this instance, and constituted negligence on the part of Rhodes. (Expert Report of Donald A. Fay, C.P.G., doc. nos. 139, 140 p.7)

The individual Defendants Zimmer and Geisler signed the final report for Rhodes (Exhibit 135), as James M. Zimmer, Project Geologist, and H. Jack Geisler, P.E., Vice President, Engineering Services. Mr. Zimmer also signed Exhibit 132, the proposal. Hence, the documents show that these individuals were the environmental professionals who were responsible for the work of Rhodes on this project, and for meeting the professional and industry standards described and discussed above that were not met. Hence, as individuals, they failed to meet the applicable standards for environmental professionals in this case and were negligent in their work on this project. (Expert Report of Donald A. Fay, C.P.G., doc. nos. 139,140 p.8)

As a direct and proximate result of Rhodes' breach of its duty to Hutchison, Hutchison has been damaged. First, Hutchison paid Rhodes for the Assessment and more than $200,000.00 for property that he planned on developing into a mobile home park. (Hutchison Affidavit ¶5).

13

Then, Hutchison leased equipment in order to develop the Vacant Land and paid a contractor to clear the Vacant Land. (Hutchison Depo., pp. 124-125, 135, 144, 147-148, 157-158). After Hutchison's contractor became concerned about the possible existence of wetlands on the Vacant Land and contacted Corps of Engineers, the Corps of Engineers advised Hutchison that the Vacant Land is located in jurisdictional wetlands and issued a cease and desist order prohibiting further work on the Vacant Land. (Hutchison Affidavit ¶17; Fudge Depo., pp. 13-14, 56, 76-77, Hutchison Depo., p. 135; Ex. Dep. Exs. 95, 99, 164 and 166). As a result, Hutchison cannot develop the Vacant Land as intended or use the land and it is losing money each month. (Hutchison Affidavit ¶18; Hutchison Depo., pp. 174, 178-180). Additionally, Hutchison must continue to pay the mortgage for the Vacant Land and incur the costs associated with remediating the Property, which includes, but is not limited to, the costs of purchasing additional land and the costs involved in getting EPA approval for the remediation. (Hutchison Affidavit ¶19; Hutchison Depo., p. 178 and Hutchison Affidavit ¶ 2). Hutchison has been damaged as a direct and proximate result of Rhodes' breach of its duty to perform the Environmental assessment and identify the existence of wetlands on the Property. Since the Rhodes Defendants were negligent in performing their duty assumed by contract with Hutchison, and their negligence is the proximate cause of Hutchison's damages, they are liable to Hutchison for Hutchison's damages. *Rich v. Ohio Underground*, 1991 Ohio App. LEXIS 6155 at *9.

        **Rhodes breached its contract with Hutchison.**

A plaintiff must **prove** the following elements to succeed on a **breach of contract claim**: the existence of a contract, plaintiff's performance of the contract terms, breach of the contract by defendant, and plaintiff's damage or loss caused thereby. *Ventura v. Cincinnati Enquirer*,

2002 U.S. Dist. LEXIS 25723 citing *Doner v. Snapp*, 98 Ohio App.3d 597, 60, 649 N.E. 2d 42, 44 (1994).

In the case at bar, Rhodes made a written proposal to Hutchison to conduct the Environmental assessment required by Hutchison's contract with Boggs. (Ex. 132). Hutchison accepted Rhodes' proposal and engaged Rhodes to conduct said Assessment. (Hutchison Affidavit ¶7; Rhodes Depo. pp. 38, 40-41, 52, Hutchison Depo., pp. 61-63, 80-81; Exs. 92 and 132). Rhodes admitted it had a contract with Hutchison. (Rhodes Depo., p. 41). Hence, a contract exists between Hutchison and Rhodes.

Under the terms of the Contract, Hutchison was obligated and did pay Rhodes for said Assessment. Hutchison fulfilled its contractual obligations and paid Rhodes for the Assessment. (Hutchison Depo. p. 115). Although Hutchison fulfilled its contractual obligations, Rhodes failed to fulfill its contractual obligations.

