UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Scott Hutchison Enterprises, Inc., et al., | : | Civil Action No. C-1-01-776 |
| | : | |
| Plaintiffs | : | Judge Weber |
| | : | |
| v. | : | **DEFENDANT BOGGS' MOTION FOR** |
| | : | **SUMMARY JUDGMENT AGAINST** |
| Rhodes, Inc., et al., | : | **DEFENDANTS RHODES, ZIMMER,** |
| | : | **AND GEISLER AND MEMORANDUM** |
| Defendants | : | **IN SUPPORT** |

Defendant H.T. Boggs hereby moves the Court, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, for summary judgment in his favor on his cross-claim against Defendants Larry Rhodes, Inc. ("Rhodes"), James Zimmer, and Jack Geisler (collectively, the "Rhodes Defendants"), jointly and severally, in the principal amount of $299,541.79. This sum represents the attorneys' fees and expenses which Boggs incurred in this action through August 30, 2005 as the result of the claims brought against him by Plaintiffs, Scott Hutchison Enterprises, Inc. ("Hutchison Enterprises") and W.N. & Scott Hutchison Partnership ("Hutchison Partnership") This cross-claim is substantiated by the statements of fees and expenses separately filed with the affidavits of Thomas R. Schuck, Boggs' trial attorney (doc no. 152); Kevin J. Waldo, co-counsel in the action (doc. no. 153); and Daniel J. Konrad, Boggs' attorney in Huntington, West Virginia (doc. no. 154).

Boggs also moves for summary judgment on the cross-claims asserted against him by Rhodes (doc. no. 9) and by Zimmer and Geisler (doc. no. 83).

This motion is supported by the following memorandum of law, the affidavits of counsel, and the expert witness reports which have been filed in the action.

{W0571821.2}

**MEMORANDUM**

**Statement of the Case**

The Court is familiar with the background of this action, which arose as the result of Hutchison Partnership's purchase of some vacant lots and a mobile home park located in the Village of Burlington, Lawrence County, Ohio from Boggs in December, 1999. The vacant lots were subsequently found to be burdened by federally designated wetlands, precluding their commercial development by Plaintiffs. On August 18, 2005, the Court determined that Plaintiffs' claims against Boggs were insupportable as a matter of law and entered summary judgment on them in Boggs' favor (doc. no. 124). Plaintiffs' claims and Boggs' cross-claims against the Rhodes Defendants are based on the environmental study of the real estate which the Rhodes Defendants conducted as a precondition to its sale by Boggs (Dep. Exs. 71/135).[1]

**Statement of Facts**

The material facts are largely set out in the Court's two orders of August 18, 2005 (doc. nos. 123 and 124). On October 20, 1999, Boggs entered into a Real Estate Sales Agreement with Hutchison Enterprises whereby he agreed to sell and Hutchison Enterprises agreed to buy the vacant lots and adjacent mobile home park (Dep. Exs. 23/195). As the Court has observed, Huntington National Bank conditioned its commitment to finance Plaintiffs' purchase of this real estate on a satisfactory environmental report, and Banker Robert VanNostrand warned Scott Hutchison that the property might be located in a wetlands area which could inhibit development of the vacant lots (doc no. 124, p. 7). Boggs also insisted on an environmental study of the property (Boggs Dep. 12/9/03, p. 57), so the parties included the requirement of a "Satisfactory Level One

---

[1] By its first order of August 18, 2005 (doc. no. 123), the Court found these claims to be timely and denied the motion for summary judgment filed by Zimmer and Geisler based on the applicable statute of limitations.

EPA Study to be performed before December 1st, 1999" in the Real Estate Sales Agreement (Dep. Exs. 23/195, ¶ 5.2). VanNostrand recommended that Hutchison hire Rhodes to perform that study (VanNostrand Dep., p. 63; Scott Hutchison Dep., p. 63).

