UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SCOTT HUTCHISON
ENTERPRISES, INC., et al.,

                Plaintiffs,

      v.                                       C-1- 01-776

RHODES, INC., et al.,

                Defendants.

## ORDER

This matter is before the Court upon (1) a motion for summary judgment filed by

plaintiffs Scott Hutchison Enterprises, Inc. and W.N. & Scott Hutchison Partnership

(collectively, "Hutchison") against defendants Larry Rhodes, Inc. ("Rhodes"), James Zimmer,

and H. Jack Geisler (collectively, the "Rhodes defendants) (doc. 149), and (2) a motion for

summary judgment by defendant H.T. Boggs ("Boggs") on its cross-claim against the Rhodes

defendants and on the cross-claims asserted against Boggs by the Rhodes defendants (doc. 151).

The motions are unopposed.

### I. Introduction

This action arises out of the sale of certain property by Boggs to the plaintiff corporation

or partnership and the performance of technical investigation, consultation, and engineering

services in connection with the transaction by the Rhodes defendants.  Plaintiffs filed the original

complaint in this action against defendants Boggs and Rhodes on November 8, 2001 (doc. 1),

followed by an amended complaint against these defendants (doc. 19) and a second amended complaint against all defendants (doc. 75). Defendants Zimmer and Geisler moved for summary judgment on the ground that the claims against them were barred by the statute of limitations. The Court denied their motion by Order dated August 18, 2005 (doc. 123). Defendant Boggs also moved for summary judgment on plaintiffs' claims against him and plaintiffs moved for partial summary judgment on their claims against Boggs. The Court granted summary judgment in favor of Boggs and dismissed plaintiffs' claims against him by Order dated August 18, 2005 (doc. 124). The claims remaining in this lawsuit are plaintiffs' claims against the Rhodes defendants, Boggs' cross-claims against the Rhodes defendants based on the environmental study of the subject property that Hutchison commissioned as a precondition to the sale of the property by Boggs, and the Rhodes defendants' cross-claims against Boggs.

## II. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513 (citing

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. at 1608-09 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* (citing *Cities Serv.*, 391 U.S. at 288-289, 88 S.Ct. at 1592). The Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as matter of law." *Id.* at 251-52, 106 S.Ct. at 2511. If the evidence is merely colorable (*Id.* (citing *Dombrowski v. Eastland,* 387 U.S. 82, 84, 87 S.Ct. 1425 (1967)), or is not significantly probative (*Id.* (citing *Cities Serv.*, 391 U.S. at 290, 88 S.Ct. at 1592), judgment may be granted.

### III. Facts

The undisputed facts are set forth below. To the extent any of the findings of fact contain conclusions of law, they shall be deemed conclusions of law. To the extent any of the conclusions of law that follow contain findings of fact, they shall be deemed findings of fact.

1. Plaintiff Scott Hutchison Enterprises, Inc. ("Hutchison Enterprises") is a West Virginia corporation engaged in the business of  developing and owning real estate and other businesses.

2. Plaintiff W.N. & Scott Hutchison Partnership ("Hutchison Partners") is an Ohio general partnership also engaged in the business of developing and owning real estate and other businesses.

3. Defendant and Cross-Claimant H.T. Boggs is an individual residing in Florida.

4. Defendant Larry Rhodes, Inc. ("Rhodes"), also known as Rhodes, Incorporated, Rhodes, Inc.,

3

or Rhodes & Associates, Inc., is a Kentucky corporation engaged in the business of providing professional engineering, geology, and drilling services and environmental assessments.

5.  Defendant James M. Zimmer is an individual residing in Kentucky and is a former employee of Rhodes.

6.  Defendant H. Jack Geisler is an individual residing in Kentucky and is also a former employee of Rhodes.

7.  On October 20, 1999, Boggs entered into a Real Estate Sales Agreement with Hutchison Enterprises whereby he agreed to sell, and Hutchison Enterprises agreed to buy, a mobile home park and some adjacent vacant lots located in the Village of Burlington, Fayette Township, Lawrence County, Ohio (Dep. Exs. 23/195).