As discussed supra, Hutchison was obligated to perform an Assessment of the Property and, in the course of performing said Assessment, determine the existence, if any, of wetlands on the Property. (Hutchison Affidavit ¶8-10; Exs. 132, 134 and 135). Although Rhodes now denies that the identification of wetlands on the Vacant Land was within the scope of its engagement, the Contract states that Rhodes would conduct a "review of published historical, geological, topographic and soil maps to identify any…wetlands or other environmentally sensitive features." Rhodes failed to identify wetlands on the Property. (Exs. 134 and 135). Rhodes admitted that it did not determine the existence, if any, of wetlands on the Property. (Rhodes Depo., pp. 58, 76, 147). Rhodes was also obligated to conduct a walkover survey of the Property to identify an environmental concerns that may be present. (Exs. 132, 134 and 135).

15

Although Rhodes conducted a walkover survey of the Property, it failed to identify the existence of wetlands on the Property. (Exs. 134 and 135). Accordingly, Rhodes clearly breached its contract with Hutchison.

As a direct and proximate result of Rhodes' breach of its contract with Hutchison, Hutchison has been damaged. First, Hutchison paid Rhodes for the Assessment and more than $200,000.00 for property that he planned on developing into a mobile home park. Then, Hutchison leased equipment in order to develop the Vacant Land and paid a contractor to clear the Vacant Land. (Hutchison Depo., pp. 124-125, 135, 144, 147-148, 157-158). After Hutchison's contractor became concerned about the possible existence of wetlands on the Vacant Land and contacted Corps, the Corps advised Hutchison that the Vacant Land is located in jurisdictional wetlands and issued a cease and desist order prohibiting further work on the Vacant Land. (Fudge Depo., pp. 13-14, 56, 76-77, Hutchison Depo., p. 135; Ex. Dep. Exs. 95, 99, 164 and 166). As a result, Hutchison cannot develop the Vacant Land as intended or use the land and it is losing money each month and will continue to do so until a mitigation plan is approved by the U.S. Army Corps of Engineers and the Ohio EPA, and the property is approved for development. (Hutchison Depo., pp. 174, 178-180). Additionally, Hutchison must continue to pay the mortgage for the Vacant Land and incur the costs associated with remediating the Property, which includes, but is not limited to, the costs of purchasing additional land and the costs involved in getting EPA approval for the remediation, which will exceed $200,000. (Hutchison Affidavit ¶19; Hutchison Depo., p. 178). Hutchison has been damaged as a direct and proximate result of Rhodes' breach of its contract with Hutchison. Since Rhodes breached

its contract with Hutchison, it is liable for the damages Hutchison incurred as a result of Rhodes' breach of the Contract.

## IV.  Conclusion

For the foregoing reasons, Plaintiffs Scott Hutchison Enterprises, Inc. and W.N. & Scott Hutchison Partnership respectfully request this Court to grant summary judgment regarding the Rhodes Defendants' liability for negligence and breach of contract, and a judgment for damages in the amount of $300,000.00 and costs.

Respectfully submitted,

/S/ William P. Schroeder
William P. Schroeder (0027123)
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249
(513) 583-4212
(513) 583-4203 Fax
Trial Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: E. David Marshall at edavidm@iglou.com; Gayle Benner McGrath at gmcgrath@wyattfirm.com; and Thomas Robert Schuck at schuck@taftlaw.com and **I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:**

Kevin J. Waldo, 413 Center Street, Ironton, OH 45638-1505; E. Christine Lewis, Wyatt Tarrant & Combs, LLP, 250 West Main Street, Suite 1600, Lexington, KY 40507-1746; W. Craig Robertson, Wyatt Tarrant & Combs, LLP, 250 West Main Street, Suite 1600, Lexington, KY 40507-1746; and M. Bradford Sanders, Sanders & Associates, 9122 Montgomery Road, Suite 201, Montgomery, OH 45242.

/S/ William P. Schroeder
William P. Schroeder (0027123)