Hutchison Enterprises entered into a contract with Rhodes also on October 20 pursuant to which Rhodes agreed to conduct an environmental assessment of the real estate, including a "[r]eview [of] available information on the geographic area and the geologic and hydrologic conditions present" (Dep. Ex. 92). Hutchison requested Rhodes to make sure that there were no wetlands on the property (Scott Hutchison Dep., pp. 59-63, 80-82).

On October 28, Rhodes issued a preliminary report to VanNostrand signed by Zimmer and another Rhodes employee, Adonis Spivey (now deceased), stating that other than some "unlawful dumping of building debris," no "recognized environmental conditions were revealed in respect to the undeveloped tract during the site reconnaissance and records search" (Dep. Exs. 63/134). On November 8, Rhodes issued its final report (Dep. Exs. 71/135). This report was signed by Zimmer, Geisler, and Spivey and gave the property a clean bill of health (Larry Rhodes Dep., pp. 51-54, 86). The report specifically covers wetlands (Dep. Exs. 71/135, pp. 1, 2, and 10). See Order, doc. no. 124, at 8-9.

The real estate closing occurred on December 6 (Scott Hutchison Dep., pp. 116-117)[2]. See Order, doc no. 124, at 9. Hutchison began clearing the vacant lots in January, 2000 (Scott Hutchison Dep., p. 135). He hired Thomas Company, an engineering firm in Huntington, to design a mobile home park to be constructed on the vacant property (*id*., p. 152). Andy Lockwood, an engineer employed by Thomas on the project, became concerned about the condition of the soil on

---

[2]    For tax reasons, title to the property was taken in the name of Hutchison Partnership rather than Hutchison Enterprises (Klein Dep., p. 185; Laya Hutchison Dep., p. 44). See Order, doc. no. 124, at 9.

{W0571821.2}

the vacant lots and contacted the Huntington office of the U.S. Army Corps of Engineers (Fudge Dep., pp. 56, 76-77). Tammy Fudge, an environmental specialist with the Corps, looked at the site on April 27 and informed Lockwood and Hutchison that portions of the vacant lots are located in a jurisdictional wetlands (as shown on Dep. Ex. 99, p. H00349), requiring a permit to re-configure the property and construct something on it (Fudge Dep., pp. 56, 76-77; Scott Hutchison Dep., p. 137; Dep. Ex. 99). On May 3, the Corps issued a cease and desist order prohibiting further work on the vacant lots unless and until the permitting process is satisfied (Fudge Dep., pp. 13-14; Dep. Ex. 95). See Order, doc. no. 124, at 9-10. The present litigation followed.

## Argument

The Court's second order of August 18, 2005 (doc. no. 124) disposed of Plaintiffs' claims against Boggs (doc no. 75, ¶¶ 35 and 36) and, by logical extension, the cross-claims of the Rhodes Defendants against him, as discussed below. Boggs incurred a total of $299,541.79 in attorneys' fees and expenses through August 30, 2005 in this action. These fees and expenses constitute his damages against the Rhodes Defendants, inasmuch as they are a direct and foreseeable consequence of the Rhodes Defendants' professional negligence in certifying the real estate to be free of wetlands, in reliance on which Boggs sold the property to Hutchison Partnership.

### The Rhodes Defendants' Professional Negligence

By its first order of August 18, 2005 (doc. no. 123), the Court determined that the claims against the Rhodes Defendants for delivering a defective environmental report "are properly characterized as professional negligence claims." Order, doc. no. 123, at 9. Under Ohio law,[3] "a

---

[3]    Ohio law governs these claims, inasmuch as the real estate at issue is located in Ohio and the environmental study was conducted in Ohio. *Miller v. State Farm Mut. Auto Ins. Co.,* 87 F.3d 822, 824-825 (6th Cir. 1996); *Preferred RV, Inc. v. American Prescription Plan, Inc.,* 46 F.3d 535, n.5 (6th Cir. 1995); *Macurdy v. Sikou & Love, P.A.,* 894 F.2d 818, 820-821 (6th Cir. 1990); *Johnson v. Thomas,* 275 F. Supp. 32, 35 (S.D. Ohio 1967), citing *Jennings v. Jennings,* 21 Ohio St. 56 (1871); *Pfan v. Moseley,* 9 Ohio St. 2d 13, 17-18, 222 N.E.2d 639 (1968).