8.  Huntington National Bank agreed to finance Plaintiffs' purchase of this real estate but Hutchison, Boggs, and the Bank conditioned the financing commitment on a satisfactory environmental report on the property.

9.  Banker Robert VanNostrand warned Scott Hutchison that the real estate might be located in a wetlands area, which could inhibit development of the vacant lots.

10.  Boggs insisted on an environmental study of the real estate as a condition of the transaction (Boggs Dep. 12/9/03, p. 57).  The parties therefore included the requirement of a "Satisfactory Level One EPA Study to be performed before December 1st, 1999" in the Real Estate Sales Agreement (Dep. Exs. 23/195, ¶ 5.2).

11.  VanNostrand recommended that Rhodes be commissioned to perform the environmental study called for by the Real Estate Sales Agreement (VanNostrand Dep., p. 63; Scott Hutchison Dep., p. 63).

4

12.  Rhodes entered into a contract on October 20, 1999, pursuant to which Rhodes agreed to conduct an environmental assessment of the real estate, including a "[r]eview [of] available information on the geographic area and the geologic and hydrologic conditions present" (Dep. Ex. 92).

13.  Rhodes was requested to make sure that there were no wetlands on the real estate (Scott Hutchison Dep., pp. 59-63, 80-82; Scott Hutchison Aff., doc. no. 150).

14.  Zimmer, Geisler, and Adonis Spivey (now deceased) conducted the environmental study of the real estate on behalf of Rhodes.

15.  On October 28, 1999, Rhodes issued a preliminary report signed by Zimmer and Spivey, stating that other than some "unlawful dumping of building debris," no "recognized environmental conditions were revealed in respect to the undeveloped tract during the site reconnaissance and records search." (Dep. Exs. 63/134).

16.  On November 8, 1999, Rhodes issued its final report (Dep. Exs. 71/135) signed by Zimmer, Geisler, and Spivey, giving the property a clean bill of health (Larry Rhodes Dep., pp. 51-54, 86).  This report specifically covers wetlands (Dep. Exs. 71/135, pp. 1, 2, and 10).

17.  Hutchison, Boggs and the Bank closed the real estate transaction on December 6, 1999 (Scott Hutchison Dep., pp. 116-117).  For tax reasons, title to the property was taken in the name of Hutchison Partners rather than Hutchison Enterprises (Klein Dep., p. 185; Laya Hutchison Dep., p. 44).

18.  Scott Hutchison cleared the vacant lots in January, 2000 (Scott Hutchison Dep., p. 135).

19.  Scott Hutchison hired Thomas Company, an engineering firm in Huntington, West Virginia, to design a mobile home park to be constructed on the vacant lots.  (Scott Hutchison Dep., p. 152).  Andrew L. Lockwood, an engineer employed by Thomas Company on the project, became concerned about the condition of the soil on the vacant lots and contacted the Huntington Office of the U.S. Army Corps of Engineers (Fudge Dep., pp. 56, 76-77).

20.  Tammy Fudge, an environmental specialist with the Corps of Engineers, looked at the site on April 27, 2000 and informed Lockwood and Hutchison that portions of the vacant lots are located in a jurisdictional wetlands (as shown on Dep. Ex. 99, p. H00349), necessitating a permit to excavate the property and construct something on it (Fudge Dep., pp. 56, 76-77; Scott Hutchison Dep., p. 137; Dep. Ex. 99).

21.  On May 3, 2000, the Corps of Engineers issued a cease and desist order prohibiting further work on the vacant lots unless and until the permitting process is satisfied (Fudge Dep., pp. 13-14; Dep. Ex. 95).

22.  Plaintiffs commenced the present action against Rhodes and Boggs on November 2, 1999. They filed a First Amended Complaint on April 23, 2003 (doc. no. 19) and a Second Amended Complaint adding Zimmer and Geisler as defendants on November 25, 2003 (doc. no. 75).

23.  By its Order of August 18, 2005, the Court granted summary judgment in favor of Boggs on Plaintiffs' claims against him, denied Plaintiffs' motion for summary judgment as against Boggs, and dismissed Boggs as a defendant in the action  (doc. no. 124).