professional negligence action may be brought against a member of any profession, not just licensed professions, or those governed by R.C. 2305.11." *Alexander v. Culp,* 124 Ohio App. 3d 13, 20, 705 N.E. 2d 378, 382 (Cuyahoga Co. 1997), and authorities cited therein.[4]

The undisputed evidence before the Court establishes that the Rhodes Defendants, who represented themselves to be environmental specialists, were negligent in conducting their study. After conducting a survey of the property and purportedly reviewing the available government records (see Spivey's letter, Dep. Exs. 63/134), they concluded that there were no wetlands on the property. However, the record establishes that they were wrong: the United States Geological Survey map of the Catlettsburg, Kentucky Quadrangle, which includes the subject property, shows that a wetlands meanders across portions of the vacant lots (Dep. Ex. 200). Thomas Company subsequently plotted how this affects Hutchison's proposed development of the vacant lots (see Dep. Ex. 99, p. H00349). The Rhodes Defendants included the relevant excerpt from the U.S.G.S. map in their report (Dep. Exs. 71/135, p. H00027, and Dep. Ex. 139), but incorrectly concluded that there was no wetlands problem.

Plaintiffs have submitted the expert witness reports of Dan Keith Evans, Ph.D., Samuel A. Wood, Dewey Sanderson, Ph.D., Andrew L. Lockwood, and Donald A. Fay, C.P.G. (doc. nos. 135 and 140), among others. These reports speak to the relevant scientific issues, establish the applicable professional standard for conducting the study which the Rhodes Defendants undertook, and demonstrate that the Rhodes Defendants failed to meet that standard. The report of Attorney Kevin J. Hopper, which Boggs has submitted (doc. no. 137), also attests to the Rhodes Defendants'

---

[4] The test used to determine if a claim is for professional negligence (or malpractice) is whether it involves an alleged failure in professional skill or judgment: "[I]f a condition by its nature requires the application of knowledge and skill superior to that of the ordinary person, one who possesses that superior knowledge and skill and who fails to employ it for the benefit of another when their relation requires it will be held liable for injuries proximately resulting from the failure." *Berdyck v. Shinde,* 66 Ohio St. 3d 573, 579, 613 N.E. 2d 1014, 1020 (1993). *See Devonshire v. The Johnston Group First Advisors,* 300 F. Supp. 2d 516 (N.D. Ohio 2003) (Carr, C.J.), *vacated in part, on reconsideration,* 338 F. Supp. 2d 823, *vacated on other grounds,* 2004 WL 2269625 (2004) (claim for bad investment

professional negligence. In the face of this record, the Rhodes Defendants cannot credibly assert that their mistake about the wetlands did not constitute professional negligence.

### Boggs Reasonably Relied on the Rhodes Defendant's Report

The Real Estate Sales Agreement required a satisfactory environmental study as a condition precedent to Boggs' sale of the land (Dep. Exs. 23/195, ¶ 5.2), and Boggs' deposition testimony establishes his reliance on the Rhodes Defendants' report (Boggs Dep. 12/9/03, pp. 68-70). He testified that he was "relying on the people who were going to do this study to give the property a clean bill of health as far as wetlands were concerned":

> Q. Did you request a satisfactory Level-I E.P.A. study as a condition of this transaction, Mr. Boggs . . . Did you request – now, I'm not saying somebody else did not also request it. But I'm just asking about you. Did you ask for an E.P.A. study?
>
> A. Yes.
>
> Q. As a condition of going ahead?
>
> \* \* \*
>
> A. Yes.
>
> Q. Why?
>
> A. Because I didn't want anything coming up that would be a problem and them saying this or that about it. And the bank – the banker assured me that that was going to be the case in his conversation with me on the phone.
>
> \* \* \*
>
> Q. So Mr. van Nostrand assured you that there would be a Satisfactory Level-E.P – I E.P.A. study before the transaction went ahead?
>
> A. That is correct.
>
> \* \* \*

---

advice is claim for professional malpractice), and cases cited therein.