24.  Boggs incurred attorneys' fees and expenses in the amount of $299,541.79 through August 31, 2005 in this action.  These fees and expenses are substantiated by the statements filed with the affidavits of Thomas R. Schuck, Boggs' trial attorney (doc. no. 152); Kevin J. Waldo, Mr. Schuck's co-counsel in the action (doc. no. 153); and Daniel J. Konrad, Boggs' attorney in Huntington, West Virginia (doc. no. 154).

25.  Boggs has asserted a cross-claim against Rhodes, Zimmer, and Geisler, jointly and severally, to recover these fees and expenses (doc. no. 80).  Rhodes has asserted a cross-claim against Boggs for indemnification or contribution (doc. no. 9).  Zimmer and Geisler have asserted cross-claims against Boggs for apportionment, indemnification, or contribution and also for fees and expenses (doc. no. 83).

26.  Plaintiffs' motion for summary judgment is supported by the memorandum and the affidavit of W. Scott Hutchison filed in support of the motion (doc. no. 150) and by the expert witness reports of Donald A. Fay, C.P.G, Dan Keith Evans, Ph.D., Dewey Sanderson, Ph.D., and Andrew L. Lockwood (doc. nos. 135, 139, and 140), and also by the depositions of Larry Rhodes, W. Scott Hutchison, Tammy Fudge, H.T. Boggs, and other depositions and deposition exhibits cited in the memorandum, all of which have been filed and are a part of the record in this case in support of these and prior motions for summary judgment that have been considered and ruled upon.

27.  Boggs' motion for summary judgment is supported by the expert witness reports of Dan Keith Evans, Ph.D., Dewey Sanderson, Ph.D., Andrew L. Lockwood, and Donald A. Fay, C.P.G. (doc. nos. 135, 139, and 140), which Plaintiffs have submitted, and by the expert witness report of Attorney Kevin J. Hopper, which Boggs has submitted (doc. no. 137).

28.  The Real Estate Sales Agreement between Boggs and Hutchison Enterprises required a satisfactory environmental study as a condition precedent to Boggs' sale of the land (Dep. Exs. 23/195, ¶ 5.2), and Boggs' deposition testimony establishes that he relied on the Rhodes Defendants' report to satisfy this condition precedent (Boggs Dep. 12/9/03, pp. 68-70).

29.  The Rhodes Defendants represented themselves to be environmental specialists.  Zimmer is a project geologist and Geisler is a professional engineer (Dep. Exs. 132 and 71/135).

30.  After conducting a survey of the property and purportedly reviewing the available government records (see Spivey's letter, Dep. Exs. 63/134), the Rhodes Defendants concluded that there were no wetlands on the property.

31.  The United States Geological Survey map of the Catlettsburg, Kentucky Quadrangle, which includes the subject property, shows that a wetlands meanders across portions of the vacant lots (Dep. Ex. 200).

32.  Thomas Company subsequently plotted how the wetlands area affects Plaintiffs' proposed development of the vacant lots (see Dep. Ex. 99, p. H00349).

33.  The Rhodes Defendants included the relevant excerpt from the U.S.G.S. map in their report (Dep. Exs. 71/135, p. H00026, and Dep. Ex. 139), but incorrectly concluded that there was no wetlands problem with the property.

34.  Drs. Evans and Sanderson determined that a wetlands (marsh-swamp) extends across the vacant lots and to the west of them, "roughly following the trend of the valley."  They describe the area as "a disturbed or atypical situation wetland."  Dep. Ex. 168, p. H00097-H00098.

35.  Andrew L. Lockwood, a geologist formerly employed by Thomas Company, also reported that the site "originally contained wetlands designated within the USFWS [United States Fish and Wildlife Service] wetlands inventory database."  He cites the report prepared by Drs. Evans and Sanderson as establishing that the site "contains 10 areas totaling 3.38 acres of Category I, disturbed wetland."  Dep. Ex. 168, p. H00062.