>   Q.   Were you relying – in selling this property to Mr. Hutchison's company, were you relying on the people who were going to do this study to give the property a clean bill of health as far as wetlands were concerned?
>
>   A.   I was relying on that to happen to – for him to be able to construct on the property they – he had to go through that method before he could construct and get approval for it. And I was relying on that of course.

(Boggs Dep. 12/9/03, pp. 68-70, colloquy of counsel omitted).

### Boggs May Maintain a Claim for Professional Negligence Against the Rhodes Defendants

Boggs was entitled to rely on the Rhodes Defendants' report, and they are therefore liable to him for professional negligence, based on either of two theories. In *Haddon View Investment Co. v. Coopers & Lybrand,* 70 Ohio St. 2d 154, 436 N.E. 2d 212 (1982), the Ohio Supreme Court adopted the rule laid down in the Restatement of the Law 2d, Torts (1979), Section 552 and held that "[a]n accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen" (syllabus). As the Supreme Court recently explained in *Corporex Development & Construction Management, Inc. v. Shook, Inc.,* 106 Ohio St. 3d 412, 415, 835 N.E.2d 701, 705 (2005), this rule applies to "those limited circumstances in which a person, in the course of business, negligently supplies false information, knowing that the recipient either intends to rely on it in business, or knowing that the recipient intends to pass the information on to a foreseen third party or limited class of third persons who intend to rely on it in business."[5] Environmental specialists, like accountants, deal in information. Logically, therefore, they fall within the language of the Restatement; there is no distinction between these professions as far as the nature of the

---

[5] This rule has been applied to other professions as well, including insurance professionals, *Merrill v. William E. Ward Insurance,* 87 Ohio App. 3d 583, 622 N.E.2d 743 (Franklin Co.), *motion to certify overruled,* 67 Ohio St. 3d 1471, 619

{W0571821.2}

- 7 -

service and the anticipated reliance on it are concerned. Accordingly, this Court might reasonably conclude that the Supreme Court of Ohio, if presented with this issue, would apply the Restatement test to the present case.

Applying this rule, the record establishes that Boggs satisfies its requirements because he is a member of the limited class whose reliance on the Rhodes Defendants' report was specifically foreseen. The Rhodes Defendants knew that the purpose of their study was to determine whether Hutchison Enterprises was going to purchase the vacant lots and the mobile home park from Boggs and whether Huntington National Bank would agree to finance the acquisition. Spivey's letter of October 28, 1999 to VanNostrand reporting on the preliminary results of the study refers to a "[s]ite reconnaissance for the proposed acquisition properties" and represents that this "reconnaissance included an inspection of the entire tracts and adjacent property for any visible evidence of past or present environmental hazards that may impact the subject property" (Dep. Exs. 63/134). This reference to the "proposed acquisition properties" is repeated in the Rhodes Defendants' final report (Dep. Exs. 70/148, p. 10, R00029). Thus, the Rhodes Defendants knew that their report was intended to serve as the basis for a real estate sale. Furthermore, the Rhodes Defendants knew that the presence or absence of wetlands on the property was among the considerations important to the purchaser and seller because their report specifically covers wetlands (Dep. Exs. 71/135, pp. 1, 2, and 10). As the prospective seller of the real estate, Boggs was clearly within the class of persons whose reliance on the Rhodes Defendants' report was foreseen because there cannot be a real estate sale without both a buyer and a seller. Whether or not the Rhodes Defendants knew the identity of the seller is immaterial; they knew that someone acting in that capacity was relying on their report.

---

N.E.2d 1028 (1993), and real estate appraisers, *Perpetual Federal Savings & Loan Ass'n v. Porter & Peck, Inc.*, 80 Ohio App. 3d 569, 609 N.E.2d 1324 (Franklin Co. 1992).