36.  Donald A. Fay, a certified professional geologist, submitted a report establishing the applicable professional standard for the environmental study which the Rhodes Defendants undertook and concluding that the Rhodes Defendants failed to meet that standard.  Mr. Fay opined that "[t]he standard of care applicable to environmental professionals, performing an environmental assessment such as the one undertaken by Rhodes, obligates them to exercise reasonable and ordinary care to properly locate the site under investigation, review and interpret public records and maps applicable to that site, and accurately report the information to the client.  In this instance that would include the obligation to exercise reasonable care and skill to ascertain from available information, and from an actual on-site investigation, whether or not environmentally sensitive conditions, such as wetlands, existed on the site and to set forth and discuss their findings in a report to the client."  Doc. nos. 139 and 140, p. 6.

37.  Mr. Fay found that "Rhodes undertook to perform an environmental site assessment that included the two tracts described, and specifically stated Rhodes would '[r]eview . . . published historical, geological, topographical, and soil maps ***to identify wetlands, or other environmentally-sensitive features.***"   Doc. nos. 139 and 140, p. 6, emphasis in original.

38.  Mr. Fay further found that "[p]ublished topographical maps, wetlands inventory maps, and other sources available to Rhodes, and purportedly reviewed by Rhodes and referenced and included in their final report, show the existence of wetlands and other environmentally sensitive areas (i.e., wetlands, boggy or swampy areas) on the site.  However, there are no wetlands or other environmentally sensitive features of the site identified or discussed in the report."  Doc. nos. 139 and 140, pp. 6-7.

39.  Mr. Fay opined that "[a] properly trained environmental professional, exercising reasonable care, should have recognized the symbols of wetlands and other environmentally sensitive areas and identified and discussed them in the report."  He concluded that "[i]n not doing so, the work of the Rhodes Report fell below the applicable standard of care and the industry standard for environmental assessment of the type undertaken in this instance . . ."  Doc. nos. 139 and 140, p. 7.

40.  Mr. Fay determined that "[t]he Rhodes report, and the investigation undertaken by Rhodes, mis-identified and/or mis-located the actual site by approximately .25 mile as shown on maps included in the Appendix" to the Rhodes report.  He concluded that this error "makes references to the maps misleading, because the incorrect locations do not show symbols that signify wetlands, swampy or boggy areas, whereas references to the true and correct location of the site in question do show such symbols and do indicate the presence of wetlands, swamps and boggy areas."  He further concluded that "[a] properly trained environmental professional, exercising reasonable care, should have correctly identified the site on the maps, recognized the symbols of wetlands and other environmentally sensitive areas, and identified and discussed them in the report.  Failing to do so fell below the applicable standard of care and the industry standard for environmental assessment of the type undertaken in this instance . . ."  Mr. Fay also concluded that the Rhodes Defendants' failure to identify the wetlands on the vacant lots and their erroneous location of the property "was not consistent with standard industry practice for environmental assessment of the type undertaken in this instance . . ."  Doc. nos. 139 and 140, pp. 7-8.

41.  Mr. Fay concluded that Zimmer and Geisler were the environmental professionals responsible for the work of Rhodes on the project and for meeting the applicable professional and industry standards and that they "failed to meet the applicable standards for environmental professionals in this case . . ."  Doc. nos. 139 and 140, p. 8.

42.  The report of Attorney Kevin J. Hopper also attests to the Rhodes Defendants' professional negligence.  Mr. Hopper concluded that Boggs' reliance on the Rhodes Defendants' report was foreseeable and that the litigation that Plaintiffs instituted against Boggs and the Rhodes Defendants was the result of the Rhodes Defendants' failure to identify the wetlands areas on the vacant lots, inasmuch as had the Rhodes Defendants properly identified the wetlands issue prior to closing, Hutchison, Boggs and the Bank would have terminated the entire transaction or renegotiated the financing and purchase price.  In any of these events, the litigation involved herein would have been obviated.