Accordingly, applying the Restatement rule, the Rhodes Defendants are liable to Boggs for the damages which he sustained as the proximate result of selling his land to Hutchison Partnership.

On the other hand, in *Corporex Development*, the Ohio Supreme Court described the distinction between those circumstances in which professional liability lies in tort and those in which "privity [of contract] or a sufficient nexus that could serve as a substitute for privity" is required. 106 Ohio St. 3d at 415, 835 N.E.2d at 705. Should the Court conclude that privity or its substitute is required in the case of a claim for professional liability on the part of environmental specialists, the record also demonstrates that this standard has been met as far as Boggs is concerned. Hutchison Enterprises was in privity with Rhodes; Boggs was in privity with Hutchison Enterprises. Spivey, Zimmer (a professional geologist), and Geisler (a professional engineer) delivered the environmental report on behalf of Rhodes pursuant to Rhodes' contract with Hutchison Enterprises. Each warranted its results – "In performing our professional services, we have used that degree of care and skill ordinarily exercised under similar circumstances by members of the profession" (Dep. Exs. 71/135, p. 11, H00019) – thereby evidencing a contractual duty to perform according to professional standards, which they breached when they incorrectly determined that there was no wetlands problem on the property. The "sufficient nexus that could serve as a substitute for privity" is found in the fact that Boggs was an intended creditor beneficiary of Hutchison Enterprises' contract with Rhodes and the Rhodes Defendants' environmental report.

The recent decision of the Court of Appeals for the Fourth Appellate District of Ohio (Scioto County) in *Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust, Inc.*, 156 Ohio App. 3d 65, 81, 804 N.E.2d 979, 990 (2004), provides a succinct statement of the law of Ohio with respect to the right of a person to assert the benefit of a contract to which he or she is not a party:

> As a general proposition, a third party for whose benefit a contract has been entered may bring an action for a breach of that contract. See *Grant Thornton v. Windsor House, Inc*. (1991), 57 Ohio St.3d

>   158, 161, 566 N.E.2d 1220; *Rhorbacker v. Citizens Bldg. Assn. Co.* (1941), 138 Ohio St. 273, 276, 20 O.O. 366, 34 N.E.2d 751; *Thompson v. Thompson* (1854), 4 Ohio St. 333, 1854 WL 82, at paragraph six of the syllabus.  However, only an *intended* third-party beneficiary may exert rights to a contract to which it is not a party. *TRINOVA Corp. v. Pilkington Bros., P.L.C.* (1994), 70 Ohio St.3d 271,277, 638 N.E.2d 572.  There are three categories of intended third-party beneficiaries:  (1) a creditor beneficiary; (2) a donee beneficiary; and (3) an incidental beneficiary.  *Visintine & Co. v. New York, Chicago & St. Louis R.R. Co.* (1959), 169 Ohio St. 505, 507, 9 O.O.2d 4, 160 N.E.2d 311; see, also, *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St.3d 36, 40, 521 N.E.2d 780.  Only the first two categories, however, may bring an action as a third-party beneficiary.  An incidental beneficiary under a contract to which he is not a party cannot recover from the promisor in breach.  *Visitine & Co.,* supra, 169 Ohio St. at 507, 9 O.O.2d 4, 160 N.E.2d 311; *Hill,* supra, 36 Ohio St.3d at 41, 521 N.E.2d 780; see, also, *Cullen v. Ohio Dept. of Rehab. & Corr.* (1998), 125 Ohio App.3d 758, 766, 709 N.E.2d 583; *Doe v. Adkins* (1996), 110 Ohio App.3d 427, 436, 674 N.E.2d 731.