43.  Mr. Hopper reviewed the attorneys' fees and expenses of counsel on behalf of Boggs in this action and concluded that those fees and expenses "were reasonable and proper based upon the custom and practice of environmental attorneys in Southwestern Ohio."  The Court finds that the hourly rate charged by lead counsel Mr. Schuck based upon his experience as a seasoned trial attorney is reasonable and proper and that the attorney fees and expenses incurred by Boggs in defending this litigation were necessary and reasonable.  The Court also finds after reviewing the various exhibits relative to the Rhodes Defendants that the Rhodes Defendants were professionally negligent in failing to include in the Phase I report that the land purchased by the Plaintiffs was burdened by federal wetlands, that the lawsuit the Plaintiffs brought against the Defendants was a direct and foreseeable consequence of the Rhodes Defendants' professional negligence, and that the attorney fees and expenses incurred by Boggs in defending the lawsuit were also foreseeable and were the direct result of the Rhodes Defendants' professional negligence.  Doc. no. 137, p. 10-11.

44. The Rhodes Defendants knew that one of the purposes of their study was to determine if there were any wetlands on the site and that the site was the subject of a proposed real estate transaction. Spivey's letter of October 28, 1999 to VanNostrand reporting on the preliminary results of the study refers to a "[s]ite reconnaissance for the proposed acquisition properties" and represents that this "reconnaissance included an inspection of the entire tracts and adjacent property for any visible evidence of past or present environmental hazards that may impact the subject property" (Dep. Exs. 63/134). This reference to the "proposed acquisition properties" is repeated in the Rhodes Defendants' final report (Dep. Exs. 70/148, p. 10, R00029). The Rhodes Defendants knew that their report was intended to serve as the basis for a real estate sale to be relied on by the seller, the purchaser, and the mortgagee bank.

45. The Rhodes Defendants also knew that the presence or absence of wetlands on the property was among the considerations important to the purchaser and seller of the real estate. (Dep. Exs. 71/135, pp. 1, 2, and 10).

46. Hutchison, Boggs, and the Bank are within the class of persons whose reliance on the Rhodes Defendants' report was foreseen by the Rhodes defendants.

47. The Rhodes Defendants were negligent in conducting their environmental study of the real estate and in preparing and delivering their report, inasmuch as they failed to identify the wetlands that burden portions of the vacant lots.

48. Hutchison and Boggs sustained damages as the proximate result of the Rhodes Defendants' negligence as set forth in the affidavits filed by Hutchison and Boggs.

49.  For more than four years, Plaintiffs were required to cease and desist work on the vacant

lots,  valued at approximately $200,000, and were prevented from developing them  (Hutchison

Aff., doc. no. 150).

50.  Plaintiffs also incurred and are still incurring debt service on the vacant lots and have been

required to respond to the regulations and requirements of the United States Army Corps of

Engineers and the Ohio Environmental Protection Agency that relate to a disturbed wetland,

including tests and studies for endangered or threatened species and remediation requirements

that include the purchase of additional land and the development of a new wetland in another

(off site) location as part of the remediation, for which Plaintiffs have incurred engineering fees

and expenses and attorneys' fees and expenses that will exceed $200,000 (Hutchison Aff., doc.

no. 150).

51.  Plaintiffs' remediation costs, engineering  and attorneys' fees, and expenses were reasonable

and necessary and were required as a consequence of the negligence of the Rhodes Defendants.

 52.  Although the remediation has not been finalized and approved by the state and federal

agencies involved and the final costs cannot be specifically calculated, the proof submitted in the

form of affidavits and deposition testimony supports the finding that Plaintiffs' loss exceeds

$300,000, warranting a judgment in Plaintiffs' favor in that amount (Hutchison Aff., doc. no.

150).

53.  Boggs sustained damages as the proximate result of the Rhodes Defendants' negligence in the form of the attorneys' fees and expenses which he incurred in the present action through August 31, 2005, the end of the month during which the Court entered summary judgment in his favor on Plaintiffs' claims against him.  These fees and expenses amount to $299,541.79.  They are itemized in the statements filed with the affidavits of the attorneys who rendered these services and incurred these expenses on his behalf (doc. nos. 152, 153, and 154).

54.  Boggs' attorneys' fees and expenses were reasonable and necessary.

55.  The present litigation, and Boggs' attorneys' fees and expenses, were foreseeable by the Rhodes Defendants.

56.  Had the Rhodes Defendants not breached the contract entered into on October 20, 1999, Boggs would not have had to defend this suit.