In *Hill v. Sonitrol of Southwestern Ohio, Inc.,* 36 Ohio St. 3d 36, 521 N.E.2d 780 (1988), cited by the Court of Appeals in *Mark-It Place Foods,* the Ohio Supreme Court adopted the rule with respect to intended and incidental beneficiaries of contracts found in Section 302 of the Restatement of the Law 2d, Contracts (1981), 439-40.  36 Ohio St. 3d at 40, 521 N.E.2d at 784.  In *Sonitrol*, the Supreme Court also acknowledged the applicability of the "'intent to benefit' test . . . to determine whether a third party is an intended or incidental beneficiary" of a contract applied by the Court of Appeals for the Sixth Circuit in *Norfolk & Western Co. v. United States*, 641 F.2d 1201, 1208 (1980) (6th Cir. 1980).  The substance of both the Restatement test and the Sixth Circuit's "intent to benefit" test is that "the performance of [a particular] promise must . . . satisfy a duty owed by the promissee to the beneficiary" in order to render a person an intended beneficiary of a contract, entitling that person to enforce it.  36 Ohio St. 3d at 40, 521 N.E.2d at 785, quoting *Norfolk & Western Co., supra*, 641 F.2d at 1208.  Boggs meets the requirements of both tests:  the terms of the Real Estate Sales Agreement and the deposition testimony, not to mention the Rhodes

Defendants' acknowledgement that the purpose of their environmental study was for a real estate sale, establish that "the promissee [Hutchison Enterprises] intend[ed] to give the beneficiary [Boggs] the benefit of the promised performance [the environmental report]"; and the performance of that promise satisfied the duty owed by Hutchison Enterprises to Boggs under the Real Estate Sales Agreement. Thus, Boggs is an intended creditor beneficiary of the agreement between the Rhodes Defendants and Hutchison Enterprises to provide an environmental report on the real estate which covered wetlands, and is entitled to have relied on the Rhodes Defendants' warranty that "[i]n performing our professional services, we have used that degree of care and skill ordinarily exercised under similar circumstances by members of the profession" (Dep. Ex. 71/135, p. 11, H00019). He is therefore entitled to maintain a claim for economic damages against the Rhodes Defendants based on their professional negligence under the contract theory utilized by the Supreme Court in *Corporex* as well as under the tort theory adopted in *Haddon View*.

### Boggs' Damages

The damages which Boggs sustained are the attorneys' fees and expenses which he incurred in the present action through the point at which the Court entered summary judgment in his favor on Plaintiffs' claims against him. These fees and expenses, amounting to $299,541.79 through August 30, 2005, are itemized in the statements separately filed with the affidavits of the attorneys who rendered these services and incurred these expenses on his behalf (doc. nos. 152, 153, and 154).

Attorneys' fees and expenses of litigation are recoverable as damages "where the wrongful act of the defendant has involved the plaintiff in litigation with others or placed him in such relation with others as makes it necessary to incur expense to protect his interest," in which case "such costs and expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages." *S&D Mechanical Contractors, Inc. v. Enting Water Conditioning Systems Inc.,* 71 Ohio App. 3d 228, 241, 593 N.E.2d 354, 363 (Montgomery

{W0571821.2}

Co. 1991), quoting *V.N. Holderman & Sons Co. v. Jackson,* 73 O.O. 2d 148, 150 (Ct. Cl. 1975). *Accord*, *Berks Title Insurance Co. v. Haendiges,* 591 F. Supp. 879, 889 (N.D. Ohio 1984), *rev'd on other grounds*, 772 F.2d 278 (6th Cir. 1985), and cases cited therein; *Homes By Calkins, Inc. v. Fisher*, 92 Ohio App. 3d 262, 634 N.E.2d 1039 (Butler Co. 1993). *See also Lytle v. McClain,* 2004 WL 2070655 (Ct. App. Lorain Co. 2004); *Kramer v. Estate of Anzellotti,* 2004 Ohio 4906, 04LW 4343 (Ct. App. Mahoning Co. 2004).