### III. Conclusions of Law

1.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332, inasmuch as complete diversity of citizenship exists among the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

2.  Venue of this action is proper in this judicial district and division.

3.  By its Order of August 18, 2005 (doc. no. 123), the Court determined that the claims against the Rhodes Defendants for delivering a defective environmental report are properly characterized as professional negligence claims.

4.  Ohio law governs the claims against the Rhodes Defendants, inasmuch as the real estate at issue is located in Ohio and the environmental study was conducted in Ohio.  *Miller v. State Farm Mut. Auto Ins. Co.,* 87 F.3d 822, 824-825 (6th Cir. 1996) (citing *Morgan v. Biro Mfg. Co.,* 15 Ohio St.3d 339, 474 N.E.2d 286, 288-89 (1984)).

5.  Under Ohio law,  "a professional negligence action may be brought against a member of any profession, not just licensed professions, or those governed by R.C. 2305.11."  *See Alexander v. Culp,* 124 Ohio App. 3d 13, 20, 705 N.E. 2d 378, 382 (Cuyahoga Co. 1997) (citing *Strock v. Presnell,* 38 Ohio St.3d 207, 211, 218, 527 N.E.2d 1235, 1238-39, 1244-45 (1988)).

6.  The test used to determine if a claim is for professional negligence (or malpractice) is whether it involves an alleged failure in professional skill or judgment:  "[I]f a condition by its nature requires the application of knowledge and skill superior to that of the ordinary person, one who possesses that superior knowledge and skill and who fails to employ it for the benefit of another when their relation requires it will be held liable for injuries proximately resulting from that failure."  *Berdyck v. Shinde*, 66 Ohio St. 3d 573, 579, 613 N.E.2d 1014, 1020 (1993).  *See Devonshire v. The Johnston Group First Advisors*, 300 F. Supp.2d 516 (N.D. Ohio 2003) (Carr, J.), *reconsideration granted, judgment vacated in part,* 2004 WL 2269625, *on reconsideration,* 338 F.Supp.2d 823 (N.D. Ohio 2004), *affirmed by* 2006 WL 172233 (6th Cir.)

7.  Summary judgment with respect to the claims against the Rhodes Defendants is appropriate because "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show there is no genuine issue as to any material fact and that the moving parties are entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

8.  The non-moving parties have not set forth specific facts showing that there is a genuine issue for trial.  *Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511.  Therefore,  there is not sufficient disagreement to require submission to a finder of fact because the evidence is so one-sided that the moving parties must prevail as a matter of law.  477 U.S. at 251-52, 106 S.Ct. at 2502.

9.  The moving partie**s** have established by uncontroverted evidence their right to succeed on their claims for negligence: duty, breach of duty, causation, and damages.  *Clay v. Sotheby's Chi., Inc*., 257 F.Supp. 2d 973, 981 (S.D. Ohio 2003) (Rice, C.J.) (citing *Anderson v. St. Francis-St. George Hosp., Inc.*, 77 Ohio St. 3d 82, 671 N.E.2d 225, 227 (1996)).

10.  Based on the record in this case, the Court concludes there are no genuine issues of material fact and reasonable minds can only conclude that Rhodes, Zimmer, and Geisler each had a duty assumed by the contract to perform an assessment of the property and, in the course of performing that assessment, to determine the existence, if any, of wetlands on the property, which they failed to do.  *See Rich v. Ohio Underground*, 1991 WL 270659 (Ohio App. 2 Dist. Dec. 16, 1991).

11.  Hutchison and Boggs have established that the Rhodes defendants were negligent and their negligence directly caused damage and loss to Hutchison and Boggs.

12.  Hutchison and Boggs were entitled to rely on the Rhodes Defendants' report because they are members of a limited class whose reliance on that report was specifically foreseen.  *See Haddon View Investment Co. v. Coopers & Lybrand,* 70 Ohio St. 2d 154, 436 N.E.2d 212 (1982).