Attorney Kevin J. Hopper, who has substantial experience in environmental matters,[6] has opined that the lawsuit which Plaintiffs brought against Boggs and the Rhodes Defendants was a direct and foreseeable consequence of the Rhodes Defendants professional negligence, and that the attorneys' fees and expenses which Boggs incurred in responding to that lawsuit were also foreseeable and were also the direct result of the Rhodes Defendants' professional negligence (doc. no. 137). Mr. Hopper has also opined, based on his experience in environmental litigation, that the attorneys' fees and expenses which Boggs incurred are reasonable and were necessary. These fees and expenses are calculated through August 30, 2005 (the end of a billing month) because the Court's summary judgment in Boggs favor was issued on August 18, 2005, terminating the defense of the claims asserted against Boggs.[7] Under the law of Ohio, therefore, these attorneys' fees and expenses are recoverable as damages from the Rhodes Defendants.

### Boggs Is Also Entitled to Summary Judgment on the Rhodes Defendants' Cross-Claims Against Him

Rhodes has cross-claimed against Boggs for indemnification or contribution (doc. no. 9). Zimmer and Geisler have cross-claimed against Boggs for apportionment, indemnification, or

---

[6] Mr. Hopper's qualifications accompany his report (doc. no. 137).

contribution and also for fees and expenses (doc. no. 83). Boggs is entitled to summary judgment in his favor on each of these cross-claims because there is no evidence that the Rhodes Defendants relied on anything that Boggs said or did in rendering their defective environmental report, or that Boggs owed any duty to them. There is no evidence that they ever communicated with Boggs, but even if they had, they cannot shift their duty of care to him. As the Court has observed, "a finding of justifiable reliance on Boggs' representations cannot be made since Boggs, a nonexpert, cannot be held to a higher standard of knowledge and a higher duty to disclose then Rhodes, an expert purportedly hired by plaintiffs for the specific purpose of ascertaining the presence of wetlands on the site." Order, doc. no. 124, at 24. The undisputed evidence shows that Boggs and Plaintiffs were relying on the Rhodes Defendants, not the other way around; the law imposes the duty of care on the professional, not on the layperson. *Berdyck v. Shinde, supra*; *Sturm v. University of Cincinnati Medical Center,* 137 Ohio App. 3d 557, 561-62, 739 N.E.2d 364 (Franklin Co. 2000). Accordingly, the Rhodes Defendants' cross-claims against Boggs are without merit.

**Conclusion**

For the foregoing reasons, Defendant H.T. Boggs respectfully submits that he is entitled to summary judgment in his favor against Defendants Rhodes, Zimmer, and Geisler jointly and severally in the principal amount of $299,541.79, together with interest thereon as allowed by law and his taxable costs; and to summary judgment in his favor on their cross-claims against him.

Respectfully submitted,

---

[7] This calculation does not include the fees and expenses incurred thereafter, whether with respect to Plaintiffs' claims or Boggs cross-claims, or the cross-claims asserted against Boggs.

{W0571821.2}

                            */s/ Thomas R. Schuck*
                            Thomas R. Schuck (0005336)
                            Trial Attorney for Defendant H.T. Boggs
                            425 Walnut Street, Suite 1800
                            Cincinnati, Ohio 45202-3957
                            (513) 381-2838

Of Counsel:

Kevin J. Waldo (0022379)
413 Center Street
Ironton, Ohio 45638-1505
(740) 532-4911

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he served a copy of the foregoing Motion for Summary Judgment Against Defendants Rhodes, Zimmer, and Geisler and Memorandum in Support upon the following counsel of record and unrepresented parties electronically or by regular United States mail, postage prepaid this 10th day of February, 2006.

>   */s/ Thomas R. Schuck*
>   Thomas R. Schuck

William P. Schroeder, Esq.
11935 Mason Road, Suite 100
Cincinnati, Ohio 45249
Attorney for Plaintiffs

E. David Marshall, Esq.
271 West Short Street, Suite 111
Lexington, Kentucky 40507
Attorney for Defendant Rhodes, Inc.,
Rhodes Incorporated, and Rhodes &
Associates, Inc.

James M. Zimmer, *pro se*
3164 Roxbury Drive
Lexington, Kentucky 40503

H. Jack Geisler, *pro se*
33868 Moundview Court
Lexington, Kentucky 40502

{W0571821.2}