17

13.  Attorneys' fees and expenses of litigation are recoverable as damages where the wrongful act of the defendant has involved an entity in litigation with others or placed it in such relation with others as makes it necessary to incur expense to protect its interest, in which case such costs and expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages.  *S&D Mechanical Contractors, Inc. v. Enting Water Conditioning Systems Inc.,* 71 Ohio App. 3d 228, 241, 593 N.E.2d 354, 363 (Montgomery Co. 1991) (quoting *V.N. Holderman & Sons Co. v. Jackson,* 73 O.O. 2d 148, 150 (Ct. Cl. 1975).  *Accord*, *Berks Title Insurance Co. v. Haendiges,* 591 F. Supp. 879, 889 (N.D. Ohio 1984), *rev'd in part on other grounds*, 772 F.2d 278 (6th Cir. 1985), and cases cited therein; *Homes By Calkins, Inc. v. Fisher*, 92 Ohio App. 3d 262, 634 N.E.2d 1039 (Butler Co. 1993).

14.  The lawsuit Plaintiffs brought against Boggs and the Rhodes Defendants was a direct and foreseeable consequence of the Rhodes Defendants' professional negligence, and the attorneys' fees and expenses Boggs incurred in responding to that lawsuit were also foreseeable and were the direct result of the Rhodes Defendants' professional negligence.

15.  The attorneys' fees and expenses Boggs incurred are reasonable and were necessary.

16.  Under the law of Ohio, Boggs' attorneys' fees and expenses are recoverable as damages from the Rhodes Defendants.

17.  Plaintiffs are entitled to judgment in their favor in the principal amount of $300,000 against Larry Rhodes, Inc., James M. Zimmer, and H. Jack Geisler, jointly and severally, plus interest thereon at the rate permitted by law from the date of such judgment and Plaintiffs' costs of the action.

18.  Boggs is entitled to judgment in his favor in the principal amount of $299,541.79 against Larry Rhodes, Inc., James M. Zimmer, and H. Jack Geisler, jointly and severally, plus interest thereon at the rate permitted by law from the date of such judgment and Boggs' costs of the action.

19.  Boggs is entitled to summary judgment in his favor on the cross-claims of Rhodes, Zimmer, and Geisler against him because there is no evidence that the Rhodes Defendants relied on anything that Boggs said or did in rendering their defective environmental report or that Boggs owed any duty to them.  As the Court previously observed, "a finding of  justifiable reliance on Boggs' representations cannot be made since Boggs, a nonexpert, cannot be held to a higher standard of knowledge and a higher duty to disclose then Rhodes, an expert purportedly hired by plaintiffs for the specific purpose of ascertaining the presence of wetlands on the site."  Doc. no. 124, at 24.  The undisputed evidence shows that Boggs and Plaintiffs were relying on the Rhodes Defendants, not the other way around; the law imposes the duty of care on the professional, not on the layperson.  *Berdyck*, 66 Ohio St. 3d at 579, 613 N.E.2d at 1020; *Sturm v. University of Cincinnati Medical Center,* 137 Ohio App. 3d 557, 561-62, 739 N.E.2d 364, 367 (Franklin Co. 2000).  Accordingly, the Rhodes Defendants' cross-claims against Boggs are without merit.

## IV.  Conclusion

In accordance with the foregoing, the unopposed motions for summary judgment filed by plaintiff Hutchison and defendant Boggs (docs. 149, 151) are **GRANTED.**  Judgment is entered in favor of plaintiff Hutchison against defendants Rhodes, Zimmer and Geisler in the amount of $300,000.00, plus interest at the federal rate from the date of judgment, and costs.  Judgment is entered in favor of defendant Boggs against cross-defendants Rhodes, Zimmer and Geisler in the amount of $299,541.79, plus interest at the federal rate from the date of judgment, and costs. The cross-claims filed by the Rhodes defendants against Boggs are **DISMISSED.**  This case is **TERMINATED** on the docket of the Court.

**IT IS SO ORDERED.**

S/ Herman J. Weber
HERMAN J. WEBER
SENIOR JUDGE, UNITED STATES DISTRICT COURT